**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **DANNY WALKER**, Individually and on Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>**HARISH CHIDAMBARAN**, *et al.*, )<br><br>Defendants. ) | Civil Action No. DKC 24-2900 |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO INDEPENDENT DEFENDANTS'**
**MOTIONS TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.      INTRODUCTION. .................................................................................................... 1

II.     STATEMENT OF FACTS. ....................................................................................... 2

III.    STANDARDS OF LAW. .......................................................................................... 9

IV.     ARGUMENT. ............................................................................................................ 9

        A.      The Complaint Adequately Alleges Plaintiffs' Standing for the Securities Act

                Claims ............................................................................................................ 9

        B.      The Complaint Adequately Alleges Violations of Section 15 of the Securities Act.

                ...................................................................................................................... 22

        C.      Defendants Barger, Davis, Melham, Moe, and Olivier are Control Persons ........ 22

V.      CONCLUSION. ........................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*In re Alstom SA Securities Litigation*,

406 F.Supp.2d 433 (S.D.N.Y. 2005) ........................................................................ 24

*In re Ariad Pharms., Inc. Sec. Litig.*,

842 F.3d 744 (1st Cir. 2016) ..................................................................................... 21

*Ashcroft v. Iqbal,*

556 U.S. 662 (2009) .................................................................................................. 11

*Barbour v. Garland*,

105 F.4th 579 (4th Cir. 2024) ................................................................................... 14

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2007) ............................................................................................. 9, 11

*Black v. Martek Biosciences Corp.*,

No. CV MJG-05-1224, 2006 WL 8435572 (D. Md. June 14, 2006) ....................... 23

*Buttram v. City of Bessemer*,

2:17-CV-0846-VEH, 2018 U.S. Dist. LEXIS 7326 (N.D. Ala. Jan. 17, 2018) ....... 12

*In re Century Alum. Co. Secs. Litig*,

729 F.3d 1104 (9th Cir. 2013) .................................................................................. 20

*In re Charles Schwab Corp. Securities Litigation*,

257 F.R.D. 534 (N.D. Cal. 2009) ............................................................................. 24

*Ciarciello v. Bioventus, Inc.*,

1:23-CV-32, 2023 WL 7300081 (D. Md. Nov. 6, 2023) .......................................... 17

*In re Coinbase Glob., Inc. Sec. Litig.,*

No. 2:22-CV-04915 (BRM) (LDW), 2024 WL 4053009 (D.N.J. Sept. 5, 2024),

*reconsideration denied, N*o. 2:22-CV-04915 (BRM) (LDW), 2025 WL 1040633 (D.N.J. Apr.

8, 2025).................................................................................................................... 15

*In re Constellation Energy Grp., Inc. Sec. Litig.,*

738 F. Supp. 2d 614 (D. Md. 2010) ....................................................................... 24

*Cupat v. Palantir Techs., Inc.,*

No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025) .................... 17, 18

*Davidco Investors, LLC v. Anchor Glass Container Corp.,*

Case No. 8:04-cv-2561-T-24 EAJ, 2006 U.S. Dist. LEXIS 11527 (M.D. Fla. Mar. 6, 2006).. 21

*Doherty v. Pivotal Software, Inc.,*

No. 3:19-CV-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) ................................ 21

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.,*

705 F. Supp. 2d 86 (D. Mass. 2010) ...................................................................... 24

*In re EveryWare Glob., Inc. Sec. Litig.,*

175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v.*

*EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017)................................................... 14, 15, 18

*Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*,

No. CV DKC 23-0574, 2023 WL 4134427 (D. Md. June 22, 2023) (Chasanow, J.) ............... 11

*Fanucchi v. Enviva, Inc.,*

No. CV DKC 22-2844, 2024 WL 3302564 (D. Md. July 3, 2024) (Chasanow, J.)............ 15, 16

*In re Fleetboston Fin. Corp. Secs. Litig.,*

253 F.R.D. 315 (D.N.J. 2008) ............................................................................... 21

*In re Global Crossing, Ltd. Sec. Litig.*,

    313 F.Supp.2d 189 (S.D.N.Y. 2003) ....................................................................... 16

*Grand Lodge of Pa. v. Peters*,

    550 F. Supp. 2d 1363 (M.D. Fla. 2008) ................................................................. 21

*Hughes v. Lasalle Bank, N.A.,*

    02 Civ. 6384 (MBM) (HBP)*, 2004 U.S. Dist. LEXIS 3403 (S.D.N.Y. Mar. 4, 2004) ............ 12

*John v. Whole Foods Mkt. Grp., Inc.*,

    858 F.3d 732 (2d Cir. 2017) ................................................................................... 18

*Johnson v. CBD Energy Ltd.*,

    No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ........................... 21

*Krim v. pcOrder.com, Inc.*,

    402 F.3d 489 (5th Cir. 2005) ................................................................... 15, 19, 20, 21

*MacKnight v. Leonard Morse Hosp.*,

    828 F.2d 48 (1st Cir. 1987) .................................................................................... 12

*In re Metropolitan Securities Litigation*,

    532 F.Supp.2d 1260 (E.D.Wash. 2007) ................................................................. 24

*In re Mirant Corp. Sec. Litig.*,

    No. 1:02-CV-1467-RWS, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) ............................... 21

*In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616 (D. Md. 2012),

    *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014) ...... 9, 19, 22

*NB ex rel. Peacock v. District of Columbia*,

    682 F.3d 77 (D.C. Cir. 2012) ................................................................................. 12

*Northumberland Cnty. Ret. Sys. v. Kenworthy*,

No. CIV-11-520-D, 2013 WL 5230000 (W.D. Okla. Sept. 16, 2013)....................................... 16

*Perry v. Duoyuan Printing, Inc.*,

No. 10 CIV. 7235 GBD, 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013).................................. 16

*Pirani v. Slack Techs., Inc.*,

127 F.4th 1183 (9th Cir. 2025)....................................................................................... 2, 10, 18

*Pirani v. Slack Techs., Inc.*,

13 F.4th 940, 951 (9th Cir. 2021)*, vacated and remanded sub nom. Slack Techs., LLC v.*

*Pirani,* 598 U.S. 759 (2023 ............................................................................................... 10

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,

351 F. Supp. 2d 334 (D. Md. 2004) ..................................................................................... 22

*Sabby Volatility Warrant Master Fund Ltd. v. Safety Shot, Inc.*,

24 Civ. 920 (NRB), 2025 U.S. Dist. LEXIS 48437 (S.D.N.Y. Mar. 17, 2025)........................ 12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,

801 F.3d 412 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015)............................ 11

*Shapiro v. UJB Fin. Corp.*,

964 F.2d 272 (3d Cir. 1992), *as amended* (May 27, 1992)....................................................... 12

*Slack Techs., LLC v. Pirani*,

598 U.S. 759 (2023) ............................................................................................................. 2, 9

*In re Sourcefire, Inc. Sec. Litig.*,

No. CIV. JFM 07-1210, 2008 WL 1827484 (D. Md. Apr. 23, 2008)...................................... 24

