**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**


**DANNY WALKER**, Individually and on Behalf of )
All Others Similarly Situated, )
                              )
                  Plaintiff, )
                              )   Civil Action No. DKC 24-2900
       v. )
                              )
**HARISH CHIDAMBARAN**, *et al.*, )
                              )
                Defendants. )
                              )
                              )
                              )
                              )
                              )
                              )


**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT MARCUM LLP'S**
**MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

**INTRODUCTION**.............................................................................................................. 1

**STATEMENT OF FACTS**................................................................................................. 5

**ARGUMENT**....................................................................................................................... 6

I.   THE SECURITIES ACT IS DESIGNED BY CONGRESS TO PROTECT
     INVESTORS THROUGH THE DISCLOSURE OF MATERIAL FINANCIAL
     INFORMATION ENFORCED BY A STRICT LIABILITY REGIME. ...................... 6

   A. *The Securities Act was enacted to require issuers of securities to disclose accurate*
      *financial information to the public.* .......................................................................... 6

   B.  *The Securities Act replaced common law requirement of scienter with strict*
       *liability.* .................................................................................................................... 7

II.  MARCUM IS LIABLE PURSUANT TO § 11 OF THE ACT FOR
     MISSTATEMENTS CONTAINED IN ILEARNINGENGINES' FINANCIAL
     STATEMENTS THAT IT CERTIFIED..................................................................... 11

   A.  *Every Accountant Who Certifies Financial Statements Incorporated Into a*
       *Registration Statement is Prima Facie Liable For Misrepresentations and*
       *Omissions They Contain.* ......................................................................................... 11

   B.  *Omnicare Does Not Immunize Auditors From Liability For Misrepresentations in*
       *Certified Financial Statements.* ............................................................................... 14

i

C.  *Marcum's Liability Under § 11(a)(4) is Not Limited to Its Audit Opinion Itself.*  21

D.  *§ 11(a)(4) Does Not Create a Guarantee of Every Line in the Registration Statement.*...................................................................................................... 24

E.  *Plaintiffs Plausibly Allege Section 11 Standing.*..................................................... 25

**CONCLUSION** ............................................................................................................... **28**

**TABLE OF AUTHORITIES**

**Cases**                                                                 **Pages**

*Adams v. Standard Knitting Mills, Inc.*,                                     24

   623 F.2d 422 (6th Cir. 1980)

*Advoc. Health Care Network v. Stapleton*,                                   22

   581 U.S. 468 (2017)

*Anderson v. Hancock*,                                                       22

   820 F.3d 670 (4th Cir. 2016)

*Baker, Watts & Co. v. Miles & Stockbridge*,                                  9

   876 F.2d 1101 (4th Cir. 1989)

*Barbour v. Garland*,                                                        26

   105 F.4th 579 (4th Cir. 2024)

*Boise Cascade Corp. v. U.S. E.P.A.*,                                        22

   942 F.2d 1427 (9th Cir. 1991)

*In re Century Aluminum Co. Secs. Litig.*,                                   26

   729 F.3d 1104 (9th Cir. 2013)

*In re Charles Schwab Corp. Secs. Litig.*,                                   23

   257 F.R.D. 534 (N.D. Cal. 2009)

*In re Coinbase Glob., Inc. Sec. Litig.*,                                    27

   No. 2:22-CV-04915 (BRM) (LDW), 2024 WL 4053009 (D.N.J. Sept. 5, 2024)

*In re Countrywide Fin. Corp. Sec. Litig.*,                                  14

   588 F. Supp. 2d 1132 (C.D. Cal. 2008)

iii

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*,     14

    454 F.3d 1168 (10th Cir. 2006)

*Derry v. Peek*,     9

    (1889) 14 App Cas 337

*Ernst & Ernst v. Hochfelder*,     6

    425 U.S. 185 (1976)

*Escott v. BarChris Const. Corp.*,     4

    283 F. Supp. 643 (S.D.N.Y. 1968)

*In re EveryWare Global, Inc. Secs. Litig.*,     27

    175 F. Supp. 3d 837 (S.D. Ohio 2016)

*Fait v. Regions Fin. Corp.*,     19

    655 F.3d 105 (2d Cir. 2011)

*Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*,     25

    No. CV DKC 23-0574, 2023 WL 4134427 (D. Md. June 22, 2023)

*Fanucchi v. Enviva Inc.*,     26

    No. CV DKC 22-2844, 2024 WL 3302564 (D. Md. July 3, 2024)

*Gustafson v. Alloyd Co.*,     11

    513 U.S. 561 (1995)

*Herman & MacLean v. Huddleston*,     *Passim*

    459 U.S. 375 (1983)

*Hunt v. Bloom Energy Corp.*,                                                              16, 18

    No. 19-CV-02935-HSG, 2021 WL 4461171 (N.D. Cal. Sept. 29,

    2021)

*IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*,                                  27

    849 F.3d 325 (6th Cir. 2017)

*Johnson v. CBD Energy Ltd.*,                                                              17, 18

    No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016)

*Krim v. pcOrder.com, Inc.*,                                                               26

    402 F.3d 489 (5th Cir. 2005)

*Lee v. Ernst & Young, LLP*,                                                               4, 13

    294 F.3d 969 (8th Cir. 2002)

*In re Lehman Bros. Sec. & ERISA Litig.*,                                                  4, 12, 13

    131 F. Supp. 3d 241 (S.D.N.Y. 2015)

*Malone v. Microdyne Corp.*,                                                               15

    26 F.3d 471 (4th Cir. 1994)

*Monroe v. Hughes*,                                                                        23

    31 F.3d 772 (9th Cir. 1994)

*In re McKesson HBOC, Inc. Sec. Litig.*,                                                   24

    126 F. Supp. 2d 1248 (N.D. Cal. 2000)

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,            *Passim*

    575 U.S. 175 (2015)

v

*In re OSG Sec. Litig.*,                                                        19

 971 F. Supp. 2d 387 (S.D.N.Y. 2013)

*In re: Petrobras Securities Litigation,*                                      20

 No. 14-CV-9662 (JSR), 2016 WL 1533553 (S.D.N.Y. Feb. 19,

 2016)

*Pinter v. Dahl,*                                                              20

 486 U.S. 622 (1988)

*Pirani v. Slack Techs., Inc.,*                                                25

 127 F.4th 1183 (9th Cir. 2025)

*Querub v. Hong Kong*,                                                      22, 23

 649 F. App'x 55 (2d Cir. 2016)

*Rosenberg v. Hano*,                                                            9

 121 F.2d 818 (3d Cir. 1941)

*S. E. C. v. Seaboard Corp.,*                                                  12

 677 F.2d 1301 (9th Cir. 1982)

*Slater v. A.G. Edwards & Sons, Inc.*,                                         27

 719 F.3d 1190 (10th Cir. 2013)

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,    12, 13

 243 F. Supp. 3d 1109 (E.D. Cal. 2017)

*Summers v. Earth Island Institution*,                                         26

