**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)**

| | |
|---|---|
| **DANNY WALKER**, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. DKC 24-2900 |
| | ) |
| **HARISH CHIDAMBARAN**, *et al.*, | ) ) |
| Defendants. | ) ) |
| | ) |
| | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF LOUIS LEVEQUE'S
AND PLAINTIFF IQBAL AL HAMID'S MOTION TO PARTIALLY LIFT THE
<u>DISCOVERY STAY AND PERMIT LIMITED DISCOVERY</u>**

Lead Plaintiff Louis Leveque and Plaintiff Iqbal Al Hamid (collectively, "Plaintiffs"), respectfully move the Court, pursuant to 15 U.S.C. §78u-4(b)(3)(B), for a partial lifting of the discovery stay imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). On September 17, 2025, Plaintiffs' counsel conferred via video teleconference with counsel for Defendants Puthugramam "Harish" Chidambaran, Sayyed Farhan Naqvi, Matthew Barger, Ian Davis, Bruce Mehlman, Michael Moe, Thomas Olivier, and Marcum LLP (collectively, "Defendants").[1] During this meet and confer, Defendants' counsel informed Plaintiffs' counsel that Defendants do not agree to the relief requested herein.

## I.   INTRODUCTION AND FACTUAL BACKGROUND

On April 28, 2025, Plaintiffs filed their Amended Class Action Complaint for Violations of the Federal Securities Law ("Complaint"). ECF No. 41.[2] In the Complaint, Plaintiffs asserted violations of Section 11 of the Securities Act of 1933 against all Defendants for misstatements in iLearningEngines' Offering Documents: the Form S-8 Registration Statement that was filed with the SEC and declared effective on June 21, 2024 that registered up to 16,208,318 shares of iLearningEngines common stock owned by iLearningEngines' employees and the Form S-1 Registration Statement filed with the SEC on June 3, 2024, and declared effective by the SEC on August 9, 2024, that registered up to 100,774,669 shares owned by the "Selling Securityholders" – including investors in Arrowroot who received their iLearningEngines shares as a result of the Merger – and an additional 22,624,975 shares related to warrants, and 8,250,000 warrants. *See,*

---

[1] Defendant Balakrishnan Arackal as not yet been served or otherwise appeared in the Action. *See* ECF No. 88 (letter to Court regarding the status of Defendant Arackal).
[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Complaint.

*e.g.,* ¶¶9-10, 137-47, 440.[3] In support of their claims, Plaintiffs alleged that they purchased iLearningEngines shares pursuant or traceable to the Offering Documents. ¶¶29-30. Additionally, Plaintiffs alleged facts plausibly establishing that they could prove through evidence that their iLearningEngines purchases are traceable to the Offering Documents once provided an opportunity for discovery. ¶¶417-36.

Pursuant to the Court's scheduling order (ECF No. 58), Defendants filed their respective motions to dismiss the Complaint on July 31, 2025. ECF Nos. 80, 82, 83, 84, and 85. In each of these motions, Defendants sought dismissal of Plaintiffs' Section 11 claims for lack of standing. Specifically, Defendants argue that Plaintiffs have failed to adequately allege their standing to assert the Section 11 claims against Defendants as the Complaint's allegations have not proven that Plaintiffs' purchases of iLearningEngines shares are traceable to the Form S-8 Registration Statement and/or the Form S-1 Registration Statement. Defendants argue that the existence of iLearningEngines shares trading on NASDAQ prior to the effectiveness of the Form S-8, albeit limited, establishes that Plaintiffs have not plausibly alleged and proven that their purchases were done directly in those offerings. Defendants argue that for Plaintiffs to plausibly allege standing for their Section 11 claims they are required to allege proof that the chain-of-title for their iLearningEngines shares can be traced back to each the Form S-8 Registration Statement and the Form S-1 Registration Statement.

Plaintiffs plausibly allege that most of iLearningEngines shares were subject to lock-ups or otherwise not tradeable prior to the effectiveness of the Form S-8 Registration Statement. ¶¶417-420. Plaintiffs further allege that following the effectiveness of the Offering Documents that the

---

[3] All citations to "¶__" are references to the Plaintiffs' allegations in the Complaint.

amount of iLearningEngines shares that were tradeable in the market drastically increased as evidenced by the surge in the trading volume of iLearningEngines' stock. ¶¶420, 422.

