**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DANNY WALKER, *Individually and on Behalf of All Others Similarly Situated*, <br><br> Plaintiff, <br><br> v. <br><br> ILEARNINGENGINES, INC., *et al.*, <br><br> Defendants. | Civil Action No. 8:24-cv-02900-DKC <br><br> Hon. Deborah K. Chasanow |

**DEFENDANT MARCUM LLP'S OPPOSITION TO PLAINTIFFS'
<u>MOTION TO LIFT THE PSLRA DISCOVERY STAY</u>**

## TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................................................... ii

BACKGROUND ....................................................................................................................... 2

    A.    Plaintiffs' Failure to Plead Traceability ............................................................... 2

    B.    Plaintiffs' Recent Motion ..................................................................................... 3

ARGUMENT ............................................................................................................................. 4

I.        GOVERNING LAW ................................................................................................... 4

II.      THE AUTOMATIC STAY OF DISCOVERY SHOULD NOT BE LIFTED .................... 6

    A.  Plaintiffs Have Not Met Their Burden of Showing That Discovery
        Is "Necessary" to Prevent "Undue Prejudice" ....................................................... 7

        1.  Plaintiffs Do Not Claim That Discovery Is Necessary to Preserve
            Evidence ........................................................................................................ 7

        2.  Plaintiffs' Failure to State a Claim Does Not Constitute
            "Undue Prejudice" ........................................................................................ 7

    B.  Plaintiffs Also Have Not Met Their Burden of Showing That
        Discovery Is Particularized ................................................................................. 11

    C.  Plaintiffs' Proposed Discovery Is Not Curative and is Therefore
        Not "Necessary" ................................................................................................. 13

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

CASES

*Barnes v. Osofsky*,
   373 F.2d 269 (2d Cir. 1967).............................................................................. 14

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
   916 F.3d 589 (7th Cir. 2019)............................................................................. 8

*Cremeen v. Schaefer*,
   2005 WL 4703651 (D. Kan. Dec. 7, 2005)........................................................ 8

*Cupat v. Palantir Techs., Inc.*,
   2025 WL 1141534 (D. Colo. Apr. 4, 2025).................................................*passim*

*Fanucchi v. Enviva Inc.*,
   2024 WL 3302564 (D. Md. July 3, 2024)............................................................ 2

*Fisher v. Kanas*,
   2006 WL 2239038 (E.D.N.Y. Aug. 4, 2006)................................................ 5, 11

*Gardner v. Major Auto. Cos.*,
   2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012)..................................................... 8

*Hillman v. Maretta*,
   569 U.S. 483 (2013)........................................................................................... 6

*In re Ariad Pharms., Inc. Sec. Litig.*,
   842 F.3d 744 (1st Cir. 2016).............................................................................. 3

*In re Carnegie Int'l Corp. Sec. Litig.*,
   107 F. Supp. 2d 676 (D. Md. 2000) .............................................................. 5, 11

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ....................................................... 3, 13, 14, 15

*In re CFS Related Sec. Fraud Litig.*,
   179 F. Supp. 2d 1260 (N.D. Okla. 2001)........................................................ 7, 9

*In re Cree, Inc. Sec. Litig.*,
   220 F.R.D. 443 (M.D.N.C. 2004) .................................................................... 5, 6

*In re Fannie Mae Sec. Litig.*,
　362 F. Supp. 2d 37 (D.D.C. 2005) ............................................................................... 6

*In re Fluor Corp. Sec. Litig.*,
　1999 WL 817206 (C.D. Cal. Jan. 15, 1999) ............................................................... 7

*In re Honest Co. Sec. Litig.*,
　2023 WL 3190506 (C.D. Cal. May 1, 2023) ............................................................ 14

*In re Initial Pub. Offering Sec. Litig.*,
　236 F. Supp. 2d 286 (S.D.N.Y. 2002) ......................................................................... 5

*In re Odyssey Healthcare Inc. Sec. Litig.*,
　2005 WL 1539229 (N.D. Tex. June 10, 2005) ............................................................ 9

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
　220 F.R.D. 246 (D. Md. 2004) ......................................................................... 7, 9, 12

*In re Spectranetics Corp. Sec. Litig.*,
　2009 WL 3346611 (D. Colo. Oct. 14, 2009) ......................................................... 5, 8

*In re Thornburg Mortg., Inc. Sec. Litig.*,
　2010 WL 2977620 (D.N.M. July 1, 2010) .................................................................. 9

