**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **DANNY WALKER**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**HARISH CHIDAMBARAN**, et al.,<br><br>Defendants. | Case No.: 8:24-cv-02900-DKC<br><br>Hon. Deborah K. Chasanow |

**LEAD PLAINTIFF LOUIS LEVEQUE'S AND PLAINTIFF IQBAL AL HAMID'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR OPPOSITIONS TO DEFENDANTS' MOTIONS TO DISMISS**

Lead Plaintiff Louis Leveque and Plaintiff Iqbal Al Hamid (collectively, "Plaintiffs") respectfully submit the attached opinion in *Sherman v. Abengoa, S.A.*, No. 22-2438 (2d Cir. Oct. 6, 2025). In reversing dismissal of plaintiffs' Securities Act claims and vacating in part the dismissal of plaintiffs' Exchange Act claims, the Second Circuit Court of Appeals held that: (i) materiality is rarely resolvable on a Rule 12(b)(6) record; (ii) falsity of a widespread accounting scheme's impact on a company's financial statements need not be specifically quantified to adequately allege falsity of the financial statements when its impact on the company as whole is otherwise alleged; (iii) generic cautionary language does not negate allegations of fraudulent accounting practices; and (iv) at the pleading stage, courts should credit detailed factual allegations drawn from internal audits and governmental regulatory or criminal proceedings. *Abengoa*, slip op. at 29-31, 33-35.

#### I.    Materiality and Falsity of Core Accounting (Netting/Round-Tripping)

In *Abengoa*, the Second Circuit emphasized that where plaintiffs plausibly allege a company-wide accounting scheme affecting core financials, materiality "will rarely be dispositive in a motion to dismiss," and dismissal is improper unless misstatements are "so obviously unimportant" that reasonable minds could not differ. Slip op. at 35. The *Abengoa* court credited allegations – supported by witnesses and an internal audit – that Abengoa's "triangulation" accounting scheme was widespread and systemic and precipitated bankruptcy, concluding plaintiffs adequately alleged an impact on the financial statements by the triangulation scheme. *Id.* at 33-35.

In its opinion, the Second Circuit found that the district court erred by dismissing the third amended complaint for failing to adequately allege falsity for the accounting misstatements by not specifically alleging "the impact of the alleged triangulation scheme on the financial statements as a whole." *Id.* at 34 (quoting in *Francisco v. Abengoa, S.A.*, 624 F. Supp. 3d 365, 397 (S.D.N.Y. 2022), *rev'd in part, vacated in part sub nom.*, *Abengoa,* slip op*.* The Second Circuit overturned the district court's dismissal of plaintiffs' accounting misstatement claims on falsity grounds finding it was not necessary to allege a specific quantification of the impact of the alleged misstatements on the company's financial statements when the complaint's allegations show the misstatements otherwise impacted the company. *Id.* at 34-35 (finding the third amended complaint adequately alleged the impact of the misstatements as they "precipitated" Abengoa's bankruptcy).

The *Abengoa* court's reasoning directly supports Plaintiff's falsity and materiality theory here. iLearningEngines used a quarterly "netting" scheme that routed most revenue and costs through the "Technology Partner," an undisclosed related party. As a result, its financial statements failed to fairly present the company's results in all material respects - distorting revenues and expenses and concealing that revenue originated from a related party. These misstatements directly

2

contributed to iLearningEngines' bankruptcy. Defendants themselves describe that iLearningEngines disclosed that over 90% of revenue in the first quarter of 2024 was collected by the Technology Partner and over 94% of costs were invoiced by the Technology Partner; that the second quarter 2024 revenue was comprised of roughly $521 million with about $239 million attributable to Technology Partner collections and about $237 million in offsetting costs; and that a ten-year contract allowed quarterly netting of amounts owed to the Technology Partner. ECF No. 84-1 at 11; ECF No. 83-1 at 10-11.

