**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| **DANNY WALKER**, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. DKC 24-2900 |
| **HARISH CHIDAMBARAN**, *et al.*, ) ) | |
| Defendants. ) ) ) ) ) ) | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF LEAD PLAINTIFF**
**LOUIS LEVEQUE'S AND PLAINTIFF IQBAL AL HAMID'S MOTION TO**
<u>**PARTIALLY LIFT THE DISCOVERY STAY AND PERMIT LIMITED DISCOVERY**</u>

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   ARGUMENT.................................................................................................. 4

    A.  THE POLICY REASONS FOR THE PSLRA DISCOVERY STAY SUPPORT THE
REQUESTED RELIEF ................................................................................ 4

    B.  PLAINTIFFS WILL SUFFER UNDUE PREJUDICE ABSENT THE DISCOVERY ........ 5

    C.  PLAINTIFFS ALLEGE THAT AND WILL PROVE THROUGH EVIDENCE THAT
THEIR ILEARNINGENGINES PURCHASES ARE TRACEABLE TO THE OFFERING
DOCUMENTS. ....................................................................................... 10

    D.  THE REQUESTED DISCOVERY IS SUFFICIENTLY PARTICULARIZED. .............. 13

III.  CONCLUSION .......................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009).................................................................................................. 2

*Barnes v. Osofsky*,

373 F.2d 269 (2d Cir. 1967)...................................................................................... 10

*In re Carnegie Int'l Corp. Sec. Litig.*,

107 F. Supp. 2d 676 (D. Md. 2000) ........................................................................... 4

*In re Century Aluminum Co. Sec. Litig.*,

729 F.3d 1104 (9th Cir. 2013) ................................................................................. 10

*In re CFS-Related Sec. Fraud Litig.*,

179 F. Supp. 2d 1260 (N.D. Okla. 2001) ................................................................... 9

*Cornielsen v. Infinium Cap. Mgmt., LLC*,

916 F.3d 589 (7th Cir. 2019) ..................................................................................... 9

*Cremeen v. Schaefer,*

Civil Action No. 04–2519–CM, 2005 WL 4703651 (D. Kan. Dec. 7, 2005)............. 9

*Cremeen v. Schaefer,*

No. 04-2519-CM, 2005 WL 1925606 (D. Kan. Aug. 10, 2005) ................................ 9

*Cupat v. Palantir Techs., Inc.*,

No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025)................... 12, 13

*Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*,

No. CV DKC 23-0574, 2023 WL 4134427 (D. Md. June 22, 2023)....................................... 12

*Gardner v. Major Auto. Cos.*,

 No. 11–CV–1664 (FB), 2012 WL 1230135 (E.D.N.Y. Apr. 12, 2012) ...................................... 9

*Garnes v. Maryland*,

 No. CV RDB-17-1430, 2018 WL 276425 (D. Md. Jan. 3, 2018) ............................................ 13

*Herman & MacLean v. Huddleston*,

 459 U.S. 375 (1983) ........................................................................................................... 2

*In re Honest Co. Sec. Litig.*,

 No. 221CV07405MCSPLA, 2023 WL 3190506 (C.D. Cal. May 1, 2023) .............................. 10

*Krim v. pcOrder.com, Inc.*,

 402 F.3d 489, 499 (5th Cir. 2005) ...................................................................................... 10

*MacLean v. Huddleston*,

 459 U.S. 375 (1983) ........................................................................................................... 2

*Medhekar v. U.S. Dist. Ct. for the N. Dist. of California*,

 99 F.3d 325 (9th Cir. 1996) ................................................................................................ 9

*Mishkin v. Ageloff*,

 220 B.R. 784 (S.D.N.Y. 1998) ........................................................................................... 15

*Mori v. Saito,*,

 802 F. Supp. 2d 520 (S.D.N.Y. 2011) ................................................................................. 15

*In re Odyssey Healthcare, Inc.*,

 No. CIV.A.3:04-CV-0844-N, 2005 WL 1539229 (N.D. Tex. June 10, 2005) .......................... 9

*Pirani v. Slack Techs., Inc.*,

 127 F.4th 1183 (9th Cir. 2025) ............................................................................................ 2

iv

*In re Royal Ahold N.V. Securities & Erisa Litigation,*

220 F.R.D. 246 (D. Md. 2004).......................................................................................... 14, 15

*SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*,

189 F.3d 909 (9th Cir. 1999) ...................................................................................................... 9

