# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | ) | |
| DANNY WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:24-cv-02900-DKC |
| | ) | |
| iLEARNING ENGINES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT THOMAS OLIVIER'S REPLY IN SUPPORT OF MOTION TO DISMISS

Jorge L. Piedra (*Pro Hac Vice*)
Rasheed K. Nader (*Pro Hac Vice*)
Alexa G. Chinchilla (*Pro Hac Vice*)
KOZYAK TROPIN THROCKMORTON
2525 Ponce de Leon Blvd., Floor 9
Coral Gables, Florida 33134
(305) 372-1800 (phone)
jpiedra@kttlaw.com
rnader@kttlaw.com
achinchilla@kttlaw.com

*Counsel for Defendant Thomas Olivier*

Philip A. Selden (Bar No. 28596)
Alicia L. Shelton (Bar No. 11538)
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, Maryland 21231
(410) 528-2987 (phone)
(410) 528-9407
pselden@coleschotz.com
ashelton@coleschotz.com

*Counsel for Defendant Thomas Olivier*

I.    **<u>Plaintiffs Have Not Plausibly Alleged That Their Shares Are "Traceable" to the Registration Statements.</u>**

Plaintiffs argue that they need not offer affirmative proof at the pleading stage that their shares are traceable to the allegedly defective registration statement. (*See* Opp.[1] at 9). Instead of alleging such, Plaintiffs maintain that they only need to plausibly allege that the shares are traceable to the Form S-1 and Form S-8, the "Offering Documents." (*See* Opp. at 2). Plaintiffs miss the mark. Even though plausibility, not proof, is the standard at this stage, Plaintiffs' conclusory allegations of traceability are not sufficient to plausibly allege that their shares are traceable to the registration statements.

This Court has explicitly held that a plaintiff seeking to establish Section 11 liability must either (1) "prove that the shares at issue were purchased directly in the secondary offering" or, (2) "*if the shares were purchased in the aftermarket*, prove that the chain-of-title for the shares can be traced back to the secondary offering, starting with the plaintiff's purchase and ending with someone who purchased directly in the secondary offering." *Fanucchi v. Enviva Inc.*, No. DKC 22-2844, 2024 WL 3302564, at *18 (D. Md. July 3, 2024) (emphasis added). The traceability of purchased shares to the offering documents, the Court continued, must be rendered plausible by "accompanying factual enhancement" in the complaint's allegations. *Id*. at *18. Plaintiffs' allegations are devoid of the "factual enhancement" required to make traceability plausible for purposes of Section 11 liability.

*Fanucchi* is instructive here. In *Fanucchi*, Enviva, a "sustainability-focused biomass energy company," issued 4,945,000 shares of Enviva common stock at $70.00 per share. *Id*. at *1-2. Following a short-seller's report published by investment firm Blue Orca, asserting that Enviva

_____

[1] Plaintiffs' Memorandum of Law in Opposition to Independent Defendants' Motions to Dismiss the Amended Class Action Complaint [ECF No. 90] ("Opposition" or "Opp.").

had engaged in "greenwashing," Enviva's stock price fell $7.74 per share. *Id*. The value of Enviva's stock fell even further as a result of a subsequent whistleblower article, which included testimony from a former Enviva employee concerning Enviva's false representations regarding its environmental impact. *Id*. The plaintiff in that case alleged that certain Enviva officers were strictly liable under Section 11 and Section 15 as signatories of the registration statements for material misrepresentations and omissions contained therein. *Id*. at *3. In granting the defendants' motion to dismiss, this Court held that the plaintiff lacked standing to bring a Section 11 claim because the facts alleged did not plausibly suggest that the plaintiff's shares originated from the offering. *Id*. at *19.

Faced with the Court's clear determination in *Fanucchi*, Plaintiffs' Opposition attempts to distinguish *Fanucchi* by arguing that Plaintiffs have alleged more than the *Fanucchi* plaintiff, such as the amount of shares registered in the registration statement and the proportion of registered shares available in the market prior to the secondary offering. (*See* Opp. at 15-17). But taken as true for purposes of a motion to dismiss, Plaintiffs' allegations still fail to sufficiently allege facts for traceability. As in *Fanucchi*, Plaintiffs attempt to substantiate their allegations concerning their purchases of shares "pursuant and/or traceable" to the Offering Documents with certifications from the Lead Plaintiffs with the dates, number of shares, and prices of stock purchases. (*See* Compl. ¶¶ 29-30, Exhibit A; DE 3-3). Plaintiffs' allegations here, like *Fanucchi*, do not "plausibly suggest that the shares Plaintiffs acquired must have originated" from the Offering Documents. *Fanucchi*, 2024 WL 3302564, at *18.

Plaintiffs also cannot distinguish their Complaint from that in *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183 (9th Cir. 2025) ("*Pirani II*"),[2] where the Ninth Circuit rejected the plaintiff's "statistical tracing" theory, which purportedly connected his shares to the defendant's registration statement. *Id*. at 1189-90. Specifically, in *Pirani II*, the plaintiff argued that he could "plausibly *allege* that he purchased at least *some* registered shares" and show traceability by "relying on the statistical inference that given the number of shares he purchased and the fraction of shares on the exchange that were registered (about 42 percent), the likelihood that none of the 30,000 shares was registered is infinitesimally small." *Id*. at 1190 (internal citations omitted). The court found this theory to be "both factually and legally flawed," and noted that the theory of statistical tracing is "contrary to [9th Circuit] precedent." *Id*.