*In re Suprema Specs., Inc. Sec. Litig.*,

438 F.3d 256 (3d Cir. 2006)........................................................................................... 11, 12

iv

*Starr v. Baca*,

652 F.3d 1202  (9th Cir. 2011) ................................................................................ 14

*TransEnterix Investor Group v. TransEnterix, Inc.*,

272 F. Supp. 3d 740 (E.D.N.C. 2017) ..................................................................... 21

*In re Ubiquiti Networks, Inc. Sec. Litig.*,

33 F. Supp. 3d 1107 (N.D. Cal. 2014), *aff'd in part, rev'd in part and remanded*, 669 F. App'x

878 (9th Cir. 2016) ................................................................................................. 14

*In re Wachovia Equity Sec. Litig.*,

753 F.Supp.2d 326 (S.D.N.Y. 2011) ....................................................................... 16

*Yates v. Mun. Mortg. & Equity, LLC*,

744 F.3d 874 (4th Cir. 2014) ...................................................................... 9, 18, 19

*In re 2U, Inc. Sec. Class Action,*

No. CV TDC-19-3455, 2021 WL 3418841 (D. Md. Aug. 5, 2021) ......................... 19

**Statutes**

15 U.S.C. § 77k(a) ...................................................................................................... 9

15 U.S.C. §77f(a) ...................................................................................................... 23

## I.    INTRODUCTION.

The Amended Complaint plausibly alleges that Plaintiffs have standing to pursue their Securities Act claims against the Defendants because they allege that they purchased their shares pursuant and/or traceable to the Offering Documents together with additional, non-conclusory facts showing that it is plausible they will be able to prove they can trace their shares to a misleading Registration Statement. Most importantly, Plaintiffs' allegations and iLearningEngines' own filings show that, following the effectiveness of the false Form S-8 and Form S-1 Registration Statements, over 100% of iLearningEngines public float was registered by the Offering Documents, and Plaintiffs have set forth a clear methodology to definitively prove through evidence that their iLearningEngines shares trace to the Offering Documents by reconstructing the chain of title for their iLearningEngines stock purchases from evidence obtained with the benefit of discovery.

Defendants Barger, Davis, Mehlman, and Moe (collectively, the "Independent Directors"), seek to escape liability for the false and misleading statements[1] in the Offering Documents[2] arguing that Plaintiffs have failed to adequately allege standing to pursue the Securities Act Claims under Rule 8(a) of the Federal Rules of Civil Procedure because the Complaint fails to allege the chain-of-title for Plaintiffs' purchases of iLearningEngines shares to prove that the shares are traceable to the Offering Documents. In their respective motions to dismiss the Complaint, Defendants Chidambaran, Naqvi, Olivier, and Marcum mirror such arguments.[3]

---

[1] The Independent Directors joined and incorporated by reference the arguments made in Section I.A. of Defendant Harish Chidambaran's Motion to Dismiss, ECF No. 83-1 at 9-16, and Section I.B. of Defendant Farhan Naqvi's Motion to Dismiss, ECF No. 84-1 at 9-14, regarding the deficiency of certain alleged misrepresentations. Ind. Defs. Br. at 2 n.1. Plaintiffs hereby incorporate their arguments in opposition to these arguments made in their opposition to Defendants Chidambaran's and Naqvi's motions to dismiss.

[2] All capitalized terms shall have the meaning ascribed to them in the Amended Class Action Complaint For Violations Of The Federal Securities Laws (the "Complaint", ECF No. 41) unless defined otherwise herein.

[3] Given the substantial overlap of Defendants arguments on tracing, Plaintiffs will generally refer to that the argument was raised by the "Defendants" although only one or more of the Defendants may raise the specific argument.

1

Defendants rely on the Supreme Court's decision *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023) ("*Slack*"), and subsequent cases, for the premise that "Section 11 requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Id.* at 770. Defendants and courts, however, have conflated this with requiring that a plaintiff must allege evidence in their complaint that establishes the chain-of-title from their stock purchases in the aftermarket following a company's secondary offering to the registration statement to "prove" their standing instead of plausibly alleging facts that suggest that plaintiff's share purchases are traceable and that plaintiff will be able to prove such. This, however, is not the law.

Here, the Court simply needs to determine whether Plaintiffs' allegations "make the conclusion of traceability a plausible one under the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, [556 U.S. 662, 678 (2009)]." *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183 (9th Cir. 2025) ("*Pirani II*") (the Ninth Circuit applying the Supreme Court's opinion in *Slack* on remand). In the Complaint, Plaintiffs have adequately alleged under Rule 8(a) that their share purchases are traceable to the Offering Documents, the facts that support the plausibility that their shares are traceable, and that Plaintiffs can "prove" by a chain-of-title that their shares are traceable once they are permitted to obtain the records establishing such through discovery. Plaintiffs have met their burden at the pleading stage. Defendants' motions to dismiss the Complaint's Securities Act claims for standing should be denied.

## II.    STATEMENT OF FACTS.

iLearningEngines, was a privately held company, until it went public on April 16, 2024, through a reverse merger with Arrowroot Acquisitions, Inc. ("Arrowroot"), a special purpose acquisition company ("SPAC"). ¶3. Arrowroot was incorporated in 2020 as a SPAC to acquire a

company in the enterprise software industry. ¶67. After its IPO in March 2021, which raised $287.5 million, Arrowroot spent the next two years searching for a suitable business to acquire. ¶69. In October 2022, iLearningEngines Holdings and Arrowroot entered into a non-binding letter of intent and related non-disclosure agreement. ¶71.

In early 2023, during the Merger negotiations, Arrowroot Capital and iLearningEngines Holdings discussed a convertible note investment of up to $50 million to meet the immediate cash needs of iLearningEngines Holdings upon the closing of the Merger. ¶72. In January 2023, Arrowroot's board of directors valued iLearningEngines Holdings at $1.28 billion and as part of the Merger negotiations agreed to enter into a forward purchase agreement with respect to the proposed business combination so that a certain number of shares would be tradable at close to help support a trading environment for the company's stock post close of the merger. ¶¶73-74. On April 27, 2023, the merger agreement was executed and an announcement was made that iLearningEngines was merging into Arrowroot through its subsidiary, that the surviving company would be renamed iLearningEngines, Inc., and that post-merger the new company would trade on the NASDAQ market under the symbol "AILE." ¶¶76-77.

On September 5, 2023, Arrowroot filed a Form S-4 registration statement in connection with the Merger with it being amended three times with the last amendment filed on January 5, 2024 (collectively, the "Form S-4"). ¶78. Per the Form S-4, there were 4,445,813 shares of Arrowroot Class A Common Stock outstanding that were freely tradable without restriction or further registration under the Securities Act, except for shares held by one of Arrowroot affiliates within the meaning of Rule 144 under the Securities Act and all of the 7,187,500 shares of Arrowroot Class B Common Stock being restricted securities under Rule 144. ¶418. Over 71.7% of iLearningEngines outstanding shares, or 96,764,327 shares, were owned by Defendant

3

Chidambaran and his wife and subject to lock-ups or otherwise restricted. ¶419. Arrowroot Acquisition also had an additional 7,005,793 shares that corresponded to 5.2% of the outstanding shares which were also subjected to lockup. *Id.* As such, as of April 25, 2024, over 76.9% of iLearningEngines outstanding shares were not tradeable. *Id.*

On April 17, 2024, iLearningEngines Holdings went public via a reverse merger with Arrowroot. ¶79. The merger came at a time when iLearningEngines Holdings was in a poor financial state, with only $800,000 in cash and $22 million in debt as of March 2024. ¶67. Although, the merger's initial goal was to secure a minimum of $100 million in cash (¶77), due to most of Arrowroot's stockholders redeeming their shares before the consummation of the merger, the funds in Arrowroot's trust account declined significantly from $287.5 million to just $5.9 million at the time the closing of the Merger was announced on April 17, 2024. ¶79.