 555 U.S. 488 (2009)

vi

*In re SunEdison, Inc. Sec. Litig.*,                                                      23

    300 F. Supp. 3d 444 (S.D.N.Y. 2018)

*In re Suprema Specialties, Inc. Secs. Litig.*,                                           25

    438 F.3d 256 (3d Cir. 2006)

*In re Thornburg Mortg., Inc. Sec. Litig.*,                                               26

    683 F. Supp. 2d 1236 (D.N.M. 2010)

*In re Ubiquiti Networks, Inc. Sec. Litig.,*                                              27

    33 F. Supp. 3d 1107 (N.D. Cal. 2014)

*United States v. Arthur Young & Co.*,                                                    10

    465 U.S. 805 (1984)

*Williams v. Taylor,*                                                                     22

    529 U.S. 362 (2000)

*In re Worlds of Wonder Sec. Litig.*,                                                4, 13, 15

    35 F.3d 1407 (9th Cir. 1994)

*Yates v. Mun. Mortg. & Equity, LLC,*                                                    3 ,8

    744 F.3d 874 (4th Cir. 2014)

**STATUTES**

15 U.S.C. §§ 77a et seq.                                                                 1, 6

15 U.S.C. § 77g(a)                                                                        6

15 U.S.C. § 77k(a)                                                                        7

15 U.S.C. § 77k(a)(4)                                                                *Passim*

15 U.S.C. § 77k(b)(3)                                      3, 17, 24

15 U.S.C. § 77aa(25)-(26)                                  7, 12

15 U.S.C. § 78r(a)                                         14

**REGULATIONS**

17 C.F.R. § 210.1-02(f)                                    7, 12

17 C.F.R. § 210.5-03(b)                                    7

17 C.F.R. § 229.10(b)(2)                                   7

17 C.F.R. Pt. 210                                          20

**OTHER AUTHORITIES**

H.R.Rep. No. 85, 73d Cong., 1st Sess. (1933)              8

Senate Report No. 47, 73d Cong., 1st Sess. (1933)        7

Shulman, Civil Liability and the Securities Act, 43 Yale L.J. 235-38      10
(1933)

## INTRODUCTION

The Securities Act of 1933, 15 U.S.C. §§ 77a *et seq*., was enacted by Congress in the wake of the Great Depression and Wall Street Crash to protect investors from fraud and dishonest dealings in the offering of new securities to the public. It created new disclosure requirements for issuers backed up by a strict liability regime for misrepresentations and omissions. It expanded the liability for misrepresentation and omissions beyond that imposed under common law for negligent misrepresentation and deceit and also imposed liability on critical gatekeepers of securities offerings: the directors of the issuer, underwriters of the offering, and, importantly, the public accountants who were required under the Act to certify financial information contained in offering documents. The purpose of the new disclosure requirements and strict liability regime was to improve the information available to value new offerings and to prevent and deter fraudulent offerings from being undertaken at all.

ILearningEngines was exactly the sort of fraudulent offering that the Securities Act was intended to deter and prevent. It should never have gone public. Its revenues were almost entirely fictitious and the result of round trip transactions with an undisclosed related party in which iLearningEngines executives and directors had economic interest and control. When this information was brought to public attention by Hindenburg Research on August 29, 2024, just five months after ILearningEngines had gone public, the entire house of cards quickly collapsed. An investigation by the United States Securities & Exchange Commission was commenced. An internal investigation by iLearningEngines' Board of Directors led to the departures of senior management, including Defendants Chidambaran, Naqvi, and Arackal. ILearningEngines' prior financial statements that had been included in its offering documents were withdrawn as unreliable. Finally, on December 20, 2024, iLearningEngines filed for bankruptcy and self-

reported potential violations of federal law to the United States Department of Justice. ILearningEngines' lifetime as a public company had lasted just eight months. In April 2025, its entire assets were sold for just $1.5 million, a 99.999% decrease from the value iLearningEngines had placed on itself during the public offering process.

In certifying iLearningEngines' misleading financial statements included in its offering documents, Marcum LLP failed in its role as a gatekeeper against fraudulent offerings. Without Marcum's certification, iLearningEngines would never have been able to go public and Plaintiffs and other members of the Class would never have suffered millions of dollars of losses. Congress explicitly placed liability for those losses on accountants such as Marcum, subject to Marcum proving it acted with reasonable care. The detailed allegations in the Amended Complaint regarding iLearningEngines' fake revenue and undisclosed related party transactions are more than sufficient to meet Plaintiffs' minimal pleading burden to allege a claim pursuant to § 11(a)(4) of the Act. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)(Securities Act places "minimal burden" on the plaintiff).

Marcum does not dispute that iLearningEngines' financial statements that it certified and that were included in its offering documents to induce investors to purchase iLearningEngines stock contained massive misrepresentations so that almost all the claimed revenue was entirely fake. Marcum, however, seeks to avoid the straightforward application of § 11(a)(4) to its conduct through four arguments, which should each be rejected. Marcum's main argument is that Plaintiffs have failed to plead that its audit opinion itself contained any misrepresentation or omission. Memorandum of Law in Support of Defendant Marcum LLP's Motion to Dismiss the Amended Class Action Complaint for Violations of the Federal Securities Laws, at 9-14. This argument is

2

completely beside the point and irrelevant. Plaintiffs do not base liability under § 11(a)(4) on any misrepresentation or omission contained within Marcum's opinion itself; Marcum's liability results from misrepresentations and omissions contained in the portions of iLearningEngines' registration statements, *i. e.*, its financial statements, that Marcum certified. This follows the express language of § 11(a)(4) providing that purchasers of a registered security has a claim against "every accountant . . . who has with his consent been named as having prepared ***or certified*** any part of the registration statement . . . with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared ***or certified*** by him."  15 U.S.C. § 77k(a)(4) (emphasis added). Liability results from the fact of certification, not from any additional misrepresentation in the certification itself.

Marcum next argues that because its certification takes the form of an opinion, its liability for any certified misrepresentation or omission by iLearningEngines must be assessed through the framework proposed by *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015), so that a plaintiff must plead facts showing an auditor did not "sincerely believe his opinion." Marcum Mem. at 12. In addition to being contrary to the express language of the Act, this also effectively injects a scienter requirement into a claim under § 11(a)(4), contrary to decades of precedent in this Circuit and elsewhere. *See*, *e. g*., *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 894 (4th Cir. 2014)(scienter is not an element of a violation of § 11(a)).  It also completely makes redundant the due diligence defense created by Congress in the Act. 15 U.S.C. § 77k(b)(3). The idea that this radical overhaul of § 11(a) liability is required by *Omnicare* is absurd. *Omnicare* concerned statements of "pure opinion" and did not address any aspect of financial statements or audit opinions. The suggestion that it would silently re-write the statute to

add a scienter requirement to an accountant's liability and moot an affirmative defense expressly provided by the statute is both extreme and unsupported by any statement in *Omnicare* itself.