Notably, the Complaint establishes that out the 134,313,494 outstanding shares of iLearningEngines stock, 87.1%, or 116,982,987, of iLearningEngines outstanding shares were registered by the Offering Documents. *See* ¶¶137, 139, 241, 247-48, 439-40. The "Resale Securities" registered by the Form S-1 Registration Statement, i.e., the 100,774,669 shares being sold by existing shareholders, alone further represent approximately 90.9% of iLearningEngines' public float of 110,863,222 shares. *See* Declaration of Nicholas I. Porritt dated September 18, 2025, filed in support of Plaintiffs' oppositions to Defendants' motions to dismiss, Ex. A, ECF No. (Page 45 of the Form S-1 Registration Statement stating "[t]he number of Resale Securities represents approximately 90.9% of our public float[.]"). Thus, after taking into account the 16,208,318 shares registered by the Form S-8 Registration Statement, the number of iLearningEngines registered shares exceeded its public float. *See id.*; ¶¶9, 139, 241, 247-248. 439-440.

The Complaint alleges that Lead Plaintiff purchased his shares after the effectiveness of the Form S-8 Registration Statement but before the Form S-1 Registration Statement was declared effective by the SEC and that such purchase is traceable to the Form S-8 Registration Statement. ¶¶29, 423. Similarly, the Complaint alleges that Plaintiff Al Hamid's purchases of iLearningEngines stock occurred after the effectiveness of the Form S-1 Registration Statement and such purchases are traceable to the Offering Documents. ¶¶30, 424.

Not only does the Complaint allege that iLearningEngines shares are traceable to the Offering Documents but it also alleges that Plaintiffs "will prove that the shares they purchased were traceable to the Offering Documents through a tracing analysis." ¶425. Plaintiffs' allegations

explain how Plaintiffs will prove with evidence that their shares are traceable to the Offering Documents with the benefit of limited discovery from iLearningEngines' transfer agent, Continental Stock Transfer & Trust Company ("Continental"), the Depository Trust Company ("DTC"), and if necessary, certain brokers and/or AAI Solutions, Inc. (the purchaser of iLearningEngines assets in the iLearningEngines Bankruptcy Action). ¶¶417-36.

As Plaintiffs detail in the Complaint, Continental served as both the transfer agent for Arrowroot and for the new iLearningEngines. ¶¶426-27. As such, Continental has information concerning Arrowroot's securities that later became shares of iLearningEngines as well as the new iLearningEngines shares following the Merger. *Id*. As the Transfer Agent, Continental has transfer journals and the underlying records regarding share registrations, and is anticipated to have internal records and segregated accounts "for iLearningEngines' insiders and employees shares, the Arrowroot investors shares (whose shares were not yet traded or tradeable following the Merger), and/or iLearningEngines shares that were restricted and/or unregistered securities, and for shares that were registered." ¶¶426-29. Continental's records will permit Plaintiffs to identify and "trace the previously unregistered iLearningEngines common stock shares on Continental's transfer journals and in their records regarding the share registrations prior to the shares being registered and traded on the secondary market." ¶430.

The Complaint alleges that to conduct their tracing analysis, Plaintiffs will further seek documents from the DTC. *See* ¶¶426, 431-34. In its role, the DTC holds all of the securities that are being bought and sold by various parties on the secondary market in DTC participant accounts. ¶432. As secondary market transactions cannot be settled through Continental's journal entries or with those of other transfer agents, the settlement of shares on the secondary market is done through the DTC's standardized book-entry custodial recordkeeping. ¶431. In its records, the DTC

4

records the direct deposit transactions into the DTC participant's account (i.e., purchase), securities deposits, withdrawals, and transfer transactions on its ledgers that it maintains for each DTC participant on each settlement day, in records called "Participant Daily Activity Statements." ¶¶ 432-433.

These documents may be sufficient to establish tracing of Plaintiffs' iLearningEngines shares, however, Plaintiffs' may potentially require additional documents from certain broker-dealers and/or AAI Solutions, Inc. to complete the tracing analysis. ¶435. Although broker-dealers maintain DTC participant accounts, they additionally maintain their own internal time-stamped transactional records that record when securities are transferred from one account to another. ¶434. Additionally, as the purchaser of iLearningEngines assets and records, AAI Solutions will have records concerning the registration of iLearningEngines common stock. ¶426.