*In re Williams Sec. Litig.*,
　2003 WL 22013464 (N.D. Okla. May 22, 2003) ....................................................... 9

*In re WorldCom, Inc. Sec. Litig.*,
　234 F. Supp. 2d 301 (S.D.N.Y. 2002) ....................................................................... 12

*Krim v. pcOrder.com, Inc.*,
　402 F.3d 489 (5th Cir. 2005) ......................................................................... 3, 14, 15

*Medhekar v. U.S. Dist. Ct. for the N. Dist. of California*,
　99 F.3d 325 (9th Cir. 1996) ....................................................................................... 11

*Miller v. French*,
　530 U.S. 327 (2000) ..................................................................................................... 4

*Mishkin v. Ageloff*,
　220 B.R. 784 (Bankr. S.D.N.Y. 1998) ..................................................................... 13

*Mori v. Saito*,
　802 F. Supp. 2d 520 (S.D.N.Y. 2011) ...................................................................... 11

*Petrie v. Elec. Game Card, Inc.*,
    761 F.3d 959 (9th Cir. 2014)................................................................................ 8

*Sarantakis v. Gruttaduaria*,
    2002 WL 1803750 (N.D. Ill. Aug. 5, 2002)........................................................ 7

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*,
    189 F.3d 909 (9th Cir. 1999)................................................................................ 8

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023)............................................................................... 2, 13, 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)............................................................................................ 4

*Thomas v. Metropolitan Life Insurance Co.*
    540 F. Supp. 2d 1212 (W.D. Okla. 2008).......................................................... 10

*U.S. Home Corp. v. Settlers Crossing, LLC*,
    2012 WL 3536691 (D. Md. Aug. 14, 2012) ........................................................ 7

*Vacold LLC v. Cerami*,
    2001 WL 167704 (S.D.N.Y. Feb. 16, 2001)............................................. 6, 10, 11

*Waldman v. Wachovia Corp.*,
    2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) ................................................. 12, 13

**STATUTES**

15 U.S.C. § 77z-1(b)(1) ...............................................................................*passim*

**OTHER AUTHORITIES**

S. Rep. No. 104-98 (1995)................................................................................ 5, 8

In a tacit acknowledgment that the Amended Complaint fails to plausibly allege traceability, an essential element of their Section 11 claim, lead plaintiffs Louis Leveque and Iqbal Al Hamid (collectively, "Plaintiffs") make an unusual ask. They seek leave to circumvent the automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and to issue an indefinite number of third-party subpoenas. *See* Motion to Partially Lift the Discovery Stay and Permit Limited Discovery (Dkt. 93-1, the "Motion"). For at least three reasons, Plaintiffs' request is fatally and incurably flawed. Indeed, no other court has permitted the discovery Plaintiffs seek at this stage of a Section 11 securities case. The Motion should be denied.

Plaintiffs seek relief that is inconsistent with governing law. To prevent the very sort of fishing expedition on which Plaintiffs now seek to cast their lure, Congress enacted a stop on all discovery in securities lawsuits while motions to dismiss are pending. Plaintiffs can demonstrate no adequate justification for evading that prohibition in this case. Their requests are also far from particularized—Plaintiffs themselves concede that they have no idea from whom they ultimately will seek discovery, let alone how many rounds of subpoenas they will issue to unearth the information they hope to find. Moreover, even if this Court were to grant Plaintiffs' request, and even if Plaintiffs were to secure the hoped-for information, their discovery is unnecessary and ultimately irrelevant: Plaintiffs are asking the wrong questions, and they will get the wrong answers. Worse still, none of the discovery Plaintiffs seek is actually sufficient to cure a critical pleading defect, because Plaintiffs have not alleged that the shares *they* purchased are traceable to the allegedly misleading registration statements. Absent a cure, the suit cannot proceed. *See Cupat v. Palantir Techs., Inc.*, 2025 WL 1141534, at *18 n.21 (D. Colo. Apr. 4, 2025) (considering and

1

rejecting near-identical request to lift PSLRA discovery stay to seek documents concerning traceability).

Plaintiffs' feeble attempt to salvage their Section 11 claim should be rejected.

## BACKGROUND

The background for the broader dispute is set forth at length in Marcum's Memorandum in Support of its Motion to Dismiss (Dkt. 80-1, the "MTD," at 4–7). In the interest of judicial economy, only those facts essential to resolution of this Motion are repeated here.