The Amended Complaint likewise pleads the governing Master Agreement and financial-statement notes showing that amounts collected by the Technology Partner were netted against "cost of services" charged by the Technology Partner; that the arrangement was long-term and unusual (including deferred repayment of the resulting payable for up to ten years after termination); and that, in practice, netting largely eliminated cash settlement, enabling revenue to be recorded gross while costs offset nearly all collections. ECF No. 41 at ¶¶105-08, 291-93; *see also id.* at ¶¶93-94. Plaintiffs allege that iLearningEngines financial statements were false and/or materially misleading because the financial statements did not fairly present the financial conditions and results of operations of iLearningEngines, failed to disclose that transactions with the Technology Partner, Experion, were related party transactions, and further misrepresented its revenue and expenses because they were "largely fake." *See id.* at ¶¶322, 330, 336, 344, 355, 384, 395, 467, 473, 476, 480, 494, 496, 499, 501, 509, 513, 516. Plaintiffs likewise allege that such misstatements led to iLearningEngines' bankruptcy. *See, e.g.*, *id*. at ¶461.

Under *Abengoa*, such allegations readily clear the bar on falsity and materiality: they target core accounting issues – revenue and expense recognition and presentation – and plausibly allege

an enterprise-level impact that is false and quintessentially material to the reasonable investor. *Abengoa*, slip op. at 35.

## II. Cautionary Language and Partial Disclosures Do Not Cure Deliberate Manipulation

The *Abengoa* court rejected the district court's reliance on generic "use of estimates" warnings, explaining it "strains credulity" that such a tepid warning put investors on notice of deliberate manipulation to inflate revenue, holding that even with such boilerplate disclaimers, a reasonable investor could be misled. Slip op. at 33-34. Here, Defendants point to disclosures that the Technology Partner was both a customer and a vendor and that amounts could be netted, but those generic disclosures do not inform investors that reported revenues and expenses lacked commercial substance or were round-tripped to inflate performance. *See* ECF No. 41 at ¶¶90-93, 292-93.

As pleaded and as reflected in Defendants' motions to dismiss, the same counterparty both collected virtually all revenue and billed nearly all costs, while the Master Agreement permitted netting and long-deferred settlement – precisely the sort of round-tripping mechanics *Abengoa* recognizes as plausibly misleading when presented as ordinary revenue. ECF No. 84-1 at 11; ECF No. 83-1 at 10-11; ECF No. 41 at ¶¶93-94, 292-93; *Abengoa*, slip op. at 33-35.

## III. The Court May Credit Auditor Actions, Special-Committee Findings, and Government Investigations at the Pleading Stage

*Abengoa* confirmed that courts may credit detailed allegations corroborated by internal audits and governmental or criminal proceedings in assessing falsity and scienter in a Rule 12(b)(6) motion. Slip op. at 29-31. Plaintiff alleges and the record reflects: (i) the Audit Committee – based on the Special Committee's investigation – determined that iLearningEngines' financial statements for multiple periods "should no longer be relied upon"; (ii) iLearningEngines' accounting firm withdrew its audit opinions; (iii) the Company received an SEC subpoena; and

4

(iv) the Special Committee self-reported potential violations to the DOJ. ECF No. 41 at ¶¶196-201, 215, 218; *see also* ECF No. 83-1 at 13-14. The market's immediate reaction and iLearningEngines' bankruptcy underscore the materiality of its false and misleading statements – and support loss causation – just as *Abengoa* recognized when crediting comparable allegations of price declines and insolvency following corrective disclosures. ECF No. 41 at ¶¶202, 207, 209, 220; *Abengoa*, slip op. at 9-11).

For these reasons, *Abengoa* provides persuasive supplemental authority supporting denial of Defendants' motions to dismiss on materiality and falsity grounds.

Dated:  October 17, 2025                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

*/ s / Nicholas I. Porritt*
Nicholas I. Porritt (Bar No. 17078)
Alexander A. Krot III
(attorney admission application forthcoming)
1101 Vermont Ave, NW Suite 800
Washington, DC 20005
Tel: (202)-524-4290
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: akrot@zlk.com

*Counsel for Lead Plaintiff Louis Leveque, Plaintiff Iqbal Al Hamid, and Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025, I electronically filed the foregoing by using the

CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.


*/s/ Nicholas I. Porritt*
Nicholas I. Porritt