*In re Spectranetics Corp. Sec. Litig.,*

No. 08-CV-02078-MSK-BNB, 2009 WL 3346611 (D. Colo. Oct. 14, 2009)............................ 9

*In re Suprema Specialties, Inc. Secs. Litig.,*

438 F.3d 256 (3d Cir. 2006).............................................................................................. 8, 13

*Thomas v. Metro. Life Ins. Co.*,

540 F. Supp. 2d 1212 (W.D. Okla. 2008) ..................................................................... 3, 6, 7, 9

*In re Thornburg Mortg., Inc. Sec. Litig.*,

No. CIV 07-0815 JB/WDS, 2010 WL 2977620 (D.N.M. July 1, 2010) .................................. 9

*Vacold LLC v. Cerami,*

No. 00 CIV. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) ........................... 7, 8, 9

*Waldman v. Wachovia Corp.*,

No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009)................................ 14, 15

*In re Williams Sec. Litig.*,

No. 02–CV–72H(M), 2003 WL 22013464 (N.D. Okla. May 22, 2003) ............................... 8, 9

**Statutes**

15 U.S.C. § 77k(a) ..................................................................................................................... 7

15 U.S.C. §77k............................................................................................................................ 1

15 U.S.C. §77z-1(b)(1) ............................................................................................................... 2

**Other Authorities**

John C. Coffee, Jr. & Joshua Mitts, *Slack v. Pirani and the Future of Section 11 Claims*, at 1

   (Dec. 1, 2023) https://ssrn.com/abstract=4644888 ............................................................ 10, 11

S. Rep. No. 104-98 (1995) ........................................................................................................ 4

**Regulations**

17 C.F.R. §240.10b-5 ................................................................................................................ 6

## I.    PRELIMINARY STATEMENT

As set forth at length in Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 41), iLearningEngines, Inc. was a company that should never have been able to go public. Its financial statements riddled with fictitious revenue and expenses reported in direct contravention of GAAP, it lasted just five months before a report by Hindenburg Research caused the entire house of cards to quickly collapse. An investigation by the United States Securities & Exchange Commission was commenced. An internal investigation by iLearningEngines' Board of Directors led to the departures of senior management, including Defendants Chidambaran, Naqvi, and Arackal. iLearningEngines' prior financial statements that had been included in its offering documents were withdrawn as unreliable. Finally, on December 20, 2024, iLearningEngines filed for bankruptcy and self-reported potential violations of federal law to the United States Department of Justice. Defendants in this action are precisely the gatekeepers that Congress tasked with protecting investors from frauds like iLearningEngines; its officers, directors, and auditor. *See* Securities Act of 1933, §11, 15 U.S.C. §77k. These gatekeepers conspicuously failed in their duties under the Securities Act, enabled iLearningEngines to go public, and caused investors to lose millions of dollars.

In moving to dismiss Plaintiffs' Securities Act claims, Defendants do not seriously contest the falsity of representations contained in the Registration Statement, representations iLearningEngines has already conceded were false. Instead, Defendants seek to shelter behind the convoluted process by which iLearningEngines' shares became available to investors, a process they were all involved in creating, and argue that Plaintiffs cannot trace their shares to a false registration statement. In the Amended Complaint, Plaintiffs have pleaded sufficient facts to plausibly allege their shares were traceable: the newly registered shares of iLearningEngines

covered 87.1% of its total outstanding shares and 100% of the public float, and Plaintiffs purchased their shares at the time the newly registered shares were being actively sold into the market by the selling shareholders who shares were registered by the false registration statements. *See* ECF Nos. 90, 91 at 25-28; *see also* ¶¶137, 139, 241, 247, 418, 417-36, 439-440; ECF No. 90-1, Porritt Decl., Ex. A, at 45. This is all that is required at this stage. *See*, *e.g.*, *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1188 (9th Cir. 2025) (stating if plaintiff had only alleged his purchases were traceable, then the Ninth Circuit "would have to decide whether his allegation was sufficient to make the conclusion of traceability a plausible one under the pleading standards articulated by the Supreme Court in *Ashcroft v. Iqbal*, [556 U.S. 662, 678 (2009)]."); ECF Nos. 90-92 (Plaintiffs' oppositions to motions to dismiss).