Plaintiffs contend that they do not allege statistical tracing, (Opp. at 18), but their Complaint says otherwise. Plaintiffs allege that "[g]iven the substantial increase in the volume of shares being traded on June 21, 2024 and after August 9, 2025 . . . there is a **<u>high probability</u>** that the shares Plaintiffs purchased after these dates were traceable to the Offering Documents." (*See* Compl. ¶¶ 422, 424) (emphasis added). Plaintiffs' allegations track the statistical theory espoused by the plaintiff in *Pirani II*, which the Ninth Circuit squarely rejected. *See Pirani II*, 127 F.4th at 1190.

Plaintiffs further contend that "Defendants [have] concede[d] that Plaintiffs can establish their standing by tracing the chain-of-title of the shares they purchased to the Offering Documents." (*See* Opp. at 10). Not so. Olivier simply acknowledges the two ways in which a plaintiff can establish Section 11 standing: by (1) alleging a direct purchase in the offering covered

---

[2] *Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 951 (9th Cir. 2021) ("*Pirani I*") was reversed and remanded back to the Ninth Circuit by the Supreme Court in *Slack Techs., LLC v. Pirani,* 598 U.S. 759 (2023).

by the registration statement, or (2) affirmatively tracing the chain of title of the securities back to that offering. Def. Olivier's Mot. to Dismiss [ECF No. 82] ("Mot.") at 10 (citing *Fanucchi*, 2024 WL 3302564, at *18).[3] In his Motion to Dismiss, Olivier explains how Plaintiffs fail to meet either prong. First, though Plaintiffs allege that they purchased iLearningEngines common stock "pursuant and/or traceable" to the Offering Documents, they concede that they purchased shares "on the open market," which undermines any allegation of a direct purchase in the offering covered by Form S-1 or S-8. (*See* Compl. at ¶¶ 29-30; 423-424). Second, Plaintiffs' speculative allegations concerning secondary market purchases do not constitute affirmative tracing of their chain of title back to the registration statement. (*See id.*); (Mot. at 10-11). For example, Plaintiffs assert that Plaintiff Al Hamid and Plaintiff Leveque purchased shares when the shareholders who registered shares through the Offering Documents were actively selling their shares (*See* Opp. at 14). But, as Olivier points out in his Motion, that was not the case: Leveque purchased 5,000 shares on July 25, 2024—one month after the S-8 issued. (*See id.* ¶ 29; DE 3-3, at 3); (Mot. at 10-11). Al Hamid purchased a total of 4,500 shares between August 20 and September 18, 2024—weeks to months after the S-1 and S-8 issued—and sold 2,500 of them within the same time frame. (*See* Compl., Ex. A); (Mot. at 10-11).

| Date | Event | Significance |
|---|---|---|
| **June 21, 2024** | **Form S-8 Effective** | Registered ~16M shares for employee/director plans. |
| **July 25, 2024** | **Leveque purchases 5,000 shares** | Open market. Before S-1. Over a month after S-8. |
| **August 9, 2024** | **Form S-1 Declared Effective** | Registered ~131M shares for resale |
| **August 20, 2024** | **Al Hamid purchases 500 shares** | Open market. Months after S-8. Weeks after S-1. |

---

[3] Plaintiffs also attempt to distinguish *Ciarciello v. Bioventus, Inc.*, 1:23-CV-32, 2023 WL 7300081 (M.D. N.C. Nov. 6, 2023), arguing that the plaintiff in *Ciarciello* "made only a bare bone assertion of traceability." (*See* Opp. at 17). For the reasons discussed as to *Fanucchi*, Plaintiffs' allegations, while not necessarily "bare bone," still do not render the traceability conclusion plausible.

| August 23, 2024 | Al Hamid purchases 500 shares | Same as above. |
|---|---|---|
| August 27, 2024 | Al Hamid purchases 1,000 shares | Same as above. |
| August 30, 2024 | Al Hamid purchases 1,000; sells 1,000 shares | Same as above. Round-trip sale. |
| September 16, 2024 | Al Hamid purchases 1,500 shares | Open market. Months after S-8. Over a month after S-1. |
| September 18, 2024 | Al Hamid sells 1,500 shares | Sold majority of holdings. |

Accordingly, as in *Fanucchi*, Plaintiffs' allegations do not plausibly show the traceability of the shares to the Offering Documents.

As to Section 15 of the Securities Act, Plaintiffs merely allege that because they have adequately alleged an underlying violation of Section 11, Plaintiffs state a claim under Section 15. But, as Olivier states in his Motion, Plaintiff did not allege an underlying violation of Section 11, which forecloses relief under Section 15. (*See* Mot. at 13).