Ultimately, iLearningEngines received approximately $52.7 million in gross proceeds from the trust account and convertible notes consisting of approximately comprising approximately $5.9 million from the Arrowroot trust account, approximately $17.4 million from the 2023 Convertible Notes, and approximately $29.4 million from the 2024 Convertible Notes. ¶80. Upon the closing of the Merger closed on April 16, 2024, with Arrowroot changing its name to "iLearningEngines, Inc." and its ticker symbol being changed on the NASDAQ to "AILE." ¶¶67, 80-81.

As of May 14, 2024, iLearningEngines had 134,313,494 shares of common stock outstanding. ¶46. Over 76.9% of iLearningEngines' outstanding shares were subject to lock-up provisions and not available for public sale following the Merger. ¶419. These restrictions meant that only a small fraction of the iLearningEngines stock were freely tradable before the new registration statements became effective. ¶418.

4

On June 3, 2024, iLearningEngines filed a Form S-1 seeking to register up to 22,624,975 shares of its common stock issuable upon exercise of iLearningEngines warrants, up to 100,774,669 shares of iLearningEngines common by the "Selling Securityholders" which included investors in Arrowroot; and included the 8,250,000 warrants issued in a private placement to the Arrowroot Acquisition LLC, the sponsor of the SPAC. ¶440. The Form S-1 Registration Statement was amended twice with the second amended version filed with the SEC on July 22, 2024. ¶¶10, 249; s*ee also* Declaration of Nicholas I. Porritt dated September 18, 2025 ("Porritt Decl."), Exhibit A (the Form S-1 Registration Statement dated July 22, 2024). The Form S-1 Registration Statement was signed by each of the Individual Defendants. ¶¶144, 250. Marcum certified the consolidated financial statements of iLearningEngines, Inc. contained or incorporated by referenced into the Form S-1 Registration as of December 31, 2023 and 2022 and for the years ended December 31, 2023, 2022, and 2021.¶253. Attached to Form S-1 Registration Statement as Exhibit 23.1 was Marcum's consent form stating "[w]e consent to the inclusion in this Registration Statement of iLearningEngines, Inc. on Form S-1 of our report dated April 22, 2024, with respect to our audits of the consolidated financial statements of iLearningEngines, Inc. as of December 31, 2023 and 2022 and for the years ended December 31, 2023, 2022, and 2021, which report appears in the Prospectus, which is part of this Registration Statement. We also consent to the reference to our Firm under the heading 'Experts' in such Prospectus." ¶¶146, 253.

On June 21, 2024, after market close, iLearningEngines filed the Form S-8 Registration Statement to register up to 16,208,318 shares of iLearningEngines common stock issued or issuable pursuant to the 2020 Equity Incentive Plan, iLearningEngines, Inc. 2024 Equity Incentive Plan, and iLearningEngines, Inc. 2024 Employee Stock Purchase Plan. ¶¶137, 139. The Form S-8 Registration Statement was signed by Defendants Chidambaran, Naqvi, Arackal, Olivier, Barger,

Davis, Mehlman, and Moe. ¶138. The Form S-8 Registration Statement was automatically effective upon its filing with the SEC. ¶¶139, 142. Attached to Form S-8 Registration Statement as Exhibit 23.1 was Marcum's consent form stating "[w]e consent to the incorporation by reference in this Registration Statement of iLearningEngines, Inc. on Form S-8 of our report dated April 22, 2024, with respect to our audits of the consolidated financial statements of iLearningEngines, Inc. as of December 31, 2023 and 2022 and for the years ended December 31, 2023, 2022, and 2021 appearing in the Form 8-K filed with the Securities and Exchange Commission on April 22, 2024." ¶¶41, 245-46, 253. With this consent, Marcum's report dated April 22, 2024, certified the following financial statements incorporated by reference into the Form S-8 Registration Statement the "balance sheets . . . as of December 31, 2023 and 2022, the related consolidated statements of operations, changes in shareholders' deficit and cash flows for each of the three years ended December 31, 2023, 2022 and 2021, and the related notes (collectively referred to as the "financial statements"). ¶246.

Although the Form S-1 Registration Statement was filed prior to the Form S-8 Registration Statement, it did not go effective until August 9, 2025 at 4 p.m., at which time the shares became registered and freely tradeable. ¶¶147, 492. On August 12, 2024, iLearningEngines filed the Prospectus for the Form S-1 Registration Statement and continued to amend the prospectus for the Form S-1 Registration statements seven additional times between August 14, 2024 and December 10, 2024, as the registered shares were being sold into the marketplace. ¶¶148-155, 251, 492.

On the filing of the Form S-8 Registration Statement and again after the effectiveness of the Form S-1 Registration Statement, the market for iLearningEngines stock was fundamentally altered by the massive influx of newly registered shares. After the Form S-8 Registration Statement became effective, on June 21, 2024, iLearningEngines trading volume surged more than 14-fold,

jumping from 277,382 shares the prior day to 3,989,868 shares. ¶420. Similarly, on the first trading day after the Form S-1 Registration Statement became effective on August 9, 2024, trading volume exploded by nearly 11-fold, increasing from 266,969 shares to 2,946,992 shares, and continued to surge to 3,861,955 shares on August 13, 2024. ¶421. This dramatic increase in trading volume, occurring in a market where most pre-existing shares were locked-up and limited market for iLearningEngines shares, creates a strong and plausible inference that the shares being traded were the newly registered shares from the Offering Documents. ¶¶420-22.

Of the 134,313,494 outstanding shares,[4] 87.1%, or 116,982,987 of the shares were registered by the Offering Documents. *See* ¶¶137, 139, 241, 247, 439-40. Importantly, the "Resale Securities" registered by the Form S-1 Registration Statement, i.e., the 100,774,669 shares being sold by existing shareholders, alone represent approximately 90.9% of iLearningEngines public float of 110,863,222 shares. *See* Porritt Decl., Ex. A (Page 45 of the Form S-1 Registration Statement stating "[t]he number of Resale Securities represents approximately 90.9% of our public float[.]"). Importantly, the 90.9 percentage does not even account the 16,208,318 shares registered by the Form S-8 Registration Statement. ¶¶420, 422, 439. Thus, after adding the 100,774,669 Resale Securities to the previously registered 16,208,318 shares registered by the Form S-8 Registration Statement, the number of iLearningEngines registered shares exceeds the public float.

The Complaint alleges that Defendants violated Section 11 of the Securities Act by issuing the materially false and/or misleading statements in the Offering Documents. ¶¶241-450. The Complaint further asserts violations of Section 15 of the Securities Act against the Individual Defendants. ¶¶451-457. Plaintiffs purchased iLearningEngines common stock that they allege to be directly traceable to the Offering Documents. ¶¶29-30, 447.

---

[4] This calculation excludes the 22,624,975 shares of iLearningEngines common stock that were being registered that are issuable upon the exercise of the warrants discussed in the Form S-1 Registration Statement.

Lead Plaintiff Louis Leveque purchased common stock pursuant and/or traceable to the Form S-8 Registration Statement on July 25, 2024. ¶29. The Leveque shares were purchased in the market following the effective date of the Form S-8 Registration Statement as shares were being sold by iLearningEngines' employees. *See* ¶¶29, 420; ECF No. 3-3 (Lead Plaintiff Leveque's PSLRA certification listing his transaction in iLearningEngines share).