Marcum's next argument is that even if its audit opinion functions as a certification under § 11(a)(4), nonetheless its liability is limited solely to statements in the audit opinion itself. Marcum Mem at 16-20. This completely ignores the unambiguous language of § 11(a)(4) itself which creates liability for an accountant for misrepresentations and omissions in both portions that it prepared (*i. e*., its audit opinion) and portions it certified (*i. e*., the issuer's financial statements). Marcum's claim that this is a novel argument and "*no* federal circuit court has *ever* extended auditor liability under Section 11 beyond the auditor's opinion", Marcum Mem. at 19, is blatantly false. *See Lee v. Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002)(auditors subject to § 11 claim based on misrepresentations in audited financial statements); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994)(auditor alone was potentially liable for misrepresentations of revenue contained in issuer's financial statements); *see also In re Lehman Bros. Sec. & ERISA Litig*., 131 F. Supp. 3d 241, 260 n108 (S.D.N.Y. 2015) (a clean audit opinion regarding the financial statements in a registration statement served to "certify" those financial statements, and subjected the auditor to Section 11 liability for the *false statements made by Lehman* in the financial statements); *Escott v. BarChris Const. Corp.*, 283 F. Supp. 643, 698 (S.D.N.Y. 1968)(auditors liable for misrepresentations in audited financial statements). Marcum's remaining cases shielding auditors from liability are all distinguishable.

Finally, Marcum argues that Plaintiffs have failed to sufficiently allege that they purchased shares registered under the allegedly misleading registration statements. For reasons provided in [Individual Directors' opposition], the Amended Complaint alleged sufficient facts, at the pleading

4

stage, to plausibly allege that they purchased shares traceable to the registration statements at issue.

## STATEMENT OF FACTS

The facts relevant to Marcum's motion may be simply and concisely stated.[1] ILearningEngines filed an S-8 Registration Statement and S-1 Registration Statement that registered shares of its common stock. Amended Complaint (ECF No. 41) at ¶¶ 241-52. The S-8 Registration Statement was effective on filing with the SEC on June 21, 2024, Id. at ¶¶ 241-42, and the S-1 Registration Statement was declared effective by the SEC on August 9, 2024. Id. at ¶ 250. Both the S-8 and S-1 Registration Statements incorporated historical financial statements of iLearningEngines for the years ended December 31, 2023, 2022, and 2021. Id. at ¶¶ 316, 323-29, 377-83. The iLearningsEngines 2021-23 financial statements contained in both the S-8 and S-1 Registration Statements were accompanied, by consent and as mandated by SEC Rule, by an audit opinion from Marcum. Id. at ¶¶ 245-46, 253.

Plaintiffs purchased iLearningEngines common stock registered by the S-8 and S-1 Registration Statements. *Id*. at ¶¶ 29-30. As later disclosed by iLearningsEngines, and not disputed by Marcum in its motion to dismiss, the financial statements included in the S-8 and S-1 financial statements contained material misstatements, particularly of its revenue and expenses. *Id*. at ¶¶ 330-32, 384-86. Specifically, on November 18, 2024, iLearningEngines announced that, as a result of an investigation by its audit committee, its audited financial statements for 2023, 2022, and 2021 should no longer be relied on and Marcum communicated that its audit opinions should also no longer be relied on. *Id*. at ¶ 197. At the same time, iLearningEngines announced that Defendant

---

[1] Plaintiffs refer to their [Opposition to CEO Motion] for a more extensive discussion of the facts as alleged in their Amended Complaint.

Naqvi, its former Chief Financial Officer, was placed on administrative leave. *Id*. at ¶ 196.  On December 20, 2024, iLearningEngines filed for bankruptcy, *id*. at ¶208, and on December 27, 2024, it announced that it had "self-reported potential violations of law to the Department of Justice." *Id*. at ¶ 215. ILearningEngines common stock is now worthless. *Id*. at ¶ 220.

<u>**ARGUMENT**</u>

**I.      THE SECURITIES ACT IS DESIGNED BY CONGRESS TO PROTECT INVESTORS THROUGH THE DISCLOSURE OF MATERIAL FINANCIAL INFORMATION ENFORCED BY A STRICT LIABILITY REGIME.**

**A. The Securities Act was enacted to require issuers of securities to disclose accurate financial information to the public.**

The Securities Act was passed by Congress shortly after the inauguration of President Franklin D. Roosevelt as part of the rush of legislation referred to as the Hundred Days that attempted to address the nation's economic crisis. The Act was the first in a series of legislation as part of Congress's regulation of securities transactions prompted by the aftermath of the Wall Street crash in 1929 and the economic depression that followed.  "The Securities Act of 1933, 15 U.S.C. § 77a *et seq*., was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud and, through the imposition of specified civil liabilities, to promote ethical standards of honesty and fair dealing." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976). Two aspects of the Act were essential to Congress's purpose to protect investors: increasing disclosure requirements for newly public companies and promoting compliance with the new disclosure requirements by expanding liability beyond the remedies available at common law.

Accordingly, a registration statement for a new security is required to disclose historical financial information of the issuer. *See* 15 U.S.C. §§ 77g(a), 77aa(25) and (26) (requiring an

6

issuer's registration statement to include the information set forth on Schedule A which includes a balance sheet and profit and loss statement). Further, Congress required that both the balance sheet and profit and loss statement included in the registration statement be "certified by an independent public or certified accountant." *Id*.

As directed by Congress, the SEC has promulgated rules establishing the form and contents of the balance sheet and profit and loss statement required to be included in a registration statement. Regulation S-X requires the disclosure of gross revenues, net income or loss, and earnings per share data. 17 C.F.R. § 210.5-03(b); *see also* Item 10 of Regulation S-K, 17 C.F.R. §229.10(b)(2) (revenues, net income (loss) and earnings (loss) per share are "three financial items generally considered to be of primary importance to investors…"). Regulation S-X further notes that: "The term *certified,* when used in regard to financial statements, means examined and reported upon with an opinion expressed by an independent public or certified public accountant." 17 C.F.R. § 210.1-02(f).

**B. The Securities Act replaced common law requirement of scienter with strict liability.**

Allied to the expanded disclosure requirements on issuers was a strict liability scheme. Consciously departing from the existing common law liability regime, Congress created strict liability for the issuer as well as creating liability to investors for the issuer's directors, underwriters, and auditors even in the absence of fraud. *See* § 77k(a). The "essence of the relief to the public" is whether "the signers on behalf of the corporation be exempt from liability if it cannot be shown that they knew of the false or erroneous character of the representations made…. [I]t is essential to accomplish the objects of the act to make the directors executing the registration statement liable for the consequences of untrue statements rather than to throw the loss on the

buyer." Sen. Rep. No. 47, 73d Cong., 1st Sess., 4-5 (1933). As the House Report noted:

> The Committee emphasizes that these liabilities attach only when there has been an untrue statement of material fact or an omission to state a material fact in the registration statement or the prospectus—the basic information by which the public is solicited. All who sell securities with such a flaw, who cannot prove that they did not know—or who in the exercise of due care could not have known—of such misstatement or omission, are liable under sections 11 and 12. For those whose moral responsibility to the public is particularly heavy, there is a correspondingly heavier legal liability—the persons signing the registration statement, the underwriters, the directors of the issuer, the accountants, engineers, appraisers, and other professionals preparing and giving authority to the prospectus—all these are liable to the buyer ... if they cannot prove [the use of due care]. This throws upon originators of securities a duty of competence as well as innocence....