These documents will permit Plaintiffs to ultimately prove through evidence that their iLearningEngines shares are traceable to the Offering Documents. ¶¶417-36. Therefore, the Complaint plausibly alleges Plaintiffs iLearningEngines shares are traceable to the Offering Documents, which is sufficient at the pleadings stage. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 657–58 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874 (4th Cir. 2014); *In re EveryWare Global, Inc. Secs.. Litig.*, 175 F. Supp. 3d 837 (S.D. Ohio 2016), *aff'd sub nom. IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325 (6th Cir. 2017); *In re Coinbase Glob., Inc. Sec. Litig.,* No. 2:22-CV-04915 (BRM) (LDW), 2024 WL 4053009, at *19 (D.N.J. Sept. 5, 2024), *reconsideration denied, No.* 2:22-CV-04915 (BRM) (LDW), 2025 WL 1040633 (D.N.J. Apr. 8, 2025); *see also John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017).

Despite Plaintiffs plausibly alleging that their iLearningEngines shares are traceable to the Offering Documents and how they will prove such at the appropriate time, Defendants argue that such allegations are insufficient. Defendants argue that at the pleading stage Plaintiffs must plead evidence in the Complaint to prove the chain of title of Plaintiffs' iLearningEngines shares to the Offering Documents.

Although Plaintiffs disagree with this interpretation of the law as set forth in Plaintiffs' oppositions to Defendants' motions to dismiss filed concomitantly herewith, in the event that the Court finds that Plaintiffs' allegations are insufficient to plausibly allege their standing for their Section 11 claims, Plaintiffs respectfully request that the Court grant this motion and permit them to conduct limited particularized discovery that will enable them to plead evidence establishing that their iLearningEngines shares purchases are traceable to the Offering Documents. In the event that the Court grants this motion, Plaintiffs will seek leave to amend the Complaint to plead the evidence obtained in discovery that proves Plaintiffs' purchases of iLearningEngines shares are traceable to the Offering Documents.

## II.   ARGUMENT

The PSLRA provides a general stay of discovery in securities fraud actions during a pending motion to dismiss. 15 U.S.C. §78u-4(b)(3)(B). The PSLRA, however, permits an exception to the discovery stay if a court "finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." *Id*.

"The purpose of the stay, according to the legislative history, is 'to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery, *see* H.R. Conf. Rep. No. 104–369, at 37 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 736, or that the plaintiff will find during

discovery some sustainable claim not alleged in the complaint, *see* S.Rep. No. 104–98, *reprinted in* 1995 U.S.C.C.A.N. 679, 693." *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 249 (D. Md. 2004) (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002)). Notably, "courts have modified the discovery stay in securities class actions when doing so would not frustrate Congress's purposes in enacting the PSLRA." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.,* No. 09 MDL 2058 (DC), 2009 WL 4796169, at *1 (S.D.N.Y. Nov. 16, 2009).

*In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2006) discussed the significance of discovery in proving traceability of shares in the aftermarket. In finding that a plaintiff only need allege and not prove Section 11 standing at the pleading stage, the Third Circuit recognized that "[b]efore discovery takes place [ ] it is impossible for plaintiffs to know whether their shares were newly issued or were purchased in the secondary market." *Id*. at 274 n.7. Thus, the Third Circuit acknowledged that the question of tracing in the secondary market is "a factual one, to be resolved through discovery, as to whether plaintiffs can demonstrate that the shares they allegedly purchased are in fact traceable to the registration statement alleged to be false and misleading." *Id.*

Given the Third Circuit's acknowledgement that standing should be proved after discovery, it makes sense from a logistical and efficiency standpoint that discovery take place prior to Plaintiffs seeking any leave to amend in the event Court finds that Plaintiffs' allegations do not meet the level of plausibility required by this Court at the pleading stage. By doing such, Plaintiffs will suffer no undue prejudice and the parties may be able to avoid costly and timely appeals given the issues argued in the briefing on Defendants' motions to dismiss. In such event, Plaintiffs respectfully request that the Court grant this motion.

### A. The Requested Discovery is Sufficiently Particularized

[A] discovery request is particularized to the extent that it is directed at specific persons." *In re Tyco Int'l, Ltd., Sec. Litig.,* No. 00MD1335, 2000 WL 33654141, at \*4 (D.N.H. July 27, 2000). It is further "particularized to the extent that it identifies specific types of evidence that fall within its scope." *Id.* However, "particularized" discovery "is not synonymous with 'identifiable,' [nor] does it necessarily mean 'small.'" *In re Royal Ahold*, 220 F.R.D. at 250. Further, "[t]he meaning of the phrase in any particular case must take into account the nature of the underlying litigation." *Id.*

Plaintiffs' discovery request is sufficiently particularized because it involves subpoenas that seek specific categories of information from identified third parties and is for the express purpose of demonstrating that Plaintiffs purchased at least one share traceable to the Offering Documents. *See Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008) (lifting PSLRA discovery stay, finding discovery "it is understandable that plaintiffs may need some particularized discovery to help them determine exactly which plaintiffs purchased exactly which . . . products during the time period relevant to the federal claims.").