### A.   Plaintiffs' Failure to Plead Traceability

"A plaintiff bringing a Section 11 claim must 'plead and prove that he purchased shares traceable to the allegedly defective registration statement.'" *Fanucchi v. Enviva Inc.*, 2024 WL 3302564, at *18 (D. Md. July 3, 2024) (Chasanow, J.) (quoting *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023)). Rather than pleading it, Plaintiffs offered two alternative (and insufficient) theories of traceability.

Under the first theory, Plaintiffs—who admit to purchasing their shares on the open market, not in the offerings (*see* Dkt. 41 (Amended Complaint, or "Am. Compl.") ¶¶ 423–24)—try to allege traceability based on probability. Plaintiffs assert that the majority of shares issued prior to the relevant offering documents were subject to lock-up restrictions and that trading volume increased significantly in connection with each of the allegedly misleading offering documents. *Id.* ¶¶ 419–20. As a result, they claim that "there is a high probability that the shares Plaintiffs purchased after these dates were traceable to the Offering Documents." *Id.* ¶ 422.

In the alternative, Plaintiffs advance a second theory, promising that "during the discovery phase, Plaintiffs[] will obtain the documents to evidence that [the] shares they purchased are in fact traceable to the Form S-8 Registration Statement and the Form S-1 Registration Statement."

2

*Id.* ¶ 425.　Plaintiffs argue that they may be able to "reconstruct the chain of title for each iLearningEngines share they purchased," and that that chain will lead back to the relevant registration statements.　*Id.* ¶¶ 435–36.

Marcum moved to dismiss Plaintiffs' Section 11 claim because, among the Amended Complaint's failings, Plaintiffs have not sufficiently pled traceability.　*See* MTD 20–24.　All individual defendants made the same argument.　*See* Dkt. 82-1 at 9–13, Dkt. 83-1 at 27–30, Dkt. 84-1 at 21–27, and Dkt. 85-1 at 8–12.　Stated succinctly, Plaintiffs' probability allegations are insufficient to proceed, as every court of appeals to have addressed the question has held, *see, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005), *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 755–56 (1st Cir. 2016), *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106–09 (9th Cir. 2013), and Plaintiffs cannot rely on "a plea to let the case proceed to discovery so that the plaintiff may locate the documents that may establish standing" to satisfy a statutory pleading requirement, *Cupat*, 2025 WL 1141534, at *16 (rejecting a materially identical discovery aimed at curing deficient Section 11 traceability allegations).

### B.　Plaintiffs' Recent Motion

It appears that Plaintiffs recognize the merit of the Defendants' arguments on traceability. Without explicitly conceding that their allegations are deficient, Plaintiffs brought the instant Motion seeking leave from the statutory stay of all discovery under the PSLRA.　Plaintiffs seek to conduct the discovery outlined in their Amended Complaint now, while Defendants' Motions to Dismiss are pending.　*Compare* Am. Compl. ¶¶ 425–36 *with* Mot. at 8–9.　To that end, they seek to issue subpoenas to, *at least*, Continental Stock Transfer & Trust Company ("Continental") and the Depository Trust Company ("DTC"), and, "if necessary," AAI Solutions, Inc. and "certain [unidentified] brokers."　Mot. at 4.　From Continental, Plaintiffs would seek, among other things,

3

transfer journals and underlying registration records. *Id.* at 8. From the DTC, Plaintiffs would seek "direct deposit transactions into the DTC participant's account …, securities deposits, withdrawals, and transfer transactions on its ledgers." *Id.* at 5. Plaintiffs suggest that, together, this sweeping discovery "*may* be sufficient to establish tracing of Plaintiffs' iLearningEngines shares." *Id.* (emphasis added). But, anticipating the likelihood that those will fail to bear out Plaintiffs' hopes, they also request permission to seek "additional documents from certain broker-dealers and/or AAI Solutions, Inc. to complete the tracing analysis." *Id.* The PSLRA discovery stay is designed to prevent this sort of fishing expedition.

Because they failed to plead facts showing traceability in the Amended Complaint, Plaintiffs now seek exceptional relief and ask this Court to lift the automatic stay—even though it is operating precisely as designed. Plaintiffs argue that their Motion is necessary to prevent undue prejudice and that it seeks limited, particularized, and minimally burdensome discovery (all while effectively admitting that, even with the benefit of the requested relief, they cannot be certain the discovery will give them they information they hope to find, *see id.* at 4–5; Am. Compl. ¶¶ 430–33). Marcum now files this opposition to Plaintiffs' motion to demonstrate the fatal flaws in their request.