Defendants argue this is still insufficient. If the Court accepts their interpretation of the Securities Act, a statute that is designed to place "minimal burden" on plaintiffs, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983), then it is likely impossible for any iLearningEngines' investor to adequately plead a Securities Act claim against the Defendants, even though proof of the claim, including tracing, will be readily apparent in discovery as iLearningEngines' own Special Committee quickly concluded. And despite protestations to the contrary, this is precisely Defendants' purpose: to avoid on a technical pleading requirement a meritorious claim that they cannot defend on the merits.

While confident that their Amended Complaint adequately pleads a claim under the Securities Act as amended by the Private Securities Litigation Reform Act of 1995 and the Federal Rules of Civil Procedure, Plaintiffs have nonetheless filed in the alternative this present motion to lift the statutory discovery stay imposed by the PSLRA. 15 U.S.C. §77z-1(b)(1). In the event that the Court finds Plaintiffs' extensive pleadings alleging tracing to be insufficient, Plaintiffs propose

that the stay should be lifted for the limited purpose of subpoenaing non-parties to enable plaintiffs to "prove" at the pleading stage that their share purchases are traceable to a registration statement as alleged in their pleadings. Contrary to Defendants' opposition, lifting the stay is not contrary to the policy of the PSLRA which expressly contemplates the stay to be lifted under certain circumstances. Indeed, the explicit purpose of the PSLRA discovery stay, avoiding undue discovery burdens being placed on defendants, is entirely absent here. Defendants have not attempted to argue that the proposed discovery is abusive or meant to coerce Defendants to an early settlement, or places any burden whatsoever on Defendants. Similarly, the discovery does not seek to uncover new claims but instead seeks only to evidence that Plaintiffs purchases are traceable to the Registration Statements as already alleged in the Amended Complaint. In simple terms, the sought discovery does not impact Defendants excepting that they may be unable to escape liability by hiding behind the PSLRA discovery stay to prevent Plaintiffs obtaining the evidence to prove their existing allegations of traceability alleged in the Amended Complaint.

In cases such as here, where the discovery does not contravene the policy reasons for enacting the PSLRA discovery stay and defendants may escape liability in the absence of the lifting the stay, courts have found that undue prejudice exists and permitted the sought discovery. *See Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212, 1222 (W.D. Okla. 2008). Furthermore, the discovery sought is sufficiently particularized. Plaintiffs seek precise trading records from two initial custodians (with a possibility of limited further custodians) to establish Plaintiffs' chain-of-title of their shares to the registration statements. These are routine business records for the custodians.

Therefore, in the event the Court finds that Plaintiffs have not adequately alleged Section 11 standing, Defendants should not be able to escape liability for the violations of Section 11 on

an issue of fact at the pleading stage that is separate and apart from the merits. By permitting the limited discovery sought by the Motion, Plaintiffs would avoid the undue prejudice they will otherwise suffer in absence of allowing the requested limited discovery.

## II.    ARGUMENT

### A. The Policy Reasons for the PSLRA Discovery Stay Support the Requested Relief

Defendants argue that Plaintiffs must prove in the Amended Complaint that their purchases of iLearningEngines shares are traceable through a chain of title to the Registration Statements. Marcum Opp. at 2, 13. Here, Plaintiffs only seek such information from non-parties that would permit Plaintiffs to plead evidence of their chain of title to supplement the Amended Complaint.

Defendants argue that the sought discovery is a "fishing expedition" that is contrary to the PSLRA. Defendants concede that the purpose of the PSLRA discovery stay is to prevent "the abuse of the discovery process to coerce settlement." Marcum Opp. at 5 (quoting *In re Carnegie Int'l Corp. Sec. Litig.*, 107 F. Supp. 2d 676, 682–83 (D. Md. 2000). Defendants make no attempt to show that Plaintiffs' proposed discovery is designed to coerce early settlement. Defendants, rather, attempt to sway the Court that any request for discovery contravenes the PSLRA discovery stay in the absence of a need to preserve evidence or plaintiffs being placed in an unfair position concerning concurrent settlement discussions related to the facts at issue.

In making this argument, however, Defendants conveniently truncate a key quote by the Senate Report finding that the PSLRA discovery stay was meant to prevent the filing of "frivolous lawsuits in order to conduct discovery in the hopes of finding a sustainable claim ***not alleged in the complaint***." Marcum Opp. at 4-5 (quoting S. Rep. No. 104-98, at 14 (1995) and truncating emphasized text (emphasis added)). This is simply not the case here. Plaintiffs seek discovery only

on the very facts that Defendants argue must be included in the Amended Complaint to prove statutory standing under Section 11, which they contend is "strict chain-of-title tracing." Marcum Opp. at 13. The Amended Complaint contains Plaintiffs' allegations on how they will prove their iLearningEngines shares trace to the Registration Statements. ¶¶417-36.