## II.   <u>Plaintiffs Fail to Establish That Olivier Is a Control Person Under Section 15.</u>

Plaintiffs argue they must do no more than "merely" allege that Defendants had the power to control or influence a policy to establish Section 15 control person liability. (*See* Opp. at 22). Notably, Plaintiffs omit Olivier from the list of persons whom they claim had the power. (*See id*.) ("Thus, the Complaint must merely allege that Defendants Barger, Davis, Melham, and Moe had "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person . . ."). Plaintiffs only mention Olivier in a footnote, arguing that one particular allegation from their Amended Complaint "is applicable to Defendants Barger, Davis, Me[h]lman, Moe, and Olivier." (*See* Opp. at 23n.15.) In fact, Plaintiffs merely restate the control person-related allegations made in their Amended Complaint as to the Individual Defendants, which includes Mr. Olivier, but is not specific to him.

Regardless, this Court's holding in *In re Constellation Energy Grp., Inc. Sec. Litig.*, 738 F. Supp. 2d 614 (D. Md. 2010), is directly on point. There, the lead plaintiff purchased common stock of Constellation, a publicly traded energy company. *Id.* at 620. Weeks after the offering, Constellation disclosed that it had miscalculated its collateral figures stated in the offering and had a significant business relationship with a company that had just filed for Chapter 11 bankruptcy protection—both disclosures that had caused Constellation's stock price to fall. *Id.* at 621-22. The plaintiffs argued that defendants (Constellation's directors, officers, and underwriters) had failed to make these disclosures to plaintiffs during the class period, along with other allegedly misleading statements about Constellation's future earnings, business outlook, risk management, and internal controls, which gave rise to their Section 11 and Section 15 claims. *Id.* at 623.

This Court dismissed the plaintiffs' Section 15 claims because "[a]n individual's position alone does not establish control person liability," and because the plaintiffs had not alleged that the directors were directly involved in the day-to-day operations of the company. *Id.* at 639-40. The Court noted that it could not "infer simply from the director defendants' positions on Constellation's board of directors that they [had] exercised the requisite control over the specific corporate operation that resulted in the miscalculated downgrade collateral obligations to be liable under § 15." *Id.* at 640; *see also In re Creditrust Corp. Sec. Litig.*, 2002 WL 35691716, at *19 (D. Md. Aug. 1, 2002) (dismissing Section 15 claims against outside directors where claims were based only on title and conclusory allegations of control).[4]

---

[4] Plaintiffs cite *In re Sourcefire, Inc. Sec. Litig.,* No. CIV. JFM 07-1210, 2008 WL 1827484 (D. Md. Apr. 23, 2008), for the proposition that their allegations of control are sufficient to plead control liability. But unlike the defendants in *Sourcefire*, Olivier did not have, and is not alleged to have had, "a series of direct and/or direct indirect business and/or personal relationships with other directors and/or officers and/or major shareholders" of iLearningEngines. *Id.* at *7.

As in *Constellation Energy*, Plaintiffs' claims fail because they have brought Section 11 and Section 15 claims against Olivier based on allegedly misleading statements or omissions without plausibly alleging that Olivier is a control person liable under Section 15. As established in Olivier's Motion, Plaintiffs' general allegations of control by the Individual Defendants do not suffice to render Olivier a control person because they include no facts specific to Olivier: neither Olivier's position as an independent director of iLearningEngines nor his signing of the Forms S-1 and S-8 renders him a control person, and Plaintiffs do not allege Olivier's direct involvement in iLearningEngines' day-to-day operations. *See Constellation Energy Grp.*, 738 F. Supp. 2d at 638-40. Nor do Plaintiffs allege that Olivier influenced or controlled any specific Defendant alleged to have violated Section 11. (*See id.*); (Mot. at 15).

Plaintiffs fail to establish that Olivier is a control person under Section 15.

## CONCLUSION

For the reasons set forth herein, Defendant Thomas Olivier respectfully requests that the Court grant his Motion and issue an Order dismissing with prejudice Counts I and II against him in the Amended Complaint.

Respectfully submitted,

Dated: October 22, 2025          By:    /s/ *Jorge L. Piedra*
Jorge L. Piedra (*Pro Hac Vice*)
Rasheed K. Nader (*Pro Hac Vice*)
Alexa G. Chinchilla (*Pro Hac Vice*)
KOZYAK TROPIN THROCKMORTON
2525 Ponce de Leon Blvd., Floor 9
Coral Gables, Florida 33134
(305) 372-1800 (phone)
jpiedra@kttlaw.com
rnader@kttlaw.com
achinchilla@kttlaw.com

*Counsel for Defendant Thomas Olivier*

8

/s/ _____
Philip A. Selden (Bar No. 28596)
Alicia L. Shelton (Bar No. 11538)
Cole Schotz P.C.
1201 Wills Street, Suite 320
Baltimore, Maryland 21231
(410) 528-2987 (phone)
(410) 528-9407
pselden@coleschotz.com
ashelton@coleschotz.com

*Counsel for Defendant Thomas Olivier*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 22nd day of October 2025, a copy of the foregoing was served on counsel of record via the Court's CM/ECF system.

/s/ _____
Alicia L. Shelton

9