Plaintiff Al Hamid purchased common stock from August 20 to August 30, 2024 pursuant and/or traceable to the Offering Documents, which include both the Form S-8 and the Form S-1 Registration Statements. ¶30. Plaintiff Al Hamid initial purchases of iLearningEngines stock were within approximately a week of the filing of the Prospectus and additional purchases took place during the time Prospectus Supplements Nos. 1-2 were entering the market as the shares registered by the Form S-1 Registration Statement were being sold into the market. *See* ¶¶30, 149-50; Complaint, Exhibit A (Plaintiff Al Hamid's certification).

Plaintiffs have articulated a clear methodology to definitively prove through evidence that their iLearningEngines shares trace to the Offering Documents. ¶¶417-36. When Plaintiffs are permitted discovery, Plaintiffs will obtain and analyze specific records, including "Participant Daily Activity Statements" from the Depository Trust Company ("DTC") and transfer journals from iLearningEngines' transfer agent, Continental Stock Transfer & Trust Company, and as necessary additional documents from select brokerages or iLearningEngines' corporate records owned by AAI Solutions, Inc., to reconstruct the chain of title for the shares they purchased. ¶¶422-36. These documents track share issuances and transfers between parties and will allow Plaintiffs to distinguish newly registered shares from the previously tradeable shares prior to effectiveness of the Form S-8 and to establish a chain of title for each share of iLearningEngines shares they purchased. *See id.* Therefore, Plaintiffs' ability to prove traceability is not based on mere

probability, but on a well-defined plan to use standard industry records to evidence title chain between their purchases and the Offering Documents. ¶¶29-30, 417-36.

## III.    STANDARDS OF LAW.

Section 11 of the Securities Act of 1933 provides that "[i]n case any part of the registration statement ... contained an untrue statement ... any person acquiring such security ... may ... sue." 15 U.S.C. § 77k(a). Section 11 claims are subject to a Rule 8(a) notice pleading standard. *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 899 (4th Cir. 2014) ("We review the plausibility of the amended complaint's standing allegations de novo under the pleading requirements of Rule 8(a)."). Notably, Rule 8(a) "*does not impose a probability requirement at the pleading stage*; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added). Thus, plausibility does not mean proof as even if a plaintiff "will be unable to prove that he bought directly in the offering or that he can trace his shares to the offering . . . inasmuch as the allegations present a plausible claim, they are adequate" for pleading traceability for a Section 11 claim. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 658 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014).

## IV.    ARGUMENT.

### A.  <u>The Complaint Adequately Alleges Plaintiffs' Standing for the Securities Act Claims</u>

Section "11 requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack*, 598 U.S. at 770. Proof, however, need not be accomplished at the pleading stage. *See id.* at 765; *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 951 (9th Cir. 2021) ("*Pirani I*"), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani,* 598 U.S.

759 (2023) (dissent by Judge Miller stating that because it was impossible for Plaintiffs to later "prove" that plaintiff's shares could be traced to the registration statement he would reverse and grant motion to dismiss).

Notably, in delivering the Ninth Circuit's opinion on remand in *Pirani II*, Judge Miller interpreted the Supreme Court's opinion in *Slack*. Although the Ninth Circuit found the claims must be dismissed because plaintiff waived any allegations of traceability based on his prior concession that he could not trace his shares, Judge Miller discussed that if plaintiff had not made this concession, and if plaintiff had only alleged his purchases were traceable, then the Ninth Circuit "would have to decide whether his allegation was sufficient to make the conclusion of traceability a plausible one under the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, [556 U.S. 662, 678 (2009)]". *Pirani II,* 127 F.4th at 1188.

Plaintiff argued that although he could not prove the registration status of particular shares that "[he] can plausibly allege that he purchased at least some registered shares" through a "statistical inference" based on "the number of shares he purchased and the fraction of shares on the exchange that were registered." *Id.* at 1190. The Ninth Circuit took this at face value to be what was represented by the plaintiff that "[h]e cannot allege traceability." *Id.* Although the Ninth Circuit took issue with the proposed "statistical" proof of tracing, it acknowledged that standing can be proven if plaintiffs can "trace the chain of title for their shares back to the secondary offering." *Id.* This is what Plaintiffs allege in the Complaint can be done with their iLearningEngines shares.

Defendants concede that Plaintiffs can establish their standing by tracing the chain-of-title of the shares they purchased to the Offering Documents. *See* Olivier Br. at 10-11; Ind. Dir. Br. at

10

12; Marcum Br. at 21; Chidambaran Br. at 28.[5] Defendants, however, argue that Plaintiffs must "prove" this chain of title in the Complaint with evidence at the pleading stage. *See* Chidambaran Br. at 28 (arguing must prove at the pleading stage); Olivier Br. at 9-10 (arguing plaintiffs "must show" and "affirmatively trace the chain of title"); Marcum Br. at 21 (arguing plaintiffs must plead proof); Naqvi Br. at 23-24; Ind. Dir. Br. at 12. This, is not the law. "[A] plaintiff is not required to plead evidence or prove its case at the motion to dismiss stage. Alleging that a statement was made is enough, and the court must accept the allegation as true." *Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*, No. CV DKC 23-0574, 2023 WL 4134427, at *4 (D. Md. June 22, 2023) (Chasanow, J.); *see also, SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 431 (4th Cir. 2015), *as amended on reh'g in part* (Oct. 29, 2015) (discussing conclusory allegations versus particularized allegations in the wake of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and noting in an antitrust case that "demanding more than the particularized allegations . . . would compel a[] . . . plaintiff to plead evidence—and we have already expressly refused to impose such a requirement."). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

In re Suprema Specialties, Inc. Securities. Litigation, 438 F.3d 256 (3d Cir. 2006) is instructive as to why Section 11 standing is a pleading standard and not a "proof" standard. In *Suprema,* the Third Circuit recognized that "[b]efore discovery takes place [ ] it is impossible for

---

[5] Citations to Defendants' briefs in support of their motions to dismiss are cited as the following: Memorandum Of Points And Authorities In Support Of Defendants Matthew Barger, Ian Davis, Bruce Mehlman, And Michael Moe's Motion To Dismiss The Amended Complaint, ECF No. 85-1 ("Ind. Dir. Br."); Memorandum Of Law In Support Of Defendant Harish Chidambaran's Motion To Dismiss Amended Class Action Complaint, ECF No. 83-1 ("Chidambaran Br."); Defendant Sayyed Farhan Naqvi's Memorandum In Support Of His Motion To Dismiss The Amended Complaint, ECF No. 84-1 ("Naqvi Br."); Memorandum Of Law In Support Of Defendant Thomas Olivier's Motion To Dismiss, ECF No. 82-1 ("Olivier Br."); and Memorandum Of Law In Support Of Defendant Marcum LLP's Motion To Dismiss The Amended Class Action Complaint For Violations Of The Federal Securities Laws, ECF No. 80-1 ("Marcum Br.").