H.R.Rep. No. 85, 73d Cong., 1st Sess., 5 (1933). It was understood that this may result in innocent parties being liable to investors. "If one of two presumably innocent persons must bear a loss, it is familiar legal principle that he should bear it who has the opportunity to learn the truth and has allowed untruths to be published and relied upon. Moreover he should suffer the loss who occupies a position of trust in the issuing corporation toward the stockholders, rather than the buyer of stock who must rely upon what he is told." Sen. Rep. 47-73, 5.

"The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Herman & MacLean v. Huddleston* 459 U.S. 375, 381-82 (1983) ; *see also Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 894 (4th Cir. 2014)(basic purpose" of the Securities Act is to provide greater protection to purchasers of registered securities.). Common law remedies for negligence or deceit in the context of securities transactions had been limited and widely seen as insufficient.[2] The strict liability regime enacted in the Securities Act was a deliberate and welcome

---

[2] *See generally* Harry Shulman, "Civil Liability and the Securities Act", 43 Yale L.J. 227 (1933).

expansion of liability beyond the limitations of the common law.[3]   "The purpose of the civil liability provisions of the first Act was to broaden the law of deceit. In that branch of the law of torts there had raged one of those controversies that delight lawyers and disgust laymen. It had its inception in the famous case of *Derry v. Peek*, and stemmed from a 19th Century English Court's conservative reluctance to believe ill of the tycoons of its day." *Rosenberg v. Hano*, 121 F.2d 818, 819 (3d Cir. 1941); *see also Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1105 (4th Cir. 1989)(Negligence in the preparation of a securities prospectus was made actionable under the Act "in order to promote careful adherence to the requirements of the statute").

Explicitly included in this severe liability scheme were the auditors for the issuer. § 11(a)(4) of the Act provides that any person acquiring a security pursuant to a registration statement that contains "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" has a claim against "every accountant . . . who has with his consent been named as having prepared or certified any part of the registration statement . . . with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him."  15 U.S.C. § 77k(a)(4). Combined with the requirement in Schedule A of the Act for every issuer to include in its registration statement a balance sheet and statement of income and loss certified by

---

[3] Liability under the express private right of action contained in § 11 of the Securities Act thus differs from liability under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b(5), 17 C.F.R. § 240.10b(5) which arises from a judicially implied cause of action, explicitly based on common law concepts of fraud. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 343 (2005)("Judicially implied private securities fraud actions resemble in many (but not all) respects common-law deceit and misrepresentation actions."); *Herman & MacLean*, 459 U.S. at 380-84 (noting differences between express private cause of action in § 11 of the Securities Act and implied cause of action based on § 10(b) of the Securities Exchange Act).

an accountant, this explicitly makes the certifying accountant liable for every misstatement contained in the balance sheet or income statement. A purchaser may recover against the accountant without having to submit any proof of fraud, negligence, reliance, or loss causation. *Herman & MacLean*, 459 U.S. 375 at 82 (under § 11, accountant bears burden of proving due diligence). Instead, the auditor must prove whether it "after reasonable investigation, had reasonable ground to believe and did believe that the [issuer financial statements] were true and that no material fact had been omitted from the registration statement which should have been included in order to make the [issuer financial statements] not misleading." *BarChris*, 283 F. Supp. at 698.

This liability regime for auditors reflects the importance of commercial financial statements and an auditor's certifying opinion. As the Court stated in *United States v. Arthur Young & Co.*: "Corporate financial statements are one of the primary sources of information available to guide the decisions of the investing public." 465 U.S. 805, 810 (1984). The Court continued: "The SEC requires the filing of audited financial statements in order to obviate the fear of loss from reliance on inaccurate information, thereby encouraging public investment in the nation's industries. It is therefore not enough that financial statements *be* accurate; the public must also *perceive* them as being accurate." *Id.*, at 819, n.15.

The expansion of liability to auditors in the Securities Act was undertaken in the context the common law generally did not recognize liability for statements of opinion but only with regard to statements of fact. *See* Shulman, *Civil Liability and the Securities Act*, 43 Yale L.J. at 235-38. Nevertheless, and cognizant of the importance of judgement and estimates in the creation of corporate financial statements, Congress explicitly created strict liability for misstatements made

10

in financial statements contained in registration statements that were mandated to be provided to potential investors. As Justice Scalia noted in *Omnicare*, such liability presumes an expertise on behalf of management and experts such as public accountants and "It is reasonable enough to adopt such a presumption for those matters that are required to be set forth in a registration statement. Those are matters on which the management of a corporation *are* experts." 575 U.S. at 199-200 (*per* Scalia J. concurring). This presumption of expertise naturally extends to items required to be included in a registration statement such as the items in Schedule A like the issuer's financial statements. As Justice Scalia observes, such information would never be expressed as an opinion. *Id*. at 200.

**II.    MARCUM IS LIABLE PURSUANT TO § 11 OF THE ACT FOR MISSTATEMENTS CONTAINED IN ILEARNINGENGINES' FINANCIAL STATEMENTS THAT IT CERTIFIED.**

**A. Every Accountant Who Certifies Financial Statements Incorporated Into a Registration Statement is *Prima Facie* Liable For Misrepresentations and Omissions They Contain.**

Under § 11(a)(4) of the Securities Act, any person acquiring a security pursuant to a Registration Statement that contains "an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading" has a claim against "*every accountant* . . . who has with his consent been named as having prepared or *certified any part of the registration statement* . . . with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4)(emphasis added). The reach of this provision was purposeful and reflects the Congressional determination in enacting this law that that accountants and auditors certifying financial statements are among "those whose moral responsibility to the public is particularly heavy" in a public offering of securities. *Gustafson v. Alloyd Co*., 513 U.S.

11

561, 581 (1995)

As Marcum does not contest that iLearningEngine's financial statements included in its registration statements contained material misstatements, Plaintiffs have a claim under § 11(a)(4) of the Securities Act, 15 U.S.C. § 77k(a)(4), against the accountant who certified those financial statements: Marcum. Contrary to Marcum's arguments, this does not "misunderstand the nature of an auditor certification." Marcum Mem. at 18. Rather, Marcum misunderstands the legal effect of its certification of iLearningEngine's financial statements under the Act. A registration statement is *required by statute* to include financial statements (both a balance sheet and an income statement) that have been "certified by an independent public or certified accountant", 15 U.S.C. § 77aa(25)-(26), and the SEC defines "certified, when used in regard to financial statements, means examined and reported upon with an opinion expressed by an independent public or certified public accountant." 17 C.F.R. § 210.1-02(f).