As alleged in the Complaint and discussed above, Plaintiffs seek to undertake as limited discovery as necessary to prove through evidence that their purchases iLearningEngines are traceable to the Offering Documents. To that end, Plaintiffs will issue subpoenas to the DTC seeking relevant documents such as the "Participant Daily Activity Statements" and from iLearningEngines' and Arrowroot's transfer agent, Continental, relevant documents such as the transfer journals and underlying records regarding the share registrations. These documents are readily producible in discovery and anticipated to be a minimal burden on these non-parties.

The documents received from Continental and the DTC may prove sufficient for Plaintiffs to establish tracing of Plaintiffs' shares, but in the event additional documents are required, these documents will be available from a limited number of broker-dealers and, if necessary, AAI Solutions, Inc.  ¶¶434-36. Plaintiffs anticipate that discovery received from the DTC and Continental will permit Plaintiffs to identify and/or confirm the relevant broker-dealers and thereby direct the discovery to the necessary entities. The information received from the broker-dealers may alleviate Plaintiffs' need for documents from AAI Solutions concerning iLearningEngines common stock and stock registrations. ¶¶426, 436.

As demonstrated herein, Plaintiffs seek particular documents from a limited set of non-parties related to Plaintiffs' traceability of their shares to the Offering Documents. Plaintiffs have met this element as Plaintiffs' requested discovery is sufficiently particularized as it seeks a "defined universe of documents". *See In re Royal Ahold*, 220 F.R.D. at 250 (granting a partial lifting of stay on discovery as the "motion at issue here describes a 'clearly defined universe of documents,' and the burden of producing the materials should be slight").

## B.  Plaintiffs will be Unduly Prejudiced if Discovery is Not Permitted

In evaluating undue prejudice exists as it relates to the lifting of the PSLRA discovery stay "courts have defined the 'undue prejudice' sufficient to overcome the statutory bar as 'improper or unfair treatment' amounting to something less than irreparable harm. *Vacold LLC v. Cerami*, No. 00 CIV. 4024 (AGS), 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001). Accordingly, as Judge Blake has noted that when evaluating "[t]he second requirement for lifting the stay— necessity to preserve evidence or prevent undue prejudice . . . that it makes sense to interpret the broad, undefined terminology of this provision in light of Congress's purposes in passing the PSLRA. *In re Royal Ahold,* 220 F.R.D. at 250. Thus, courts, including in this District, have

9

recognized that "the 'undue prejudice' exception contemplates an analysis of the facts and circumstances surrounding a request for an exception to the mandated discovery stay.'" *In re Royal Ahold,* 220 F.R.D. at 251 (citing *Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F.Supp. 717, 721 (S.D.Cal.1996) and noting in the parenthetical).

In evaluating if prejudice is undue, it is "appropriate for the Court to consider the detriment to Lead Plaintiff, any harm or burden to Defendant, and whether lifting the stay would do violence to the purpose of the PSLRA stay." *In re Williams Sec. Litig.*, No. 02-CV-72H (M), 2003 WL 22013464, at *2 (N.D. Okla. May 22, 2003). Thus, Courts have repeatedly found that undue prejudice exists "where defendants might be shielded from liability in the absence of the requested discovery." *Vacold*, 2001 WL 167704, at *6 (collecting cases).

If the Court finds that the Complaint does not plausibly allege that Plaintiffs' iLearningEngines shares are traceable to the Offering Documents, Plaintiffs would face undue prejudice without the relief sought in this motion because "[a]bsent particularized discovery on this subject, the federal claims are subject to dismissal for lack of facts alleged in support of standing." *Thomas*, 540 F. Supp. 2d at 1222. Plaintiffs have alleged that there was a limited market for iLearningEngines shares prior to the effectiveness of the Form S-8 Registration Statement and that their shares will be proven to be traceable.[5]  ¶¶417-24. Plaintiffs have also established, that as a result of newly registered shares entering the market, that iLearningEngines' public float was over 100% covered by the shares registered in the Offering Documents and that these same shares represented 87.1% of iLearningEngines outstanding shares. *See supra*. As demonstrated herein, Plaintiffs seek only to prove their standing through discovery and not as to the elements of establishing their Securities Act claims. Here, Plaintiffs have exceeded what was required in *Vacold* where the court lifted the PSLRA discovery stay, finding that Plaintiffs seeking support for