**ARGUMENT**

## I. GOVERNING LAW

The PSLRA was enacted "[a]s a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). As one element of that "check," Congress included a "mandatory" and comprehensive stay of *all* discovery during the pendency of any motion to dismiss. *Miller v. French*, 530 U.S. 327, 350 (2000). Among other things, Congress imposed the PSLRA discovery stay in part to prevent plaintiffs from filing complaints

4

"in order to conduct discovery in the hopes of finding a sustainable claim." S. Rep. No. 104-98, at 14 (1995); *see also In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 682–83 (D. Md. 2000) ("The purpose of the [PSLRA] was to restrict abuses in securities class-action litigation, including: (1) … filing lawsuits against issuers of securities in response to any significant change in stock price … (2) the targeting of deep pocket defendants; [and] (3) the abuse of the discovery process to coerce settlement."), *In re Spectranetics Corp. Sec. Litig.*, 2009 WL 3346611, at *2 (D. Colo. Oct. 14, 2009) ("The purpose of the discovery stay is to allow the court to determine the legal sufficiency of a complaint alleging securities fraud before corporate defendants are forced to engage in costly discovery, which in turn may unfairly coerce early settlement."), *In re Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 287 (S.D.N.Y. 2002) (noting that the PSLRA discovery stay "reflects the balance that Congress chose to strike between the rights of defendants and plaintiffs in securities actions by allowing a defendant to test the adequacy of the complaint" before discovery begins).

In every federal securities case, the PSLRA automatically provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 77z-1(b)(1). The statutory text contains no exception for discovery as to third parties. Instead, as courts throughout the nation have recognized, "the statute's protective stay provision applies to *all* discovery, including that of third parties." *In re Carnegie*, 107 F. Supp. 2d at 680–81 (emphasis in original); *In re Cree, Inc. Sec. Litig.*, 220 F.R.D. 443, 446 (M.D.N.C. 2004) ("all discovery is stayed against parties and non-parties alike until the court has addressed the sufficiency of the complaint"); *Fisher v. Kanas*, 2006

5

WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006) ("To the extent that this statute prohibits discovery of parties, it bars discovery of non-parties as well.").

Congress has explicitly enumerated two, and only two, exceptions to the general stay provision: the preservation of evidence and the prevention of undue prejudice. *See* 15 U.S.C. § 77z-1(b)(1). *See also Hillman v. Maretta*, 569 U.S. 483, 496 (2013) (quotation omitted) "[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied."). No matter which of the two exceptions from which a movant seeks to draw, the requested discovery must also be both "particularized" and "necessary." *See* 15 U.S.C. § 77z-1(b)(1). *See also, e.g.*, *In re Cree*, 220 F.R.D. at 447 (a movant "must demonstrate that the requested discovery is particularized and necessary …").

The burden on a party who seeks reprieve from the PSLRA's automatic stay in any manner has been described as a "heavy one," *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005), that requires a showing of "exceptional circumstances," *Vacold LLC v. Cerami*, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001). In fact, the only court to address a similar request on the question of traceability has rejected it. *Cupat*, 2025 WL 1141534, at *18 n.21. As described further below, Plaintiffs have come nowhere close to bearing that burden.

## II.  THE AUTOMATIC STAY OF DISCOVERY SHOULD NOT BE LIFTED

At every step of the requisite statutory analysis, Plaintiffs' request to evade the PSLRA discovery stay falls short. *First*, they fail to demonstrate the applicability of an enumerated exception to the PSLRA discovery stay. *Second*, they fail to explain how their desired discovery is "particularized." And *third*, they fail to show that their requests are "necessary." The Motion should be denied.

6

### A. Plaintiffs Have Not Met Their Burden of Showing That Discovery Is "Necessary" to Prevent "Undue Prejudice."

The PSLRA discovery stay is subject to only two enumerated exceptions: where discovery is "necessary to preserve evidence or to prevent undue prejudice."  15 U.S.C. § 77z-1(b)(1). Neither fits here.