As apparent from the Motion, none of the merit elements of Plaintiffs' Section 11 claims are being sought by the limited discovery and it is not sought to uncover new claims not already alleged. In the Amended Complaint, Plaintiffs allege identical misstatements in the Registration Statements for both their claims under the Securities Act and the Exchange Act (*see, e.g.* ¶¶316-394, 462-469, 492-96) and substantiate the reasons such statements are false over tens of pages. Plaintiffs are not seeking any discovery here to bolster or amend these allegations. Thus, Defendants do not argue, because they cannot, that such sought discovery is abusive, meant to force an early settlement, or would result in any burden on Defendants.

Simply put, the discovery sought only concerns the factual evidence that proves Plaintiffs' existing allegations of traceability of their shares to the Offering Documents as alleged in the Amended Complaint. Defendants seek to escape liability hiding behind the existence of a discovery stay and mere pretenses of discovery abuse. Given the requested discovery does not contravene the PSLRA's discovery stay and the absence of it would result in undue prejudice for Plaintiffs, the Motion should be granted.

**B.  Plaintiffs Will Suffer Undue Prejudice Absent the Discovery**

Defendants argue that Plaintiffs are seeking to establish the existence of their claims, stating "[t]his is precisely the type of discovery—where Plaintiffs can only know whether they have a claim with the benefit of discovery—the PSLRA's stay was designed to prevent." Marcum Opp. at 7-8. This is incorrect. The fact that iLearningEngines' Registration Statements contained

material misrepresentations is conceded by iLearningEngines itself and not seriously contested by Defendants here. Investors have a claim under Section 11 of the Securities Act for material misrepresentations in a registration statement. Defendants' argument is solely concerning whether the statutory standing element has been met and not the liability elements of the Section 11 claims. As such, Defendants seek to conflate the PSLRA discovery stay's purpose of avoiding abusive litigation by plaintiffs' attorneys seeking to find actionable misstatements with the situation present here which is to merely establish the standing that Plaintiffs have already alleged.

Accordingly, undue prejudice to Plaintiffs exists if the Court sides with Defendants' position requiring them to plead evidence of their standing despite having plausibly alleged it. Defendants' attempts to distinguish the on-point case of *Thomas v. Metro. Life Ins. Co.*, 540 F. Supp. 2d 1212 (W.D. Okla. 2008), is unavailing. Defendants argue that *Thomas* is distinguishable because it dealt with Article III standing versus statutory standing and did not concern traceability. Even a cursory review of *Thomas* makes clear that the pertinent issue was whether Plaintiffs have standing under the Securities Exchange Act of 1934 and under Rule 10b-5 to assert claims for plaintiffs' purchases of MetLife's proprietary mutual funds and not their Article III standing. *Id*. at 1215.[1] First, the issues of Article III standing pertained to the state law claims, not the federal claims, including the Section 10(b) claims. *Id.* at 1224-27 (discussing Article III for state law claims); *id.* at 1219 ("This standing argument challenges the viability of any federal claims based on the purchase of proprietary mutual funds . . . ."). Second, Rule 10b-5 has a requirement that the fraud be "in connection with the purchase or sale of any security" (17 C.F.R. §240.10b-5) not

---

[1] The remaining claims, where standing was also at issue, concerned alleged violations of investment advisory contracts under the Investment Advisors Act, consumer protection and deceptive trade claims concerning proprietary term insurance, and violations of Oklahoma Insurance Code for purchases of MetLife term life insurance products. *Id*. at 1215-16.

unlike Section 11's requirement that the claims for misstatements in a registration statement can be brought by "any person acquiring such security" (15 U.S.C. § 77k(a)). Third and finally, Defendants fail to provide any explanation as to why such delineations between Article III and the statutory standing are pertinent.