11

plaintiffs to know whether their shares were newly issued or were purchased in the secondary market." *Id*. at 274 n.7 (3d Cir. 2006). The Third Circuit explained that tracing in the secondary market is "a factual one, to be resolved through discovery, as to whether plaintiffs can demonstrate that the shares they allegedly purchased are in fact traceable to the registration statement alleged to be false and misleading." Thus, the Third Circuit has recognized on at least two occasions that "Plaintiffs need not prove their shares are traceable to a false or misleading registration statement at this early stage of the litigation, they must allege it." *Suprema*, 438 F.3d at 274 n.7; *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992), *as amended* (May 27, 1992) ("At some point, plaintiffs may be able to prove that their DRISP shares came from treasury stock. Because we cannot say that plaintiffs can prove no set of facts that would entitle them to relief, the § 11 claim cannot be dismissed at this time"). Thus, the Third Circuit in *Suprema* found such issues should rightfully be resolved after discovery concluding that "if, as appellees suggest, plaintiffs have misrepresented the circumstances of their stock purchases and do not in fact have standing, appellees can raise that matter at the summary judgment stage after discovery." *Suprema*, 438 F.3d at 274 n.7.[6]

Therefore, plausibility does not mean certainty. *NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 85 (D.C. Cir. 2012) (finding standing adequately alleged even when "allegations do

---

[6] Defendant Naqvi's arguments to the opposite are unavailing. Naqvi Br. at 26. Plaintiffs are "not discovering a right" of or a cause of action as Plaintiffs have already alleged a detailed basis for the elements of their claims. What Plaintiffs allege in the Complaint is that they can prove standing. Defendant Naqvi's arguments are misplaced as evidenced by his own authorities. *See Hughes v. Lasalle Bank, N.A.,* 02 Civ. 6384 (MBM) (HBP)*,* 2004 U.S. Dist. LEXIS 3403, at *4 (S.D.N.Y. Mar. 4, 2004) ("A litigant may not use discovery to determine whether there is a cause of action . . . The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."); *MacKnight v. Leonard Morse Hosp.*, 828 F.2d 48, 52 (1st Cir. 1987) (discussing requested discovery as a fishing expedition as plaintiff did not "disclose some relevant facts and basis for them before the requested discovery would be allowed"); *Sabby Volatility Warrant Master Fund Ltd. v. Safety Shot, Inc*., 24 Civ. 920 (NRB), 2025 U.S. Dist. LEXIS 48437, at *10 (S.D.N.Y. Mar. 17, 2025) (denying "fishing expedition" to establish defense where defendant had no "factual support", despite discovery, but merely a "good reason to believe" that plaintiff conspired to manipulate securities prices); *Buttram v. City of Bessemer*, 2:17-CV-0846-VEH, 2018 U.S. Dist. LEXIS 7326, at *10 (N.D. Ala. Jan. 17, 2018) (plaintiff not alleging facts as to an element of deprivation of rights cause of action).

not add up to absolute certainty" because "absolute certainty is not required."). Here, Plaintiffs have alleged that their iLearningEngines shares are traceable to the Offering Documents and that they will construct a reliable chain of title with discovery that would allow them to prove that their shares are traceable to the Offering Documents. ¶¶29-30, 417-36. Plaintiffs establish the plausibility of their allegations by evidencing that the shares registered by the Offering Documents exceeded iLearningEngines public float and covered over 87.1% of its outstanding shares, there was a small percentage and limited market for iLearningEngines shares that were trading prior to the effectiveness of the Form S-8 Registration Statement,[7] and the method by which Plaintiffs will prove that that the chain of title for their iLearningEngines shares will trace to the Offering Documents. *See* ¶¶137, 139, 241, 247, 418, 417-36, 439-440; Porritt Decl., Ex. A, at 45 (stating Resale Securities registered in Form S-1 Registration Statement represent 90.9% of public float). Moreover, Plaintiffs have alleged that Plaintiff Al Hamid's purchases were during the same time as the shares that were registered in the Form S-1 Registration Statement were being sold into the market (*see* ¶¶149-50 (Prospectus Supplement Nos. 1 and 2 being issued as shares still being sold under the Form S-1 Registration Statement); ¶30; Exhibit A (Plaintiff Al Hamid's certification evidencing shares being purchased at the time the Prospectus supplements were being filed with the SEC))[8] and that Plaintiff Leveque shares were purchased at the time the shares registered by the Form S-8 Registration Statement were being sold into the market. *See* ¶¶29, 420; ECF No. 36.

---

[7] The Independent Directors argue that Plaintiffs "ignore' the other iLearningEngines shares from the SPAC Merger and argue that Plaintiffs have not asserted claims for the shares coming from the Form S-4. Ind. Def. Br. at 10-11. Plaintiffs acknowledged in the Complaint that there were certain shares registered and trading in the market but they appear to be the previously registered Arrowroot shares renamed as iLearningEngines shares following the Merger. *See* ECF No.85-6 at 622 of 653, Annex K ("Class A ordinary shares . . . of Arrowroot Acquisition Corp. a Delaware corporation (Ticker: "ARRW"), which shall have renamed following the Business Combination, iLearning Engines.").
[8] Plaintiff Al Hamid had multiple purchases of iLearningEngines following the effective dates of the Form S-8 Registration Statement and Form S-1 Registration Statement. Plaintiff Al Hamid alleged that his purchases are traceable to both registration statements. ¶30. Defendants' argument that he did not refer to the "particular registration statement" is misguided. Ind. Dir. Br. at 12 n.8.

13

Thus, the Complaint plausibly alleges that Plaintiffs' shares are traceable, that at the time of the Offering Documents the newly registered shares of iLearningEngines dwarfed the previously registered shares and covered 87.1% of its total outstanding shares, and 100% of the public float, and that Plaintiffs purchased the shares at the time the newly registered shares were being actively sold into the market by the selling shareholders who shares were registered by the Offering Documents. As is here, where the "complaint contains factual allegations that raise a right to relief above the speculative level, thereby nudging the claims across the line from conceivable to plausible, dismissal is improper." *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024).[9] "[T]the bar plaintiffs must clear to plead their claim is set only as high as 'plausibility,' not, as defendants would have it, certain knowledge . . . plaintiffs. theory of standing is straightforward, eminently plausible, and, indeed, highly likely. Defendants' alternate explanation—that plaintiffs chanced to purchase some of the . . . . unrestricted shares . . . is plausible, but not as plausible as plaintiffs' explanation." *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1119 (N.D. Cal. 2014), *aff'd in part, rev'd in part and remanded*, 669 F. App'x 878 (9th Cir. 2016) (distinguishing facts from that of *Century Aluminum* (discussed below) and finding Section 11 standing adequately alleged as the complaint "allege[s] that all or very nearly all the shares of stock available publically at the time were traceable to the registration statement").