Courts interpreting the plain language of § 11(a)(4) hold that an auditor opinion serves to "certify" an issuer's financial statements for the purpose of the Securities Act. *S. E. C. v. Seaboard Corp.*, 677 F.2d 1301, 1305 (9th Cir. 1982)(auditor "certified" financial statements by providing audit opinion); *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1117 (E.D. Cal. 2017)("It is difficult to imagine what Congress might have meant by an accountant's certification if not an audit affirming the accuracy of the documents in question."); *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 260 n108 (S.D.N.Y. 2015) (a clean audit opinion regarding the financial statements in a registration statement served to "certify" those financial statements, and subjected the auditor to Section 11 liability for the *false statements made by Lehman* in the financial statements).

Thus, even if their audit opinion itself contains no affirmative false statements, accountants are liable under § 11(a)(4) for errors in "any part of the registration statement" that they "prepared or certified." 15 U.S.C. § 77k(a)(4). This is not a novel theory but has been well-established ever since the passage of the Act. Notably, in *Worlds of Wonder*, the auditor was the only defendant[4] potentially liable for the errors contained in the issuer's financial statements, including alleged errors in revenue recognition where the technical accounting issues were "enormously complex". 35 F.3d 1407 at 1421; *see also Lee v. Ernst & Young, LLP*, 294 F.3d 969, 978 (8th Cir. 2002)(auditors subject to § 11 claim based on misrepresentations contained in audited financial statements).

Recent decisions are consistent with *Lee* and *Worlds of Wonder*. In *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, (E.D. Cal. 2017), plaintiffs alleged that Marrone Bio improperly recognized revenue on sales to distributors with "inventory protection" rights. 243 F. Supp. 3d at 1115. This resulted in material misstatements in Marrone Bio's audited financial statements that were included in a registration statement. *Id*. The court found that plaintiffs alleged a claim against the auditors pursuant to § 11 for the material misstatements in Marrone Bio's financial statements that they audited. *Id*. at 1115-18; *see also In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241, 259–60 (S.D.N.Y. 2015)("Accountants may be found liable under Section 11 for portions of registration statements that they audited."); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 400, n.87 (S.D.N.Y. 2013) (collecting cases and finding that "[c]ourts in this district have consistently found that accountants bear Section 11 liability for

---

[4] The issuer, Worlds of Wonder, Inc., had filed for bankruptcy.

13

the portions of a Registration Statement that they audited."). *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1174 (C.D. Cal. 2008)("Accounting-related statements [incorporated into a registration statement] are attributable to their auditor, Countrywide, those who signed the statement, and the underwriters").

Marcum places great reliance on *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006). In *Deephaven*, however, there was no claim alleged against the auditors under § 11(a)(4) of the Act; the claim instead was under § 18(a) of the Securities Exchange Act, 15 U.S.C. § 78r(a). § 18(a) of the Securities Exchange Act does not expressly make accountants liable for any portion of an SEC filing that they certified, it simply creates liability for "any person" who makes a statement that is false and misleading. The Court in *Deephaven* simply held that under the terms of an audit opinion itself, as well as professional accounting standards, auditors do not certify or guarantee the accuracy of audited financial statements. *Id*. at 1174. The Court noted, however, that § 11(a)(4) of the Act did create liability for auditors for misrepresentations in financial statements that they certify and contrasted this provision with § 18(a) of the Securities Exchange Act which "does not, however, impose liability on auditors (or accountants) in a parallel manner; rather, it extends liability to those who make or cause to be made materially false or misleading statements." *Id*. at 1174, n.6.

Because Marcum certified them in the S-8 and S-1 Registration Statement, it is *prima facie* liable under § 11 for the admitted material false statements in iLearningEngine's 2021-23 financial statements. It may only avoid liability by proving its affirmative due diligence defense.

### B. *Omnicare* Does Not Immunize Auditors From Liability For Misrepresentations in Certified Financial Statements.

Marcum argues that as its certification was expressed as an opinion, then it can only be liable

14

if Plaintiffs can prove that "it did not honestly believe the opinion it expressed in the Marcum Opinion." Marcum Mem. at 12.[5] This radical limitation on auditors' liability pursuant to § 11(a)(4) is purportedly required by the Supreme Court's decision in *Omnicare,* 575 U.S. 175. *Omnicare,* however, concerned explicit and pure statements of opinion quite unlike the statements at issue in this case. The *Omnicare* Court was concerned that excluding pure statements of opinion from liability under § 11 of the Act would "punch a hole in the statute" and give issuers "*carte blanche*" to make misleading statements "free from worry about § 11". 575 U.S. at 193. Thus, the Court intended to ***expand*** liability under § 11 by making some pure statements of opinion actionable, specifically when the opinion was not honestly held or had no reasonable basis. Perversely, Marcum is now relying on this precedent to ***eliminate*** liability under § 11 for statements which were previously regarded as obviously actionable statements of fact attributable to the auditor. *See Worlds of Wonder*, 35 F.3d at 1418 (auditors liable where "a company that 'substantially overstate[s] its revenues by reporting consignment transactions as sales ... mak[es] false or misleading statements of material fact.'") (quoting *Malone v. Microdyne Corp.,* 26 F.3d 471, 478 (4th Cir.1994)).

Indeed, Justice Scalia in his concurring opinion in *Omnicare*, contrasted information required to be included in a registration statement, such as financial statements certified by an

---

[5] Marcum argues that auditor opinions are only actionable under § 11 "in two narrow circumstances: (1) if they are not actually believed (i. e. subjective falsity), … or (2) if the statement omits material facts and those omitted facts conflict with what a reasonable investor would take from the statement itself." Marcum Mem. at 10. Marcum cites *Employees' Retirement System of the City of Baton Rouge & Parish of East Baton Rouge v. MacroGenics, Inc.*, 61 F.4th 369 (4th Cir. 2023), and *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312 (4th Cir. 2019). Yet plaintiffs in *MacroGenics* did not allege any claim against an auditor based on its audit opinion, 61 F.4th at 391, and plaintiffs in *Weil* also did not allege any claim against an auditor or even any claim under § 11 of the Act. 918 F.3d at 317. Thus, neither case supports the proposition put forward by Marcum in its Memorandum.

15

auditor, with the "pure" statements of opinion at issue in that case. Liability for statements under § 11 presumes an expertise on behalf of management and experts making the statement and "It is reasonable enough to adopt such a presumption for those matters that are required to be set forth in a registration statement. Those are matters on which the management of a corporation *are* experts." 575 U.S. at 199-200 (*per* Scalia J. concurring). This presumption of expertise naturally extends to items required to be included in a registration statement such as the issuer's financial statements. As Justice Scalia observes, such information would never be expressed as an opinion. *Id*. at 200.

There is a greater problem with expansively applying *Omnicare* to financial statements required to be included in a registration statement. Meeting the *Omnicare* standard for pleading and proving a misleading statement of opinion requires pleading and proving facts about how the speaker has formed that opinion. 575 U.S. at 188. "Thus, if a registration statement omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself, then § 11's omissions clause creates liability." *Id*. at 189. In other words, "a statement of opinion is not misleading just because external facts show the opinion to be incorrect, so long as the opinion is honestly believed." *Hunt v. Bloom Energy Corp.*, No. 19-CV-02935-HSG, 2021 WL 4461171, at *4 (N.D. Cal. Sept. 29, 2021).