10

their allegations of falsity was warranted as "the failure to allow discovery on the limited issue of the nature and timing of [a nonparty's] interest and investment in [the joint venture] may unfairly insulate defendants from liability for securities fraud as alleged by plaintiffs in the Complaint." *Id.* at \*7. As discussed below, there is no burden to Defendants as discovery is sought solely from non-parties.

## C. The Requested Discovery Aligns with the Purposes and Underlying Policy for the PSLRA Discovery Stay

"Congress enacted the [PSLRA] discovery stay in order to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *WorldCom*, 234 F. Supp. 2d at 305; *see also* S. Rep. No. 104-98, at 14 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 693).

Importantly, Plaintiffs' planned discovery will impose no burden on Defendants as Plaintiffs are not seeking any discovery from any named Defendant as part of this motion. As such, the granting of this motion, would not contravene Congress's rationale underlying the PSLRA discovery stay. Plaintiffs have alleged and established that the narrow set of documents requested would be sufficient to prove standing for their Securities Act claims and are not seeking such information to add new claims or theories. Therefore, Plaintiffs request for limited discovery is neither seeking to exert pressure on Defendants to settle early through the costs of discovery nor is it part of a fishing expedition to identify a claim that is not alleged in the Complaint. *Anderson v. First Sec. Corp.*, 157 F. Supp. 2d 1230, 1242 (D. Utah 2001) (lifting stay for plaintiffs to conduct discovery of three third parties because "Plaintiffs have articulated their alleged bases of liability, such discovery will not result in a fishing expedition . . . [and] may seek additional information

11

regarding Plaintiffs' previously alleged financial manipulations…."); *Vacold*, 2001 WL 167704, at *7 ("discovery solely related to the nature and timing of J&J's interest . . . does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

The justification for partially lifting the discovery stay is especially compelling in this case. The PSLRA discovery stay "was intended to enforce the PSLRA's requirement of a highly particularized pleading of fraud." John C. Coffee, Jr. & Joshua Mitts, <u>*Slack v. Pirani* and the *Future of Section 11 Claims*</u>, at 33 (Dec. 1, 2023) https://ssrn.com/abstract=4644888. The requested discovery is not being sought to support Plaintiffs' fraud claims or claims of falsity for the Securities Act claims. Plaintiffs' discovery is solely limited to evidencing that Plaintiffs' purchases of iLearningEngines shares are traceable to the Offering Documents. Notably, "Section 21D(b)(3)'s stay of discovery is closely tied to Section 21D(b)(2)'s requirement that plaintiff plead a 'strong inference' of intent; put simply, the stay was intended to enforce the PSLRA's requirement of a highly particularized pleading of fraud." *Id.* Section 11 claims are not subject to a heightened pleading standard. *See, e.g., Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874, 899 (4th Cir. 2014). Here, a partial lift of the stay is in accordance with further the congressional intent of the statute "that companies issuing securities . . . make a 'full and fair disclosure of information' relevant to a public offering." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 178 (2015).

## III.    CONCLUSION

For the reasons stated herein, Plaintiffs would be unduly prejudiced if the requested particularized discovery is not granted. Granting such request supports the intent of the PSLRA and the securities laws. Plaintiffs' respectfully request that the Court grant their motion.

Dated: September 18, 2025        Respectfully submitted,

LEVI & KORSINSKY, LLP

*/ s / Nicholas I. Porritt*
Nicholas I. Porritt
Alexander A. Krot III (*attorney admission application forthcoming*).
1101 Vermont Ave, NW Suite 800
Washington, DC 20005
Tel: (202)-524-4290
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: akrot@zlk.com

*Counsel for Lead Plaintiff Louis Leveque, Plaintiff Iqbal Al Hamid, and Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2025, I electronically filed the foregoing Memorandum Of Law In Support Of Lead Plaintiff Louis Leveque's And Plaintiff Iqbal Al Hamid's Motion To Partially Lift The Discovery Stay And Permit Limited Discovery  by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

*/s/ Nicholas I. Porritt*
Nicholas I. Porritt