#### 1. Plaintiffs Do Not Claim That Discovery Is Necessary to Preserve Evidence.

Plaintiffs make no assertion that discovery is necessary to preserve evidence.[1]  This is unsurprising, as this is not a situation where there are "reasonable concern[s] that documents may be lost," such as where the target of the discovery was "undertaking a wide-ranging corporate reorganization," including by "divest[ing] itself of key subsidiaries [with] plans to divest itself of more."  *See, e.g.*, *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004). Courts have held that "[a] party alleging that discovery is 'necessary to preserve evidence' must present more than mere 'generalizations of fading memories and allegations of possible loss or destruction.'"  *Sarantakis v. Gruttaduaria*, 2002 WL 1803750, at *2 (N.D. Ill. Aug. 5, 2002) (quoting *In re Fluor Corp. Sec. Litig.*, 1999 WL 817206, at *3 (C.D. Cal. Jan. 15, 1999)).  A movant must instead "make a specific showing that 'the loss of evidence is imminent as opposed to merely speculative.'"  *Sarantakis*, 2002 WL 1803750, at *2 (quoting *In re CFS Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001)).  Plaintiffs make no attempt to meet this burden.

#### 2. Plaintiffs' Failure to State a Claim Does Not Constitute "Undue Prejudice."

Instead, Plaintiffs rest their Motion on a claim that they will be unduly prejudiced absent license to seek the hoped-for discovery at this time.  *See* Mot. at 9.  But the so-called "prejudice" they wish to prevent is dismissal, because they have failed to meet their pleading burden.  This is

---

[1] Plaintiffs therefore forfeit that argument.  *See, e.g.*, *U.S. Home Corp. v. Settlers Crossing, LLC*, 2012 WL 3536691, at *4 n.9 (D. Md. Aug. 14, 2012)).

7

precisely the type of discovery—where Plaintiffs can only know whether they have a claim with the benefit of discovery—the PSLRA's stay was designed to prevent.  Under the PSLRA, it is axiomatic that a securities plaintiff may not engage in discovery unless and until a complaint survives a motion to dismiss.  *See* 15 U.S.C. § 77z-1(b)(1) ("In any private action arising under this subchapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss").  This provision "clearly contemplates that 'discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint.'" *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 912–13 (9th Cir. 1999) (quoting S. Rep. No. 104-98, at 14 (1995)); *see also Gardner v. Major Auto. Cos.*, 2012 WL 1230135, at *3–4 (E.D.N.Y. Apr. 12, 2012) (the PSLRA makes a "strong presumption that no discovery should take place until a court has affirmatively decided that a complaint does state a claim").

Accordingly, "as a matter of law, failure to muster facts sufficient to meet the . . . pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay." *SG Cowen*, 189 F.3d at 912–13.  Indeed, "the PSLRA seeks to *prevent*," among other things, "using discovery to plead a sufficient case." *In re Spectranetics*, 2009 WL 3346611, at *9 (emphasis added).  Courts around the country agree.  *See, e.g.*, *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014) (reaffirming *SG Cowen's* holding as described above); *Cremeen v. Schaefer*, 2005 WL 4703651, at *2 (D. Kan. Dec. 7, 2005) ("[A] plaintiff may not engage in any discovery for the purpose of discovering additional evidence or facts—even if such evidence would allow a plaintiff to satisfy the Act's pleading requirements."); *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601 (7th Cir. 2019) (The PSLRA discovery stay "prevents a plaintiff from bringing an action without first possessing the information necessary to

8

satisfy the heightened pleading requirements of the PSLRA and using discovery to obtain that information and resuscitate a complaint that would otherwise be dismissed.").[2]

Plaintiffs' cases are not to the contrary and their reliance on them is misplaced. As discussed *supra* at pg. 7, *In re Royal Ahold* primarily concerned the preservation of evidence, not undue prejudice. *See In re Royal Ahold*, 220 F.R.D. at 251 ("[T]he plaintiffs' showing of necessity to preserve evidence appears substantial, at least as to discovery from Royal Ahold."). And the "undue prejudice" that court there considered was not a pleading issue, but an issue of equity vis-à-vis other parties whose claims were not subject to the PSLRA discovery stay. *See id.* at 251 ("[T]he ERISA plaintiffs included in this very litigation are prepared to proceed with discovery, and there is no indication that Congress intended to extend the discovery stay to them."). So too with *In re Williams Sec. Litig.*, 2003 WL 22013464 (N.D. Okla. May 22, 2003), where the court permitted discovery into a discrete set of documents where the plaintiffs "represented that the information contained in the proposed discovery [would] not be used to defeat the motion to dismiss or to attempt to amend the complaint." *Id.* at *2. That is the opposite of what Plaintiffs propose here, where discovery is being sought expressly so that Plaintiffs may "seek leave to amend the Complaint to plead the evidence obtained in discovery that proves Plaintiffs' purchases of iLearningEngines shares are traceable to the Offering Documents." Mot. at 6.