Defendants attempt to further confuse and distract the Court by arguing that the case concerns a "complex matrix of claims", but this is a red-herring. The applicable issue in *Thomas* was whether the court would lift the PSLRA's discovery to permit the plaintiffs to conduct limited discovery into their standing to pursue their Section 10(b) claims. The *Thomas* court determined that undue prejudice did exist and permitted plaintiffs to conduct limited discovery to determine "which, if any, MetLife proprietary products as defined in the complaint and as put in issue by either of the federal claims (mutual funds with respect to the 10(b) claims; . . . were purchased by which, if any, of the three named plaintiffs." *Id.* at 1222. Thus, Defendants' arguments fail. Here, the Court should find undue prejudice as did the *Thomas* court because "***the requested discovery is necessary to prevent undue prejudice. Absent particularized discovery on this subject, the federal claims are subject to dismissal for lack of facts alleged in support of standing.***" *Id.* (emphasis added).

Defendants' arguments concerning *Vacold LLC v. Cerami* are also misplaced. No. 00 CIV. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001). Again, unable to meaningfully distinguish *Vacold's* opinion on the reason it found undue prejudice, Defendants merely state the factual discovery sought did not concern standing or traceability. Marcum Opp. at 10.

In *Vacold*, the court disagreed with defendants' argument, not unlike Defendants arguments here, that "plaintiffs are 'attempt[ing] ... to use discovery as a fishing expedition ... in the desperate hope of finding something to justify their unfounded claim.'" *Vacold*, 2001 WL

167704, at *7. The *Vacold* court found that undue prejudice existed because the failure to allow discovery on the limited issue of the nature and timing of J & J's interest and investment in AVT and VLN may unfairly insulate defendants from liability for securities fraud as alleged by plaintiffs in the Complaint." *Id.* Thus, as here, where the "request does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint", the Court should find undue prejudice exists and permit the sought discovery. *See id.*

At issue is a mere question of fact: does the chain of title evidence that Plaintiffs purchased shares traceable to the Registration Statements. Although Defendants state otherwise, this is clearly a factual issue. *See In re Suprema Specialties, Inc. Secs. Litig.,* 438 F.3d 256, 274 n.7 (3d Cir. 2006) (the question of tracing in the secondary market is "a factual one, to be resolved through discovery, as to whether plaintiffs can demonstrate that the shares they allegedly purchased are in fact traceable to the registration statement alleged to be false and misleading.").

Defendants argue that Plaintiffs purchases cannot be traced to the Registration Statements in contrast to the detailed allegations in the Amended Complaint. The sought discovery will resolve this issue. Contrary to Defendants arguments, in the absence of adequately alleging traceability of Plaintiffs' shares to the Registration Statement, Defendants are "shielded from *any* liability" for the Section 11 claims. In fact, if the Court grants Marcum's motion to dismiss for want of adequately alleged Section 11 standing, it will be dismissed from this action as only Securities Act claims are alleged Marcum. Thus, this is precisely what Defendants seek to do.

Defendants further argue that *In re Williams Securities Litigation*, No. 02–CV–72H(M), 2003 WL 22013464 (N.D. Okla. May 22, 2003) is not supportive of a finding of undue prejudice because it concerns preservation of evidence from documents provided to regulators concerning the allegations of fraud that Plaintiffs represented will not be used to defeat the motion to dismiss.

8

Marcum Opp. at 9. Defendants miss the point. *In re Williams* evidences that when "the enforcement of the stay as to the particular documents sought would not serve any interest the PSLRA stay was enacted to advance" that a delay caused by the discovery stay can result in undue prejudice warranting limited discovery. *In re Williams Secs. Litig.,* 2003 WL 22013464, at *2-3.

Here, Plaintiffs seek only non-merit evidence that Defendants argue must be included in the Amended Complaint to prove the standing Plaintiffs have already alleged to bring their Securities Act claims. This is not the type of discovery that Congress sought to prevent when enacting the PSLRA. All of the cases cited by Defendants go to pleading the merit elements of defendants' fraud not to the plaintiffs' standing to pursue such claims. *See* Marcum Opp. at 8-9, (citing to cases in which plaintiffs sought leave to conduct discovery into the merit elements of the claims).[2] Rather, the discovery sought by Plaintiffs is precisely the type of discovery that does not contravene the PSLRA's policy for the discovery stay and that the *Thomas* and *Vacold* courts found warrant that discovery stay be lifted.