The Complaint's allegations are like those the court found adequately alleged Section 11 standing in *In re EveryWare Global, Inc. Securities Litigation*, 175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017). In *EveryWare Global,* Plaintiffs alleged that they purchased shares when the shares

---

[9] *See also, Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im* plausible.").

were being sold into the market, that at the time of the offering "1,7500,000 [sic] shares were sold in the Secondary Offering in comparison to the pre-existing public float of 2,023,000 shares", and "that in discovery they would seek to prove traceability through third-party subpoenas to the Depository Trust Company" and other non-parties. *Id.* at 866. In rendering its decision, the court acknowledged that it "agrees with the reasoning in *Century Aluminum* that *Iqbal* and *Twombly* 'moved us away from a system of pure notice pleading'" and as such "purely conclusory allegations" are "not sufficient to survive a motion to dismiss on standing grounds[.]" The court, however, found that plaintiffs' allegations were the "sufficient, non-conclusory allegations of standing" that establish that plaintiffs have standing for their Section 11 claims. *Id.* Thus, as in *EveryWare Global*, Plaintiffs have sufficiently alleged non-conclusory allegations of their Section 11 standing. *Id.; see also In re Coinbase Glob., Inc. Sec. Litig.,* No. 2:22-CV-04915 (BRM) (LDW), 2024 WL 4053009, at \*19 (D.N.J. Sept. 5, 2024)*, reconsideration denied, N*o. 2:22-CV-04915 (BRM) (LDW), 2025 WL 1040633 (D.N.J. Apr. 8, 2025) (noting *Krim* but finding Section 11 standing adequately alleged when plaintiff alleged that 74% of the shares entering the market were pursuant to the registration statement and plaintiff purchased shares at the times the registered shares were being offered for sale into the market).

Defendants, however, argue that the Complaint merely contains conclusory allegations like the Court was confronted with in *Fanucchi v. Enviva, Inc.*, No. CV DKC 22-2844, 2024 WL 3302564 (D. Md. July 3, 2024) (Chasanow, J.). This is not so. In *Fanucchi*, Plaintiff did not even plainly allege that his purchases were pursuant or traceable to the secondary offering in a singular sentence. *See* Amended Class Action Complaint for Violations of the Federal Securities Laws, at ¶228, *Fagen v. Enviva*, 8:22-cv-02844 (D. Md. Apr. 3, 2024), ECF No. 34 ("This claim is asserted by Plaintiff against Defendants . . . and the Underwriter Defendants individually and on behalf of

15

all other persons who acquired shares traceable to the Offering, in which the shares issued pursuant to the Offering Documents were sold"); *id.* at ¶44 ("The Underwriter Defendants owed Plaintiff and the other members of the Class who purchased Enviva common stock pursuant or traceable to the Offering Documents the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading"). In fact, in *Fanucchi*, the plaintiff made no attempts to allege *any* facts that could have plausibly established that his shares were traceable to the offering.

Moreover, plaintiff's sole argument in opposition was that these aforementioned allegations were sufficient. Memorandum Of Law In Opposition To The Underwriter Defendants' Motion To Dismiss, at 10, *Fagen v. Enviva*, 8:22-cv-02844 (D. Md. July 3, 2024), ECF No. 67 ("Plaintiff has both alleged that he purchased traceable to the Offering during the Offering period and submitted a sworn PSLRA certification . . . to the effect that he understood his shares emanated from the Offering. ¶44.").[10] Unlike here, the plaintiff in *Fanucchi* did not allege any other factual support such as how many shares were registered by the registration statement and the proportion of the registered shares available in the market prior to the secondary offering to the registered

---

[10] Other courts have routinely found when a plaintiff alleges that their purchases are pursuant or traceable to the registration statement that this is sufficient for alleging Section 11 standing. *See, e.g.*, *Perry v. Duoyuan Printing, Inc.*, No. 10 CIV. 7235 GBD, 2013 WL 4505199, at *9 (S.D.N.Y. Aug. 22, 2013) ("[T]he pleading requirement is not elaborate. Plaintiffs have not been required to explain how their shares can be traced; general allegations that plaintiff purchased 'pursuant to' or traceable to [a] false registration statement have been held sufficient to state a claim." (quoting *In re Global Crossing, Ltd. Sec. Litig.*, 313 F.Supp.2d 189, 208 (S.D.N.Y. 2003)); *In re Wachovia Equity Sec. Litig.,* 753 F.Supp.2d 326, 373 (S.D.N.Y. 2011) ("The pleading requirement for Section 11 standing is satisfied by general allegations that plaintiff purchased pursuant to or traceable to a false registration statement." (citation and internal quotation marks omitted)); *Northumberland Cnty. Ret. Sys. v. Kenworthy*, No. CIV-11-520-D, 2013 WL 5230000, at *6 (W.D. Okla. Sept. 16, 2013) ("Although the movants contend that the Amended Complaint contains only conclusory allegations that the purchases were pursuant to or traceable to the offering, the Court finds that the allegations are sufficient to place all defendants on notice of the basis of Lead Plaintiffs' claims. Whether Lead Plaintiffs can prove those allegations is a matter that involves consideration of the merits of the claims rather than the sufficiency of the pleadings and should not normally be considered at this stage of the litigation.").

shares in the secondary offer.[11] The plaintiff also did not allege that he would prove his shares would trace to the offering and the detailed methodology that would be undertaken that would establish the chain-of-title tracing of his purchases.

Defendants further argue that Plaintiffs' factual allegations supporting the plausibility of that the iLearningEngines share they purchased are traceable to the Offering Documents are insufficient in the absence of proving a chain of title. Specifically, Defendants argue than an out-of-circuit decision from the District of Colorado, *Cupat v. Palantir Techs., Inc.*, No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025), establishes that statistics is not supportive of plausibility. The facts of *Palantir*, however, are clearly distinguishable from here.

In *Palantir,* plaintiff allege that Palantir Technologies Inc. went public via a direct listing that was a "unified liquidity event" whereby 489,128,232 shares entered the market at the same time with 257,135,415 shares registered through the registration statement at issue with the remaining 231,992,817 shares being freely tradeable and exempt from registration under the Securities Act. *Id.* at \*2, 15. In other words, 47.4% of the shares trading on the market were not registered in the challenged offering. *Id.* In an attempt to overcome this, the *Palantir* plaintiff argued that probabilistically at least one of its shares traced to the offering by calculating statistically that the chance it purchased one share in the offering was 99.9% by applying statistical calculations to determine the statistical likelihood that at least one of the 1,280,700 shares purchases was from the 52.6% of registered shares that entered the market in the direct listing. Second Amended Consolidated Class Action Complaint For Violations Of The Federal Securities Laws, ¶¶237-242, *Cupat v. Palantir Techs.*, *Inc.*, 1:22-cv-02384-GPG-SBP (D. Colo. May 24, 2024), ECF No. 92; *see id.* at ¶239 ("A simple application of the 52.6% probability that any single

---

[11] Defendants also rely on *Ciarciello v. Bioventus, Inc.*, 1:23-CV-32, 2023 WL 7300081 (D. Md. Nov. 6, 2023). *Ciarciello*, is distinguishable as plaintiff made only a bare bone assertion of traceability.

17

share purchased was a registered share establishes that the probability that CalPERS did not purchase a single registered share is infinitesimally small. In particular, the likelihood is equal to $(1 - 52.6\%)\, 1{,}280{,}700$, which is approximately $4 \times 10^{-414{,}881}$"). The Complaint, here, does not allege this "statistical" tracing.

Notably, Plaintiffs are not alleging that probabilistically all of the shares they purchased are traceable to the Offering Documents nor do they argue that they will prove their shares are statistically traceable - i.e. without the need to prove a chain of title. Rather, Plaintiff Leveque has specifically alleged that he purchased shares pursuant or traceable to the Form S-8 Registration Statement and Plaintiff Al Hamid has specifically alleged he purchased shares pursuant or traceable to the Offering Documents. ¶¶29-30. Plaintiffs have alleged that they "will prove that the shares they purchased were traceable to the Offering Documents through a tracing analysis" (¶425) and detailed the process they would undertake to prove such ¶¶426-36.