This explicitly and impermissibly imposes a scienter requirement on plaintiffs in violation of the statutory strict liability scheme under the Act enacted by Congress. Certainly, in the context of corporate balance sheets and income statements that are not couched in language suggesting uncertainty or introduced with hedging statements of belief, all that is required to establish liability under § 11 is to plead and prove external facts showing the statement to be incorrect. The honest

16

belief of the speaker as to the truth of its statement is expressly not a defense to liability. "If a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his prima facie case." *Herman & MacLean,* 459 U.S. at 382. The fact that the speaker's belief in the truth of its statement may be honest is also irrelevant. "If one of two presumably innocent persons must bear a loss, it is familiar legal principle that he should bear it who has the opportunity to learn the truth and has allowed untruths to be published and relied upon. Moreover he should suffer the loss who occupies a position of trust in the issuing corporation toward the stockholders, rather than the buyer of stock who must rely upon what he is told." Sen. Rep. 73-47.

The expansive application of *Omnicare* to auditor liability for certifying financial statements containing misrepresentations also negates any role for the due diligence defense expressly provided in § 11(b)(3) of the Securities Act. 15 U.S.C. § 77k(b)(3). Under the standard advocated by Marcum, it would be a practical impossibility for any plaintiff to establish prima facie liability of an auditor without proving a least negligence, if not fraud. Under Marcum's standard, to prove falsity a plaintiff would have to plead and prove that either the auditor did not have a basis for its audit opinion (negligence) or did not believe its audit opinion was true when it was published (fraud). There would therefore be no need or ability for a defendant auditor to establish a due diligence defense as fraud or negligence would be part of plaintiff's burden. This is completely contrary to the explicit language and scheme contained in the Act.

Marcum relies on the reasoning from *Johnson v. CBD Energy Ltd.*, No. CV H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016). In *Johnson*, the District Court dismissed claims against an auditor holding that statements in its audit opinion were statements of opinion, not fact, and

17

therefore assessed under the *Omnicare* standard. 2016 WL 3654657, at *11. This holding is not relevant to this action which concern misrepresentations in the certified financial statements themselves. The *Johnson* Court also appears to have found that *Omnicare* affects an auditor's liability under § 11(a)(4) of the Act from certifying financial statements. Applying *Omnicare*, the *Johnson* Court held that an auditor cannot be liable for certifying misleading financial statements unless a plaintiff can prove that its audit opinion was also false under *Omnicare*. 2016 WL 3654657, at *12 (Plaintiffs failed to state § 11 claim against auditor because they failed to allege auditor "did not subjectively believe any of the opinions it provided in its report"). Similar arguments were accepted by the District Court in *Hunt,* expressly relying on *Johnson*.  2021 WL 4461171, at *15 ("The Court finds the reasoning in *Johnson* persuasive and adopts it here.").[6]

Such a rule is contrary to the express language contained in § 11 itself, the entire scheme of strict liability enacted by Congress, as well as Supreme Court precedent. As discussed above, it effectively incorporates into § 11 a scienter requirement for claims against auditors in direct contradiction to the legislative language and design. The consequences of such a rule were discussed by the District Court in *Marrone*, where the defendant auditor advanced similar arguments. The *Marrone* Court first noted "Section 11 imposes special liability on those involved in a registration

---

[6] More importantly, the District Court in *Hunt* found that the financial statements certified by the auditor in that case did not contain any misrepresentations or omissions, thus negating any liability for the auditor who certified those financial statements under § 11(a)(4). *See Hunt,* 2021 WL 4461171, at *4-*8. A similar determination was made by the District Court in *In re Velti PLC Securities Litigation*, No. 13-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015), where claims against the auditor were dismissed where the District Court found that plaintiff failed to plead that the certified financial statements contained any misstatement regarding bad debt reserves. *Id.*, at *23 ("While the threshold for pleading the falsity of Velti's bad debt reserves is undoubtedly lower under Rule 8(a) than under Rule 9(b), the allegations in the SACC still fall short.")

statement, and *Omnicare* did nothing to upset prior caselaw holding auditors liable for erroneous financial statements in registration statements." *Marrone,* 243 F. Supp. 3d at 1116. The District Court then held that the opinions at issue in *Omnicare* "are qualitatively different from an auditor's professional opinion about the soundness of a company's financial statements. Thus, no amount of couching an audit report as an opinion obviates the certification effect of those reports when made part of a registration statement." *Id.*

Similar arguments were made by the auditor defendant in *In re OSG Securities Litigation*. There the auditors argued that although they consented to the inclusion of their auditor opinions in the registration statement, they did not "certify" the truth of the financial statements audited and thus cannot be held liable for the information contained therein. 971 F. Supp. 2d at 398. They thus moved to dismiss on the grounds that plaintiffs did not allege that they subjectively disbelieved their audit opinions. *Id.* The District Court in that case rejected this argument outright, stating "However, it would render Section 11 meaningless to find that an accountant's liability turns on this semantic choice. Auditors may not shield themselves from liability under Section 11 merely by using the word 'opinion' as a disclaimer." *Id.* at 399 The District Court further held that "the Auditor Defendants' broad reading of *Fait [v. Regions Fin. Corp.*, 655 F.3d 105 (2d Cir. 2011)] would undercut the statutory language establishing strict liability for accountants based on the materials they have certified. It is difficult to imagine what Congress might have meant by an accountant's certification if not an audit affirming the accuracy of the documents in question." *Id.* at 399-400. The same reasoning applies with equal force to Marcum's argument here.

Marcum also argues against treating iLearningEngines' financial statements as "embedded facts" contained with its audit opinion which may then be a basis for liability under an analysis

19

pursuant to *Omnicare*. Marcum Mem. at 10, n.2. Such a theory is unnecessary in light of the explicit language of § 11(a)(4) of the Act that establishes liability for an auditor for any material misrepresentation or omission contained in certified financial statements. In the event the Court does analyze Marcum's liability for misrepresentations and omissions in iLearningEngines' financial statements through an *Omnicare* lens, then it is proper to treat the financial statements as factual statements embedded in Marcum's audit opinion.