Plaintiffs also cite a non-Section 11, non-traceability-related case out of the Western District of Oklahoma to argue the existence of undue prejudice absent leave to seek discovery because, without it, "the federal claims are subject to dismissal for lack of facts alleged in support

---

[2] *See also, e.g.*, *In re Thornburg Mortg., Inc. Sec. Litig.*, 2010 WL 2977620, at *9 (D.N.M. July 1, 2010) ("[T]rying to acquire more facts for the purpose of having a better litigation position" does not constitute "undue prejudice."); *In re CFS Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1265 (N.D. Okla. 2001) (denying discovery for "fail[ure] to articulate any prejudice which is not inherent in the fact that the PSLRA imposes a stay in this case"); *In re Odyssey Healthcare Inc. Sec. Litig.*, 2005 WL 1539229, at *2 (N.D. Tex. June 10, 2005) (denying discovery meant "to add factual detail to their complaint prior to this Court's resolution of the pending motion to dismiss").

of standing." Mot. at 10 (quoting *Thomas v. Metropolitan Life Insurance Co.* 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008)). But the "standing" discussed therein was *Article III* standing, not a merits question of statutory standing. *See id.* at 1218. What's more, the quotation lacks critical context. The complaint in *Thomas* "present[ed] a complex matrix of claims: there are two different types of federal claims, different types of MetLife proprietary products are in issue with respect to each set of federal claims; and the types of MetLife proprietary products purchased by the plaintiffs varies." *Id.* at 1222. Plaintiffs have alleged no such circumstances here. And interpreted with Plaintiffs' gloss, *Thomas* would be dramatically out of keeping with the vast majority of decisions interpreting the phrase "undue prejudice" in the PSLRA. *See supra* at pg. 8, 9 n.2.

Plaintiffs' idiosyncratic interpretation of "undue prejudice" is placed into yet starker contrast by *Vacold LLC v. Cerami*. As with Plaintiffs' other cited authorities, the *Vacold* court was not concerned with traceability or statutory standing, but rather the "nature and timing" of a non-party's investment. *See Vacold*, 2001 WL 167704, at *7 (permitting discovery on "limited issue"). Like Plaintiffs' other cases, *Vacold* was not a Section 11 case, had nothing to do with traceability, and was not concerned in any way with statutory standing. In fact, *Vacold* was not even a class action, but an action involving corporate plaintiffs suing individuals over an allegedly fraudulent deal. *See id.* at *3.

Plaintiffs contend that courts have "repeatedly" held that "undue prejudice exists 'where defendants might be shielded from liability in the absence of the requested discovery.'" Mot. at 10 (quoting *Vacold*, 2001 WL 167704, at *6). But traceability is a statutory bar to recovery, not a factual one. Plaintiffs also misunderstand the proposition for which *Vacold* and the cases it cites on this issue stand: that discovery may be warranted into a question of fact that "may … shield [defendants] from *eventual* liability for *any* material violations of the securities laws." *Vacold*,

10

2001 WL 167704, at *6 (quotation omitted, emphasis added).  Here, in contrast, the discovery sought does not concern whether defendants may be ultimately shielded from *any* liability, but whether *these* specific plaintiffs can maintain their claims.  Moreover, the key facts at issue in the *Vacold* case were already alleged before any discovery was sought.  Not so here.  *Compare id.* at *7 ("This request does not implicate a concern that plaintiffs are seeking discovery … to support a claim not alleged in the Complaint.") *with* Mot. at 6 ("In the event that the Court grants this motion, Plaintiffs will seek leave to amend the Complaint to plead the evidence obtained in discovery").

Neither the text of the PSLRA nor the caselaw permit a reading of "undue prejudice" as broad as Plaintiffs propose.  "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced … after the action has been filed."  *Medhekar v. U.S. Dist. Ct. for the N. Dist. of California*, 99 F.3d 325, 328 (9th Cir. 1996).  To read the statutory stay to permit such discovery in the name of preventing "undue prejudice" would be to create a different kind of undue prejudice in direct conflict with the statutory text and scheme—and all in contravention of an "unmistakable" congressional purpose:  that "discovery should be permitted in securities class actions only after the court has sustained the legal sufficiency of the Complaint."  *In re Carnegie*, 107 F. Supp. 2d at 683 (quoting S. Rep. No. 104–98 at 14 (1995)).