---

[2] *See Medhekar v. U.S. Dist. Ct. for the N. Dist. of California*, 99 F.3d 325, 328 (9th Cir. 1996) (finding initial disclosures by defendants that identify individual and documents to subject to PSLRA discovery stay as it goes to elements of merit); *SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of CA*, 189 F.3d 909, 912–13 (9th Cir. 1999) (discovery sought was to plead elements of alleged violations of insider trading laws); *Gardner v. Major Auto. Cos.*, No. 11–CV–1664 (FB), 2012 WL 1230135, at *3–5 (E.D.N.Y. Apr. 12, 2012) (seeking discovery into elements of related non-fraud claims*); In re Spectranetics Corp. Sec. Litig.,* No. 08-CV-02078-MSK-BNB, 2009 WL 3346611, at *1 (D. Colo. Oct. 14, 2009) (seeking all documents defendant has provided or would provide to regulators concerning related claims); *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 601 (7th Cir. 2019) (denying discovery as to the identity of speakers of misstatements); *Cremeen v. Schaefer,* Civil Action No. 04–2519–CM, 2005 WL 4703651, at *2 (D. Kan. Dec. 7, 2005) (after previously been provided to conduct limited discovery to adequately allege Ponzi scheme allegations against defendant denying further opportunity for relief from discovery stay to conduct additional discovery); *Cremeen v. Schaefer,* No. 04-2519-CM, 2005 WL 1925606, at *1 (D. Kan. Aug. 10, 2005) (permitting limited discovery to bolster merit allegations prior to denying additional leave from discovery stay); *In re Thornburg Mortg., Inc. Sec. Litig.*, No. CIV 07-0815 JB/WDS, 2010 WL 2977620, at *9 (D.N.M. July 1, 2010) (seeking "to obtain additional evidence of the Defendants' wrongdoing"); *In re Odyssey Healthcare, Inc.*, No. CIV.A.3:04-CV-0844-N, 2005 WL 1539229, at *1 (N.D. Tex. June 10, 2005) (seeking documents from Department of Justice investigation on same facts at issue); *In re CFS-Related Sec. Fraud Litig.*, 179 F. Supp. 2d 1260, 1268 (N.D. Okla. 2001) (seeking all documents concerning relationship of parties as part of broad discovery requests).

**C. Plaintiffs Allege that and Will Prove Through Evidence that Their iLearningEngines Purchases are Traceable to the Offering Documents.**

In a last-ditch attempt, Defendants argue that Plaintiffs' Motion is futile as the sought discovery will not enable Plaintiffs to conduct a chain of title analysis to prove their iLearningEngines shares are traceable to the Offering Documents. Marcum Opp. at 13-15. Defendants reach this opinion in a conclusory fashion arguing that conducting a chain of title analysis in the secondary market is impossible based on the structure of the market and the opinion of one district court in Colorado. *Id.* Defendants are wrong.

First, Defendants argue that the tracing is impossible in the secondary market given the market structure. Defendants rely on case excerpts where courts discussed the difficulties that existed at those to prove tracing, namely from 1967, 2005, and 2013. *See* Marcum Opp. at (citing *Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 499 (5th Cir. 2005); *In re Century Aluminum Co. Sec. Litig.,* 729 F.3d 1104, 1107 (9th Cir. 2013); *see also id*. (citing *In re Honest Co. Sec. Litig.*, No. 221CV07405MCSPLA, 2023 WL 3190506, at *4 (C.D. Cal. May 1, 2023) which relies upon *Century*.). Much has changed since these times and tracing is possible in the current market given the changes in computing power and improved data-reporting requirements. *See* John C. Coffee, Jr. & Joshua Mitts, *Slack v. Pirani and the Future of Section 11 Claims*, at 1 (Dec. 1, 2023) https://ssrn.com/abstract=4644888 ("*Future of Section 11 Claims*").

Furthermore, Defendants disregard that here the iLearningEngines shares that were registered by the Registration Statements and offered into the market were of a continuous nature whereby the iLearningEngines employees and the Selling Securityholders sold at various times after the effectiveness of the respective registration statement and throughout the time at issue in

10

the Amended Complaint. As compared to a prototypical secondary offering where shares are registered and sold into the market at a set price on the offering date to underwriters or other investors who subscribed in the offering, the sales under the Registration Statements were of a continuous nature whereby the selling shareholders sold their shares at a time and price of their choosing.[3]

As a result, newly registered iLearningEngines shares entering into the public market would be coming from non-commingled accounts of the selling shareholders to purchasers as part of these offerings at the relevant times. *See* ¶¶428-30. Therefore, any of Plaintiffs purchases from these sellers were in the "offering." Defendants have admitted in the Marcum Opposition that purchasing in an offering is a way a plaintiff may prove traceability. Marcum Opp. at 15 ("This is not to say that there is no way to plead or prove a Section 11 claim. To the contrary, a plaintiff who 'purchased directly in [an] offering' . . . may plead traceability."); *see also* ¶417 ("Plaintiffs . . . purchased iLearningEngines common stock issued in, or traceable to, the Offering Documents . . . .").