Plaintiffs allege that the overwhelming number of shares in the market were registered shares from the Offering Documents as compared to other shares. This is a non-conclusory allegation that evidences the plausibility of the traceability of their shares, but Plaintiffs are not espousing the "statistical" arguments raised by plaintiffs in *Palantir* or *Pirani II*. At the pleading stage, allegations that plausibly suggest that at least one of the shares they purchased is traceable to the Offering Document is sufficient. *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (finding that standing adequately alleged where foods were 89% of food package weights were mislabeled, plaintiff regularly purchased those foods, and "drawing all reasonable inferences in his favor, it is plausible that [Plaintiff] overpaid for at least one product"); *In re EveryWare Glob.*, 175 F. Supp. 3d at 866; *In re Coinbase*, 2024 WL 4053009, at \*19.[12]

---

[12] In *Yates v. Municipal Mortgage & Equity, LLC*, the Fourth Circuit found that for a Section 12(a)(2) claim, plaintiff's allegations that "pursuant and/or traceable to" language—coupled with sufficient supporting facts—can give rise to a

18

Nothing more is required at the pleading stage. *See id.*; *see also In re Mun. Mortg. & Equity*, 876 F. Supp. 2d at 658 (finding Section 11 standing adequately alleged when plaintiff alleged additional facts concerning timing of purchase and delivery supported plausibility of ability to trace); *In re 2U, Inc. Sec. Class Action,* No. CV TDC-19-3455, 2021 WL 3418841, at *25 (D. Md. Aug. 5, 2021) (finding conclusory allegation that plaintiff purchased in a secondary offering sufficient for standing and noting that "[a]lternatively, plaintiffs may meet this requirement by alleging sufficient facts to show 'that their shares, although purchased in the aftermarket, can be traced back to the' offering.").

Defendants further rely upon other out-of-circuit cases for the premise that allegations of probability of or the likelihood of purchasing a share is insufficient to allege Section 11 liability. Each of these cases is distinguishable. First, in *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005), although there was high probability that the shares purchased by plaintiff were registered shares, plaintiff's expert "acknowledged that there is no way to track individual shares within a pool once it becomes contaminated with outside shares" and therefore conceded that plaintiffs could not later prove tracing. *Id.* at 492. As a result, the issue was whether a high probability of purchasing a traceable stock was sufficient to prove traceability with the Fifth Circuit stating that "general statistics say nothing about the shares that a specific person actually owns and have no

plausible inference of standing in certain circumstances." 744 F.3d 874, 900 (4th Cir. 2014). This, decision however, was limited to establishing whether a plaintiff had sufficiently alleged standing for a Section 12(a)(2) claim. *See id.*

Notably, *In re Municipal Mortgage & Equity*, the district court found that the standards for pleading standing differed for Section 11 and Section 12(a)(2). 876 F. Supp. 2d at 658-61. The district court found plaintiff had plausibly alleged standing for his Section 11 claim concerning a secondary offering based on the date of his stock purchase. *Id.* at 659. The district court, however, found these same allegations were insufficient to plead standing for his Section 12(a)(2) claim because he failed to allege that he purchased directly from the issuer and had alleged that purchase price was "$26.32" when the secondary offering price was "$26.51." *Id.* at 660. While the Fourth Circuit's *Yates* opinion post-dated the district court's opinion, it did displace district court's well-reasoned findings on Section 11 standing and merely articulated the heightened showing for standing that applies to Section 12(a)(2) claims. As Plaintiffs do not assert Section 12(a)(2) claims, *Yates* does not apply.

ability to separate those shares upon which standing can be based from those for which standing is improper." *Id.* at 501. Notably, the Fifth Circuit did not foreclose what other ways may be used to prove tracing stating "[w]e did not speculate on what other methods might be available to satisfy the traceability requirement for aftermarket purchases." Here, Plaintiffs allege their shares are traceable, that they can trace their shares to the Offering Documents, and that discovery will provide the evidential documents to prove such.

*In re Century Aluminum Company Securities Litigation*, 729 F.3d 1104 (9th Cir. 2013) is also distinguishable. Notably, prior to the secondary offering by Century Aluminum, more than 49 million shares were already trading in the market with the secondary offering registering half as many shares, 24.5 million shares. *Id. at* 1106. The Ninth Circuit noted that as the plaintiffs purchased in the aftermarket they could "trace the chain of title for their shares back to the secondary offering, starting with their own purchases and ending with someone who bought directly in the secondary offering" to prove their standing. *Id.* at 1106-07. The Ninth Circuit, however, recognized at that time in 2013 that such tracing was difficult, if not impossible. *Id.* at 1108. Despite factual enhancements such as proximity in purchase date and market reaction to shares entering the market, the Ninth Circuit found that plaintiffs allegations, although consistent with standing, did not rise to the level of plausible because "they do not tend to exclude the possibility that their shares came from the pool of previously issued shares" as the 49 million previous registered shares were an "obvious alternative explanation[.]" *Id.* Again, here Plaintiffs have not only alleged the factual enhancements but also have provide allegations that shares sold to Plaintiffs were the newly registered shares from the Offering Documents and not previously registered shares in part, the Offering Documents cover over 100% of the public float and 87.1% of all outstanding shares.

A related factual situation resulted in the First Circuit not finding standing plausibly alleged in *In re Ariad Pharmaceuticals., Inc. Securities Litigation*, 842 F.3d 744 (1st Cir. 2016). In *Ariad*, the First Circuit found that plaintiffs have not plausibly alleged traceability to a secondary offering because the secondary offering registered only 15.3 million shares when there were already 166 million shares outstanding. *Id.* at 756. Again, the factual underpinnings of this decision is opposite of the facts presented here.

*TransEnterix Investor Group v. TransEnterix, Inc.*, 272 F. Supp. 3d 740 (E.D.N.C. 2017) similarly suffers from the same issues. In evaluating whether plaintiffs have adequately alleged standing, the court recognized that plausibility standard meant that "Plaintiffs must plead facts *suggesting that the shares*, although purchased in the aftermarket, can be traced back to the . . . at-the-market offering." *Id.* at 761 (emphasis added). Applying the standards from *Iqbal and Twombly*, the court found that plaintiffs had not suggested this was plausible because over 100 million TransEnterix shares were already trading in the market and "after the offering commenced, roughly 92% of the shares available for purchase by the public were not issued under" the registration statement. *Id.* Here, Plaintiffs have alleged facts supporting the exact opposite: the shares registered in the Offering Documents exceeded 100% of the public float. [13]

---

[13] Defendants additionally cite to a number of district courts in footnotes that contend that allegations of probability are insufficient for supporting Section 11 standing. These cases heavily rely upon *Krim* which Plaintiffs have already distinguished and/or the authorities are distinguishable on other bases. *See Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1374-76 (M.D. Fla. 2008) (citing to *Krim* but not discussing any statistical arguments by plaintiffs, but finding that "Lead Plaintiffs have not set forth how they could show that Ratcliff's purchases of SPO stock were traceable" or what evidence they could use to establish tracing so such claims were conclusory*")*; *Davidco Investors, LLC v. Anchor Glass Container Corp.,* Case No. 8:04-cv-2561-T-24 EAJ, 2006 U.S. Dist. LEXIS 11527, at *70 (M.D. Fla. Mar. 6, 2006) (merely citing *Krim's* holding as a standard of law but ruling plaintiff had no standing because "offered no evidence" shares were traceable to prospectus); *Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019 WL 5864581, at *9 (N.D. Cal. Nov. 8, 2019) (following *Century Aluminum* and finding, in part, no standing because plaintiff did not cite any authority showing how a favorable percentage of offered shares was supportive of plausibility); *In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2008 WL 11334395, at *11 (N.D. Ga. Aug. 5, 2008) (following *Krim*); *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657, at *6 (S.D. Tex. July 6, 2016) (following *Krim*); *In re Fleetboston Fin. Corp. Secs. Litig.*, 253 F.R.D. 315 (D.N.J. 2008) (discussing *Krim* in the context of numerosity for class certification).