Judge Rakoff considered this issue in *In re: Petrobras Securities Litigation*, No. 14-CV-9662 (JSR), 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016). Judge Rakoff noted that the auditor's opinion "rested on the underlying facts contained in the financial statements" and were "based on 'examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements.'" *Id*., at *3. "One measure of how embedded these underlying facts were within PwC's opinions is the de minimis value investors would place on PwC's opinions were the facts excluded. … PwC's audit opinions would be of no use to anyone if they announced, without any basis in the content of the financial statements or other evidence, that a company's presentation of its financial health was sound." *Id*., at *4. The fact that preparation of the financial statements involved the use of estimates and judgement did not change Judge Rakoff's conclusion that the auditor was liable for any misrepresentations they contained:

> But a fact-based estimate is different from a subjective opinion. Issuers like Petrobras are required to submit financial statements under the Securities Act, and the Act does not call for an issuer to submit its opinion of what it thinks an asset might be worth. *See* 17 C.F.R. Pt. 210. Instead, it requires issuers to make factual statements about their financial health and imposes strict liability with respect to errors and omissions in such statements to "promot[e] 'full and fair disclosure' of material information." *Omnicare*, *Inc.,* 135 S.Ct. at 1331 (quoting *Pinter v. Dahl,* 486 U.S. 622, 646 (1988)). The supposition that financial statements are nonactionable opinions flies in the face of the statutory language of § 11, which imposes liability expressly on auditors for portions of registration statements that

20

they certify, *see* 15 U.S.C. § 77k(a)(4), and long-standing precedent applying the same. *See In re Lehman Bro. Sec. and ERISA Litig.,* 2015 WL 5514692 at *11, *11 n.108 (S.D.N.Y. Sept. 18, 2015) (collecting cases). Accordingly, the financial statements embedded within PwC's audit opinions are actionable under § 11 as facts.

*Id.*

Marcum has conceded that Plaintiffs sufficiently pleaded that iLearningEngine's 2021-23 financial statements included in its registration statements contained material misstatements and omissions. Marcum certified those financial statements. Pursuant to § 11(a)(4) of the Securities Act, Plaintiffs have pleaded a claim against Marcum based on those material misstatements and omissions. Nothing in *Omnicare* should be read to alter that conclusion and there is nothing in *Omnicare* to suggest that the Court intended such a radical overhaul of the liability scheme enacted by Congress in the Act, even if such an overhaul could be judicially effected. *See Omnicare*, 575 U.S. at 193 ("Congress gets to make policy, not the courts.")

### C. Marcum's Liability Under § 11(a)(4) is Not Limited to Its Audit Opinion Itself.

Marcum finally argues that as § 11(a)(4) only imposes liability on an accountant for the portions of a registration statement that it actually prepares or certifies, this is "typically" limited to the audit opinion itself and "not for every statement in the issuer's financial statements or registration statement." Marcum Mem. at 18. First, Plaintiffs do not allege that Marcum is liable for any misrepresentation contained anywhere in iLearningEngines' Registration Statements. They only seek to hold Marcum liable for misrepresentations and omissions contained in the financial statements that Marcum certified.

Second, limiting an auditor's liability to just statements contained within the actual audit opinion is a nonsensical reading of § 11(a)(4). § 11(a)(4) states that an accountant is liable for

21

misrepresentations contained in any portion of the registration statement that it certified. So, the relevant question under § 11(a)(4) is: "what portions are certified by an accountant's audit opinion?" The obvious answer to this question is: "the financial statements of the issuer." Indeed, any other answer makes no sense. Marcum's proposed answer, "the audit opinion, or certification, provided by the accountant" leads to the following reading of § 11(a)(4): investors have a claim against "every accountant . . . with respect to the [certification] . . . which purports to have been . . . certified by him." This circular reading is nonsensical.

In fact, Marcum's proposed reading of the statute renders the words "or certified" entirely superfluous. § 11(a)(4) creates liability for an accountant for statements that "have been prepared or certified by him". The audit opinion is undeniably a document prepared by the accountant. Thus, under Marcum's interpretation where liability is limited to the audit opinion, there are no actionable statements against an accountant that were not "prepared by him". Thus, an accountant does not "certify" any statement that is not already potentially actionable under § 11(a)(4). This is not an appropriate interpretation of a statute, especially where there is another interpretation that gives meaning to each word in § 11(a)(4). *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 478(2017)("Our practice, however, is to 'give effect, if possible, to every clause and word of a statute.'")(*quoting Williams v. Taylor*, 529 U.S. 362, 404 (2000)); *Anderson v. Hancock*, 820 F.3d 670, 674 (4th Cir. 2016)("We interpret [statutory provisions] 'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions ... inconsistent, meaningless or superfluous.'")(*quoting Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991)).

Marcum's cases are inapposite and unpersuasive. Marcum refers to *Querub v. Hong Kong*,

22

649 F. App'x 55 (2d Cir. 2016), an unreported summary order that lacks any precedential value, even in its own Second Circuit. The summary order in *Querub* addresses claims based on alleged misrepresentations contained in the auditor's audit opinions themselves rather than any misstatement contained in the issuer's financial statements. *Id.* at 58. It is thus irrelevant to the issue currently before the Court. This was also the case in *Monroe v. Hughes*, another case cited by Marcum, which dismissed § 11 claims against an auditor again based on alleged misrepresentations or omissions from the audit opinion itself. 31 F.3d 772, 774 (9th Cir. 1994)("The principal issues in this case are whether Deloitte should have stated in its 1988 audit report that it had found deficiencies in internal controls, and whether its failure to do so was a material omission actionable under § 11.")[7]

Marcum also relies on *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444 (S.D.N.Y. 2018), and *In re Charles Schwab Corp. Securities Litigation*, 257 F.R.D. 534 (N.D. Cal. 2009). In *SunEdison*, plaintiff alleged "that KPMG violated section 11 of the Securities Act when it asserted that it complied with the Generally Accepting Auditing Standards ("GAAS") of the Public Company Accounting Oversight Board ("PCAOB") in its review of the Company's internal controls over financial reporting." 300 F. Supp. 3d at 498. It did not concern an auditor's liability for misrepresentations contained within certified financial statements. In *Charles Schwab*, the alleged misrepresentations were also purportedly contained within the auditor's opinion itself, unlike the case here, and the Court still recognized that the plaintiff states a claim for accounting

---

[7] *United States v. Weiner*, 578 F.2d 757 (9th Cir. 1978), is even less relevant as it concerns a jury instruction given at a criminal trial of several accountants for violations of various provisions of the Act and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, *et seq.*, but not § 11 of the Act that is at issue here.

23

fraud "if it adequately pleads a material violation of GAAP in the statements PwC certified." *Id*. at 558.

**D. § 11(a)(4) Does Not Create a Guarantee of Every Line in the Registration Statement.**

Under the plain meaning of § 11(a)(4), an accountant such as Marcum is *prima facie* liable to investors for any misstatements contained in its audit opinion itself (a statement prepared by the accountant) *or* contained in the financial statements of the issuer that are the subject of the audit opinion (a statement certified by the accountant). While accountants are strictly liable under § 11(a)(4) to investors, in the sense that investors have no burden to plead or prove negligence, or fraud or any other form of *scienter*, accountants can avoid any liability for misstatements in an issuer's financial statements by proving they acted with reasonable care. § 11(b)(3) of the Act. 15 U.S.C. § 77k(b)(3). Thus it is untrue that Plaintiffs seek to create "a guarantee of the accuracy of every line item in the financial statements." Marcum Mem. at 19. Instead, Plaintiffs demand that accountants face liability if they fail to exercise reasonable care in their audits of the financial statements of public companies as mandated by Congress. While Marcum would make the express due diligence defense enacted by Congress redundant, Plaintiffs' proposed common sense interpretation of §§ 11(a)(4) and 11(b)(3) retains the due diligence defense that provides protection for accountants against claims based on minor and non-negligent mistakes. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1264 (N.D. Cal. 2000)("Moreover, the *Adams* court's concerns about holding outside auditors liable for minor mistakes seems misplaced, because even under a negligence standard plaintiffs only prevail if they prove that the misstatements were material and that the defendants deviated from an appropriate standard of care.)(referring to *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980)).