**B.    Plaintiffs Also Have Not Met Their Burden of Showing that Discovery Is Particularized.**

Plaintiffs' Motion fails for a second, independent reason:  the discovery sought is not "particularized."  15 U.S.C. § 77z-1(b)(1).  A request is "particularized" when "it is directed at specific persons' and 'identifies specific types of evidence.'"  *Mori v. Saito*, 802 F. Supp. 2d 520, 523–24 (S.D.N.Y. 2011) (quoting *Kanas*, 2006 WL 2239038, at *2); *see also In re Royal Ahold*,

220 F.R.D. at 250 (quoting *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 306 (S.D.N.Y. 2002)) ("particularized" discovery requires a "clearly defined universe of documents"). As an implicit concession of this shortcoming, Plaintiffs acknowledge that they cannot presently identify which, or how many, broker-dealers they ultimately would subpoena. *See* Mot. at 9. Plaintiffs' request is the antithesis of a "clearly defined universe of documents." *In re Royal Ahold*, 220 F.R.D. at 250.

"A string of requests, even a string of individually particularized requests—is not sufficiently particularized" to lift the PSLRA discovery stay. *Waldman v. Wachovia Corp.*, 2009 WL 86763, at *1 (S.D.N.Y. Jan. 12, 2009). To the contrary, "[a]llowing seriatim requests would undermine the purpose of the PSLRA discovery stay—to reduce the burden of discovery … and prevent so-called fishing expeditions." *Id.* Despite Plaintiffs' assurances, their proposed discovery would be a complex endeavor of unknown, evolving scope. By their own terms, Plaintiffs' proposal starts with requests to the DTC and Continental, but they have no confidence as to whether those efforts will lead to production of the information they need. *See* Mot. at 8–9. If—and more likely, when—they do not, Plaintiffs will then subpoena "a limited [*i.e.*, unknown] number of [unnamed, *i.e.*, unknown] broker-dealers and, if necessary, AAI Solutions, Inc." *Id.* at 9. Further, many of those unidentified broker-dealers were likely acting on behalf of investment advisers, who also would then need to be subpoenaed to secure documents evidencing the identity of their selling clients. And even assuming Plaintiffs were able to trace their shares back through this web, the sellers from whom these hypothetical broker-dealers purchased shares are likely to have *themselves* purchased shares on the secondary market. The winding would continue with the issuance of yet more subpoenas. It is impossible to know how many rounds of discovery (all in contravention of the PSLRA's automatic stay of discovery) Plaintiffs might ultimately need to

12

determine whether they are entitled to pursue a Section 11 claim. These "seriatim requests" are not particularized, they are speculative. *See, e.g.*, *Waldman*, 2009 WL 86763, at *1 (discovery to "identify other materials that would be subject to further requests" is not "sufficiently particularized"); *Mishkin v. Ageloff*, 220 B.R. 784, 793 & n.6 (Bankr. S.D.N.Y. 1998) (rejecting "wait-and-see approach to the particularized discovery requirement," and holding that plaintiff must "specify [the requested] discovery up-front" and not "as the case progresses"). Because Plaintiffs seek iterative, market-wide tracing discovery, and because they intend to use it to amend their Amended Complaint, Plaintiffs' Motion should be denied.

### C.   Plaintiffs' Proposed Discovery Is Not Curative and Is Therefore Not "Necessary."

For yet a third, independent reason, Plaintiffs' Motion should be denied as futile. Futile acts are, by definition, not "necessary" to "prevent" any type of prejudice. 15 U.S.C. § 77z-1(b)(1). Plaintiffs contend that their proposed discovery "will enable them to plead evidence establishing that their iLearningEngines shares purchases are traceable to the Offering Documents." Mot. at 6. Plaintiffs are wrong, and the Motion should be denied.

Section 11 plaintiffs must "plead and prove" purchases of shares "traceable to the allegedly defective registration statement." *Slack Techs.*, 598 U.S. at 770. As Section 11 liability "runs with registered shares alone," *id.* at 769, the law requires "strict chain-of-title tracing" to registered shares rather than "constructive," probabilistic, or accounting-presumptive tracing, *Cupat*, 2025 WL 1141534, at *18 n.21. Where, as here, the Plaintiffs purchased shares in the aftermarket rather than directly in or during the offering, courts have widely recognized that compliance with this strict tracing requirement "is 'often impossible,' because 'most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares,' and 'many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position.'" *In re Century Aluminum*, 729

13

F.3d at 1107 (quoting *Barnes v. Osofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967)).   Under "present market realities," shares are often held in or flow through "fungibl[e]" holdings "in street name," which makes them "virtually impossible" to trace.   *Krim*, 402 F.3d at 498; *see also, e.g.*, *In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *4 (C.D. Cal. May 1, 2023) ("[O]nce shares [have been] commingled … it is effectively impossible to determine the origin of any individual stock.").