Moreover, the offerings here are distinguishable from a prototypical secondary offering where shares not purchased on the offering date may have changed hands multiple times which would require additional tracing analyses. In either case, tracing of purchases in the secondary market can be accomplished. *See e.g.*, *Future of Section 11 Claims*, at 1 ("Many judges, academics, plaintiffs' and defense attorneys still subscribe to the myth that it is impossible to trace chain of title for commingled securities in order to establish standing under Section 11. Unfortunately, this

---

[3] Numerous amendments to the Prospectus evidence the ongoing nature of these sales. *See, e.g.,* ¶10 ("Form S-1 Registration Statement . . . was declared effective by the United States Securities and Exchange Commission ("SEC") on August 9, 2024 and were offered for sale by prospectus pursuant to the Rule 424(b) (3) initially filed by iLearningEngines with the SEC on August 12, 2024, and subsequently amended seven times thereafter through December 10, 2024.")

11

is a misguided, out-of-date assumption because enhanced data-reporting requirements and modern computing power can realistically solve this problem.").

Plaintiffs have alleged that they will prove their allegations that their iLearningEngines shares trace to the Registration Statements though a chain of title. At the motion to dismiss stage all well-pleaded allegations must be accepted as true. *Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*, No. CV DKC 23-0574, 2023 WL 4134427, at *4 (D. Md. June 22, 2023) (Chasanow, J.) ("[A] plaintiff is not required to plead evidence or prove its case at the motion to dismiss stage. Alleging that a statement was made is enough, and the court must accept the allegation as true."). Notwithstanding, Defendants argue that the Court must accept their conclusions as true that tracing under the current factual positions impossible. Defendants, however, have not put forth any evidence that contradicts Plaintiffs' allegations.

Defendants' reliance on *Cupat v. Palantir Techs., Inc.*, is misplaced as it is distinguishable. No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025). First*, in *Culpat*, on the date of the de-SPAC transaction, 47.5% of the shares entering the market were unregistered with the other 52.5% registered by the registration statement. *Id.* at *2. This is not the case where the Registration Statements registered over iLearningEngines entire public float and over 87.1% of iLearningEngines outstanding shares. ¶¶9, 137, 139, 241, 247-248, 439-440; ECF No. 90-1 at 45. In contrast to Defendants' characterization of the sought discovery as a "fishing expedition," this is more akin to "shooting fish in a barrel." Defendants do not dispute that over 100% of iLearningEngines public float was registered by the Registration Statements or even grapple with this in the Marcum Opposition.

Second, denial of the motion for leave to lift of the discovery stay was in *Culpat* was limited to the specific reasons that Defendants raised as to the methodology of tracing proposed by

12

plaintiffs and the reasons offered in opposition by defendants. *See id.* at \*18 n.21 ("the Court is not persuaded that actual chain-of-title tracing is feasible under the discovery approach Plaintiffs have proposed"). Here, no such representations have yet been made or argued by the parties or their experts. Rather, Plaintiffs allege in the Amended Complaint that they can prove their shares trace to the Registration Statement by reconstructing the chain of title for their iLearningEngines shares. Any arguments whether or not the methodology proves tracing is one best reserved for experts after discovery. *See In re Suprema*, 438 F.3d at 274 n.7 (3d Cir. 2006) (discussing tracing in the secondary market is a factual issue).

### D. The Requested Discovery is Sufficiently Particularized.

The Motion seeks documents to evidence Plaintiffs' chain of title for their iLearningEngines purchases to the Offering Documents. ECF No. 93 at 3-5. To that end, Plaintiffs have identified specific documents and the non-parties that possess these documents in their Motion which was also alleged in the Amended Complaint. Notably, Defendants do not argue that Plaintiffs have misidentified the DTC, Continental, and AAI Solutions, or contend that these entities do not possess the sought documentation. *See* Marcum Opp. Defendants therefore have conceded this element as to these non-parties. *See Garnes v. Maryland*, No. CV RDB-17-1430, 2018 WL 276425, at \*3 (D. Md. Jan. 3, 2018) (treating failure by party to address arguments in motion as "abandon[ing] any opposition to those arguments.").