21

Thus, as Plaintiffs have plausibly alleged the tracing of their iLearningEngines shares to the Offering Documents, Defendants' motion to dismiss the Securities Act claims for lack of standing should be denied.[14]

**B.  The Complaint Adequately Alleges Violations of Section 15 of the Securities Act.**

"Section 15 of the Securities Act creates control-person liability only where Sections 11 or 12 have been violated." *In re Mun. Mortg. & Equity,* 876 F. Supp. 2d at 663. As Plaintiffs have adequately alleged an underlying violation of Section 11, Plaintiffs claims for violations under Section 15 survive Defendants' motions to dismiss. *See id.* (denying dismissal of Section 15 claims when plaintiffs' Section 11 claims survived the motion to dismiss).

**C.  Defendants Barger, Davis, Melham, Moe, and Olivier are Control Persons**

Neither "[t]he PSLRA nor Rule 9(b)'s heightened pleading standards apply to control person claims; rather it is sufficient to satisfy Rule 8." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 408 (D. Md. 2004). Thus, the Complaint must merely allege that Defendants Barger, Davis, Melham, and Moe had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise" which, in turn, means that they "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws ... [and] had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability." *Black v. Martek Biosciences Corp.*, No.

---

[14] In the event that this Court, however, finds such allegations insufficient, Plaintiffs respectfully request the Court grant their motion for leave from the stay of discovery to conduct limited discovery of targeted non-parties to obtain the necessary documentation to establish the chains of title of their iLearningEngines stock purchases to the Offering Documents. If granted, Plaintiffs will respectfully seek leave to amend the Complaint to allege the evidence obtained during discovery to address any issues the Court raises concerning Plaintiffs' standing to pursue the Securities Act claims.

CV MJG-05-1224, 2006 WL 8435572, at *7 (D. Md. June 14, 2006). For Section 15 claims, a plaintiff need not allege "culpable participation." *See id.* at *6.

Here, the Complaint alleges that the "Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of iLearningEngines, including the content of its public statements and of the Offering Documents." ¶454. The Complaint further alleges that "[t]he Individual Defendants were controlling persons of iLearningEngines when the Offering Documents were filed and became effective due to their senior executive positions therewith; their direct involvement i[n] iLearningEngines' day-to-day operations; and their participation in, and preparation of, the Offering Documents."[15] ¶453. Notably, the Complaint alleges that each of the Independent Directors signed the Offering Documents authorizing the filing of the Form S-8 Registration Statement and Form S-1 Registration Statement. ¶¶243, 250, 441, 444. The Form S-8 Registration Statement and Form S-1 Registration Statement each require signatures by a majority of the board in order to be filed. 15 U.S.C. §77f(a) ("Any security may be registered with the Commission under the terms and conditions hereinafter provided, by filing a registration statement in triplicate, at least one of which shall be signed . . . the majority of its board of directors"). As directors, the Independent Directors, each had the right to withhold their signatures if they disapproved of the statements included the Form S-8 Registration Statement and the Form S-1 Registration Statement. By each of the Independent Directors signing these registration statement they exerted the ability to control the dissemination the Offering Documents that contained the materially false and/or misleading statements therein.

---

[15] Defendants attempt to deflect from this allegation for the allegations directed at the Individual Defendants that were also executives. *See e.g.*, Olivier Br. at 14. Notwithstanding, the rest of the allegation is applicable to Defendants Barger, Davis, Melham, Moe, and Olivier.

23

Defendants rely on *In re Constellation Energy Group., Inc. Securities Litigation*, 738 F. Supp. 2d 614 (D. Md. 2010) for the premise that their positions as board members and signatories to the Offering Documents are insufficient to allege control. The Complaint's allegations of their control, however, are sufficient to plead control liability. *See In re Sourcefire, Inc. Sec. Litig.,* No. CIV. JFM 07-1210, 2008 WL 1827484, at *7 (D. Md. Apr. 23, 2008) (denying motion to dismiss Section 15 claims, in part, because "summarizing the identity of the parties, plaintiff notes that each of the individual defendants was either a director or officer of Sourcefire and signed or authorized the signing of the offering document" stating that "[s]uch facts are sufficient to carry the control person claim past the motion to dismiss stage"); *In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534, 555 (N.D. Cal. 2009) ("Where a board member is alleged to have signed the registration statements at issue, ... courts have presumed that the director exercised actual authority and control, at least over the contents of and/or release of those statements"); *In re Alstom SA Securities Litigation*, 406 F.Supp.2d 433, 487 (S.D.N.Y. 2005) ("[C]ourts have held that officer or director status alone does not constitute control.... In contrast, if that same officer or director has signed financial statements containing materially false or misleading statements, courts have held that control as to the financial statements is sufficiently pled," (collecting cases)); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 97 (D. Mass. 2010) (finding control adequate alleged as complaint alleged their involvement and control over the contents of the offering documents and noting that control allegations are "usually a question of fact that cannot be resolved at the pleading stage."); *In re Metropolitan Securities Litigation*, 532 F.Supp.2d 1260, 1296 (E.D. Wash. 2007) ("While an individual's status as an officer or director of the issuing corporation is insufficient, standing alone, to demonstrate the exercise of control, an officer or director who has signed an SEC filing does exercise control").

24

## V.    CONCLUSION.

For the reasons stated herein, the Court should deny Defendants motions to dismiss the Securities Act Claims for lack of standing and liability under Section 15. If the Court grants dismissal of the Securities Act claims, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for a partial lifting of the discovery stay to permit Plaintiffs to obtain the evidence to prove that their iLearningEngines shares are traceable to the Offering Documents so that Plaintiffs may seek leave to amend the Complaint to correct any deficiencies that the Court identifies.


Dated: September 18, 2025                              Respectfully submitted,

                                                      **LEVI & KORSINSKY, LLP**

                                                      _/ s / Nicholas I. Porritt_
                                                      Nicholas I. Porritt (Bar No. 17078)
                                                      Alexander A. Krot III (_attorney admission
                                                      application forthcoming_).
                                                      1101 Vermont Ave, NW Suite 800
                                                      Washington, DC 20005
                                                      Tel: (202)-524-4290
                                                      Fax: (212) 363-7171
                                                      Email: nporritt@zlk.com
                                                      Email: akrot@zlk.com

                                                      _Counsel for Lead Plaintiff Louis Leveque,
                                                      Plaintiff Iqbal Al Hamid, and Lead
                                                      Counsel for the Class_

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, I electronically filed the foregoing Plaintiffs'

Memorandum Of Law In Opposition To Independent Defendants' Motions To Dismiss The

Amended Class Action Complaint by using the CM/ECF system which will send a notice of

electronic filing to all counsel or parties of record.

*/s/ Nicholas I. Porritt*
Nicholas I. Porritt