24

### E.  Plaintiffs Plausibly Allege Section 11 Standing.

Section 11 requires a plaintiff to plausibly plead traceability, not accomplish proof at the pleading stage. *Fam. of Care Real Est. Holding Co. v. Chapman Prop.*, LLC, No. CV DKC 23-0574, 2023 WL 4134427, at *4 (D. Md. June 22, 2023) (Chasanow, J.) (plaintiff need not plead evidence); *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) (Third Circuit recognizing that the question of tracing in the secondary market is "a factual one, to be resolved through discovery" and although a Plaintiff "must allege" their shares are traceable, they "need not prove their shares are traceable to a false or misleading registration statement at this early stage of the litigation."). The Amended Complaint meets the correct legal standard by providing sufficient facts to plausibly allege that Plaintiffs shares are traceable to offering documents. *See, e.g., Pirani v. Slack Techs.*, Inc., 127 F.4th 1183, 1188 (9th Cir. 2025) (recognizing that the evaluation of allegations of traceability is evaluated under a plausibility standard).

Plaintiffs establish this plausibility by alleging facts that evidence the limited market for iLearningEngines shares prior to the offering and that the shares registered by the offering documents covered over 87.1% of iLearningEngines outstanding shares which also represented over 100% of iLearningEngines' public float. *See* Amended Complaint at ¶¶137, 139, 241, 247, 420, 422, 439-40 (establishing number of shares registered by offering documents and outstanding shares); Declaration of Nicholas I. Porritt dated September 18, 2025, Exhibit A, at 45 (noting that shares registered under the Form S-1 Registration Statement accounted for 90.9% of iLearningEngines public float). Furthermore, the Amended Complaint alleges that Plaintiffs purchased shares at the time the newly registered shares were being actively sold into the market by the selling stockholders. *See id.* at ¶¶29, 30, 148-155, 420-24 (Plaintiffs' certifications and facts

25

supporting continued sales of stock flowing into market). This is not the conclusory allegation of tracing that the Court was confronted with in *Fanucchi v. Enviva Inc.*, No. CV DKC 22-2844, 2024 WL 3302564 (D. Md. July 3, 2024). As a result, the Amended Complaint's allegations raise the right to relief above the speculative level, nudging the claims "across the line from conceivable to plausible," which is all that is required. *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024).

Defendants' reliance on cases *In re Century Aluminum Company Securities Litigation*, 729 F.3d 1104 (9th Cir. 2013) and *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) is misplaced because they are factually distinguishable. In those cases, the number of shares registered in the offerings were comparatively small to the millions of pre-existing shares in the market, creating a more plausible explanation for the source of plaintiffs' shares. Moreover, unlike in *Krim*, where the plaintiff's expert conceded tracing could not be proven (*Krim*, 402 F.3d at 492), Plaintiffs here have alleged that their shares are traceable and that they will prove it through evidence from discovery. Amended Complaint at ¶¶29-30,423-36, 447.

Marcum argues that Plaintiffs' plausibility allegations based on the sheer number and proportion of shares registered by the offering documents in the market to other tradeable shares runs afoul of *Summers v. Earth Island Institution,* 555 U.S. 488, 499 (2009). This is not so. *Summers* dealt with statistical probability for constitutional standing under Article III when complaint alleges no harm to plaintiff's members, which Marcum does not argue is lacking here. *Id.* Plaintiffs allege they were personally harmed as well as members of the class by the misleading statements in the offering documents, including in the incorporated financial statements. Amended Complaint a ¶¶437-446. This is an issue of statutory not constitutional standing. *In re Thornburg Mortg., Inc. Sec. Litig.*, 683 F. Supp. 2d 1236, 1255 (D.N.M. 2010), *on reconsideration in part*,

824 F. Supp. 2d 1214 (D.N.M. 2011), *and aff'd sub nom. Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013), and *aff'd sub nom. Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190 (10th Cir. 2013) (finding that although "Plaintiffs may lack statutory standing under Sections 11 and 12(a)(2) against certain Defendants . . .they do not lack standing under Article III such that the Court would lack subject-matter jurisdiction over these claims.").

Moreover, the Amended Complaint does not argue that Plaintiffs will prove their Section 11 standing through statistical principles, quite the opposite. Amended Complaint at ¶¶425-36 (alleging Plaintiffs will prove tracing with benefits of discovery through analysis of the chain of title). The overwhelming proportion of newly registered shares is not presented as statistical proof but as a non-conclusory fact that evidences the plausibility of the traceability of Plaintiffs shares. As courts have found in a similar factual situations, where a complaint alleges that "all or very nearly all the shares of stock available publically at the time were traceable to the registration statement," standing is adequately alleged. *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1119 (N.D. Cal. 2014). Plaintiffs have done such here. *See In re EveryWare Global, Inc. Secs. Litig.*, 175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017) (Section 11 standing plausibly alleged when newly registered shares equaled 86% of pre-existing public float); *In re Coinbase Glob., Inc. Sec. Litig.*, No. 2:22-CV-04915 (BRM) (LDW), 2024 WL 4053009, at *19 (D.N.J. Sept. 5, 2024), *reconsideration denied*, No. 2:22-CV-04915 (BRM) (LDW), 2025 WL 1040633 (D.N.J. Apr. 8,

27

2025) (Section 11 standing adequately alleged when plaintiff alleged that 74% of the shares entering the market were pursuant to the registration statement).[8]

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Marcum's motion to dismiss the Amended Complaint in its entirety.

Dated: September 18, 2025

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/ s / Nicholas I. Porritt*
Nicholas I. Porritt
Alexander A. Krot III (*attorney admission application forthcoming*).
1101 Vermont Ave, NW Suite 800
Washington, DC 20005
Tel: (202)-524-4290
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: akrot@zlk.com

*Counsel for Lead Plaintiff Louis Leveque,*
*Plaintiff Iqbal Al Hamid, and Lead*
*Counsel for the Class*

---

[8] Plaintiffs incorporate by reference their arguments set forth in Plaintiffs' Memorandum of Law in Opposition to Independent Defendants' Motions to Dismiss the Amended Class Action Complaint. ECF No. 90.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 18, 2025, I electronically filed the foregoing Plaintiffs' Memorandum Of Law  In Opposition To Defendant Marcum LLP's  Motion To Dismiss The Amended Class Action Complaint by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.


*/s/ Nicholas I. Porritt*
Nicholas I. Porritt

29