It is perhaps unsurprising, therefore, that only one court has so much as considered a similar request to lift the PSLRA discovery stay in order to seek discovery necessary to shore up insufficiently-pled traceability in a Section 11 case.[3]   That court squarely rejected the plaintiffs' request, where materially identical discovery was sought.   *Compare Cupat*, 2025 WL 1141534, at *18 n.21 (seeking leave to issue discovery targeting, *inter alia*, records "consisting of Palantir's transfer agent's transfer journal, Participant Daily Activity Statements held by the Depository Trust Company (DTC) … transaction records maintained by broker dealers, and registration status records from Palantir to trace Plaintiffs' purchases.") *with* Mot. at 8 (proposing to target "relevant documents such as the 'Participant Daily Activity Statements' … from iLearningEngines' and Arrowroot's transfer agent, Continental, relevant documents such as the transfer journals and underlying records regarding the share registrations").   The *Cupat* court properly held that such requests would have "the Court … replace one set of assumptions (probability based inferences) with another (accounting presumptions)"—all in contravention of *Slack*'s "strict chain-of-title tracing" requirement.   *Cupat*, 2025 WL 1141534, at *18 n.21.   In other words, because the discovery, even if obtained, would not enable Plaintiffs to plead actual *Slack*-compliant tracing, it

---

[3] Counsel for Marcum has identified no other case, and Plaintiffs cite none either (as they surely would have if any contrary case existed).

14

is not and cannot be "necessary" to prevent prejudice. 15 U.S.C. § 77z-1(b)(1); *Cupat*, 2025 WL 1141534, at \*18 n.21.

This is not to say that there is no way to plead or prove a Section 11 claim. To the contrary, a plaintiff who "purchased directly in [an] offering" or who purchased shares at a time where shares were *only* available pursuant to "one offering at the time of purchase" may plead traceability. *See Krim*, 402 F.3d at 498.[4] But Plaintiffs here, each of whose stock ownership is at best multiple degrees removed from the allegedly misleading registration documents, have not shown themselves capable of pleading *or* proving that they are among the class of people to whom Congress has seen fit to grant a Section 11 cause of action—those plaintiffs who "purchased shares traceable to the allegedly defective registration statement." *Slack*, 598 U.S. at 770.

## CONCLUSION

Plaintiffs' request is inconsistent with the PSLRA; Plaintiffs do not face any undue prejudice; and the discovery they seek is not particularized and is futile in any event. The Motion should therefore be denied.

---

[4] Both the *Century Aluminum* court and the Supreme Court have acknowledged that traceability is a high bar which many plaintiffs will fail to clear, but both recognized that it is one *Congress* imposed and can alone reconsider. *See In re Century Aluminum*, 729 F.3d at 1107 (quotation omitted) ("Though difficult to meet …, this tracing requirement is the condition Congress has imposed for granting access to the relaxed liability requirements § 11 affords."), *Slack*, 598 U.S. at 769 ("Adopting a broader reading of [Section 11] would, [plaintiff] says, … better accomplish the purpose of the 1933 Act. We cannot endorse this line of reasoning.").

15

Dated:  October 2, 2025

Respectfully submitted,

*/s/ Shirlethia V. Franklin*
Shirlethia V. Franklin
D. Md. Bar No. 28662
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
T: 202.879.3892
E: sfranklin@jonesday.com

Adrienne Ferraro Mueller
Jacob J. Thackston
*Admitted Pro Hac Vice*
JONES DAY
901 Lakeside Ave.
Cleveland, OH 44114
T: 216.586.3939
E: afmueller@jonesday.com
     jthackston@jonesday.com

Samir Kaushik
*Admitted Pro Hac Vice*
JONES DAY
2727 North Harwood Street, Suite 500
Dallas, Texas 75201-1515
T: 214.220.3939
E: skaushik@jonesday.com

*Attorneys for Defendant Marcum LLP*

1

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2025, I electronically filed the foregoing Opposition to Plaintiffs' Motion to Lift the PSLRA Discovery Stay by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

*/s/ Shirlethia V. Franklin*
Shirlethia V. Franklin

1