Defendants' sole remaining argument is that Plaintiffs have not identified each of the broker-dealers that they may seek chain of title documents from in the event that other documents that Plaintiffs received do not complete Plaintiffs' chains of title. Marcum Opp. at 11-13. Defendants rely on conjecture that this necessitates "rounds of discovery" and that the whole

13

tracing analyses is "a complex endeavor of unknown evolving, scope." *Id.* at 1, 12. Defendants have not cited any support for their conclusory statements.

Plaintiffs have alleged a "clearly defined universe of documents" consisting of Plaintiffs' chains of title for their iLearningEngines purchases from the DTC to their own broker-dealers between the time immediately preceding the Form S-8 Registration Statement and the time of Plaintiffs purchases. As such, if additional brokers are needed beyond Plaintiffs' own broker-dealers, only the interim identities are unknown at this time. The fact that there may be an intervening broker-dealer between Plaintiffs' broker-dealers and the DTC or Continental, does not mean this is a seriatim request or is not particularized.

In fact, Defendants cite to *In re Royal Ahold N.V. Securities & Erisa Litigation,* 220 F.R.D. 246 (D. Md. 2004) which actually supports Plaintiffs' requested discovery. In *Royal Ahold*, the court found that plaintiffs sought documents as all those "produced to governmental, regulatory, or self regulatory agencies" as particularized as it was a "clearly defined universe of documents." *Id.* at 250. Although the request was focused at the defendant, the scope of the information included a number of unidentified entities and was found to be particularized. *Id.* Thus, Plaintiffs' subpoenas to brokers, DTC, and transfer agents seek precise trading records to establish Plaintiffs' chain-of-title to the Offering Documents is "particularized." *Id.*

Defendants' reliance upon *Waldman v. Wachovia Corporation*, No. 08 CIV. 2913(SAS), 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) is similarly misplaced. First, *Waldman* granted Plaintiffs requests to lift the discovery stay. *Id.* at \*2. Second, although *Waldman* recognized that seriatim requests would be improper in that particular case when documents sought were those provided to state and federal regulatory investigations would be a "a means to identify other materials that would be subject to further requests" such as different types of "documents solely in defendants'

14

possession." *Id.* Here, the documents sought concern Plaintiffs' chain of title for their iLearningEngines shares and it is merely the identity of certain non-parties that potentially possess documents that remains to be identified. As *Royal Ahold*, the universe of documents has already been identified and therefore is sufficiently particularized. *See In re Royal Ahold*, 220 F.R.D. at 250.

Defendants remaining authorities do not warrant a different outcome as Plaintiffs seek discovery concerning the traceability of their shares to the Registration Statements. *See Mori v. Saito,*, 802 F. Supp. 2d 520, 523-24 (S.D.N.Y. 2011) (finding sought discovery not particularized when type of documents and time period not defined); *Mishkin v. Ageloff*, 220 B.R. 784, 793 (S.D.N.Y. 1998) (finding "discovery sought by the Trustee encompass an open-ended, boundless universe of discovery" as it is "a request to continue any and all discovery that may arise" and "necessary" seeking testimony from defendants and non-parties alike).

## III.    CONCLUSION

For the reasons stated in the Motion and herein, Plaintiffs would be unduly prejudiced if the requested particularized discovery is not granted. Granting such request supports the intent of the PSLRA and the securities laws. Plaintiffs' respectfully request that the Court grant their Motion if the Court finds that the Securities Act claims have not been adequately alleged.

Dated:   October 17, 2025                    Respectfully submitted,

                                            **LEVI & KORSINSKY, LLP**

                                            */ s / Nicholas Porritt*
                                            Nicholas I. Porritt
                                            Alexander A. Krot III (*attorney admission application forthcoming*).
                                            1101 Vermont Ave, NW Suite 800
                                            Washington, DC 20005

15

Tel: (202)-524-4290
Fax: (212) 363-7171
Email: nporritt@zlk.com
Email: akrot@zlk.com

*Counsel for Lead Plaintiff Louis Leveque,*
*Plaintiff Iqbal Al Hamid, and Lead*
*Counsel for the Class*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025, I electronically filed the foregoing by using the

CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.


*/s/ Nicholas  Porritt*
Nicholas I. Porritt