**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| DANNY WALKER, *Individually and on Behalf of All Others Similarly Situated*,<br><br>                                   Plaintiff,<br><br>          v.<br><br>ILEARNINGENGINES, INC., *et al.*,<br><br>                                   Defendants. | Civil Action No. 8:24-cv-02900-DKC<br><br>Hon. Deborah K. Chasanow |

**REPLY IN SUPPORT OF DEFENDANT MARCUM LLP'S
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT
<u>FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS</u>**

# TABLE OF CONTENTS

I.  THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD SECTION 11 LIABILITY AS TO MARCUM. ............................................................ 2

    A.  Plaintiffs Admit Their Claim Against Marcum Fails Under *Omnicare*. ...................... 2

    B.  Plaintiffs' Embedded Facts Alternative is a Non-Starter. ............................................ 3

    C.  Plaintiffs' Strict Liability Theory Under Section 11 Is Novel, and, Like The Embedded Facts Theory, Wrong. .................................................................................. 5

    D.  Plaintiffs' Attacks on the Majority Interpretation Are Unfounded. ............................. 8

II.  THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD TRACEABILITY. .................................................................................................................. 11

    A.  *Slack* Demands That Actual, Not Hypothetical, Traceability be Pled. ....................... 11

    B.  Plaintiffs' "Statistical Probability" Approach is Legally Deficient. ............................ 12

    C.  Speculation About Discovery Cannot Cure Plaintiffs' Pleading Defect. .................... 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Barbour v. Garland,*
105 F.4th 579 (4th Cir. 2024) ................................................................................15

*Barnes v. Osofsky,*
373 F.2d 269 (2d Cir. 1967) ..................................................................................12

*Cozzarelli v. Inspire Pharms. Inc.,*
549 F.3d 618 (4th Cir. 2008) ................................................................................15

*Cupat v. Palantir Techs., Inc.,*
2025 WL 1141534 (D. Colo. Apr. 4, 2025) ..........................................................14

*Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.,*
454 F.3d 1168 (10th Cir. 2006) ............................................................................10

*Hunt v. Bloom Energy Corp.,*
2021 WL 4461171 (N.D. Cal. Sept. 29, 2021) ...............................................2, 4, 6

*IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.,*
849 F.3d 325 (6th Cir. 2017) ................................................................................13

*In re Ariad Pharms., Inc. Sec. Litig.,*
842 F.3d 744 (1st Cir. 2016) ................................................................................12

*In re Century Aluminum Co. Sec. Litig.,*
729 F.3d 1104 (9th Cir. 2013) ....................................................................11, 12, 13

*In re Coinbase Glob., Inc. Sec. Litig.,*
2024 WL 4053009 (D.N.J. Sept. 5, 2024) .............................................................14

*In re Everyware Glob., Inc. Sec. Litig.,*
175 F. Supp. 3d 837 (S.D. Ohio 2016) ..................................................................13

*In re Honest Co. Sec. Litig.,*
2023 WL 3190506 (C.D. Cal. May 1, 2023) ..........................................................12

*In re Ikon Off. Sols., Inc.,*
277 F.3d 658 (3d Cir. 2002) ..................................................................................10

*In re Lehman Bros. Sec. & ERISA Litig.*,
  131 F. Supp. 3d 241 (S.D.N.Y. 2015)..............................................................6, 7, 8

*In re OSG Sec. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013)......................................................................6

*In re Petrobras Sec. Litig.*,
  2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016)......................................................4, 5

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006)...................................................................................15

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
  33 F. Supp. 3d 1107 (N.D. Cal. 2014) ..................................................................13

*In re Velti PLC Sec. Litig.*,
  2015 WL 5736589 (N.D. Cal. Oct. 1, 2015)............................................................6

*In re Worlds of Wonder Securities Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ...................................................................................7

*Johnson v. CBD Energy Ltd.*,
  2016 WL 3654657 (S.D. Tex. July 6, 2016)................................................. passim

*Krim v. pcOrder.com, Inc.*,
  402 F.3d 489 (5th Cir. 2005) ...............................................................11, 12, 13, 14

*Lee v. Ernst & Young, LLP*,
  294 F.3d 969 (8th Cir. 2002) ...................................................................................7

*Levy v. Luo*,
  2025 WL 437022 (D. Del. Feb. 7, 2025) .................................................................4

*McCaffery v. Cnty.*,
  2024 WL 4045450 (E.D. Va. Sept. 4, 2024)..........................................................14

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
  575 U.S. 175 (2015).................................................................................... passim

*Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*,
  --- F. Supp. 3d ---, 2025 WL 2613530 (S.D.N.Y. Sept. 10, 2025) .................6, 7, 10

*Pirani v. Slack Techs., Inc.*,
  127 F.4th 1183 (9th Cir. 2025) ..............................................................................12

*Querub v. Hong Kong,*
   649 F. App'x 55 (2d Cir. 2016) ...................................................................... passim

*S.E.C. v. Seaboard Corp.,*
   677 F.2d 1301 (9th Cir. 1982) ...............................................................................7

*Slack Technologies, LLC v. Pirani,*
   598 U.S. 759 (2023) ..............................................................................1, 11, 14

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.,*
   243 F. Supp. 3d 1109 (E.D. Cal. 2017) .........................................................5, 6, 7

*United States v. Weiner,*
   578 F.2d 757 (9th Cir. 1978) ................................................................................10

*Webster v. Fall,*
   266 U.S. 507 (1925) ..............................................................................................8

## STATUTES

15 U.S.C. § 77k(a) ........................................................................................... passim

## REGULATIONS

17 C.F.R. § 210.1-02(f) ...................................................................................7, 9

## OTHER AUTHORITIES

Public Company Accounting Oversight Board ("PCAOB"), AS 1000.14 ...................................10

Merriam-Webster's Online Dictionary, Respecting ........................................................9

Plaintiffs' opposition memorandum confirms that their Section 11 claim against Marcum is fatally deficient in two independent respects, each of which warrants dismissal with prejudice of Count One of the Amended Complaint as to Marcum.[1]

First, Plaintiffs cannot escape the import of *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015). Under the framework articulated by the Supreme Court, Section 11 liability for an opinion statement arises only where a plaintiff plausibly alleges either subjective falsity or that the opinion omitted material facts going to the basis for the opinion. Here, Plaintiffs concede that they do not allege either. Instead, Plaintiffs attempt to circumvent *Omnicare* by invoking a narrow "embedded facts" exception and by advancing a novel theory of strict liability for auditors for the allegedly fraudulent behavior of the *preparers* of such financial records. Neither works. The Marcum Opinion does not embed any distinct, verifiable facts in the manner contemplated by *Omnicare*, and Plaintiffs' strict liability theory finds no support in the text of Section 11, SEC regulations, any decision in this Circuit, or any appellate decision in any circuit. Indeed, the only circuit court to address this precise issue— the Second Circuit in *Querub v. Hong Kong*, 649 F. App'x 55 (2d Cir. 2016)—squarely rejected Plaintiffs' position. District courts across the country have followed suit, dismissing Section 11 claims against auditors where, as here, the complaint fails to meet the *Omnicare* pleading standard.

Second, Plaintiffs' claim against Marcum independently fails because the Amended Complaint does not plausibly allege that Plaintiffs' shares are traceable to the supposedly defective Registration Statements as required by the Supreme Court in *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 770 (2023). Plaintiffs' reliance on its "statistical probability" theory and the promise

---

[1] Capitalized terms retain the meaning given them in Marcum's Memorandum in Support of its Motion to Dismiss (the "MTD"), Dkt. 80-1.

1

that future discovery will fill the traceability gap cannot substitute for well pleaded facts. Plaintiffs' own allegations confirm that they purchased shares in the open market, which both renders tracing virtually impossible and leaves them without well pleaded facts on which to stand. For this reason, too, the Court should dismiss with prejudice Count One of the Amended Complaint as to Marcum.

I.    **THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD SECTION 11 LIABILITY AS TO MARCUM.**

The Supreme Court's decision in *Omnicare* sets forth the standard for pleading Section 11 liability based on statements of opinion, including those made by auditors. *See* 575 U.S. at 182-90. Under *Omnicare*, a plaintiff in a Section 11 case involving an opinion must plausibly allege either (1) that the speaker did not actually hold the stated belief at the time the opinion was expressed (subjective falsity), or (2) that the opinion omitted material facts about the basis for the opinion in a manner that would mislead a reasonable investor, when the statement is read in context. *See id. See also* MTD at 12–16.

A.    ***Plaintiffs Admit Their Claim Against Marcum Fails Under* Omnicare.**

Several courts to have squarely addressed the issue—including the only federal appellate court to do so—have held that auditor reports, such as the Marcum Opinion, are classic statements of opinion governed by *Omnicare*. *See, e.g., Querub*, 649 F. App'x at 58 ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims."); *Johnson v. CBD Energy Ltd.*, 2016 WL 3654657, at *10 (S.D. Tex. July 6, 2016) (noting *Omnicare* "makes no mention of an 'auditor certification' exception"); *Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *14 (N.D. Cal. Sept. 29, 2021) ("The Court sees no meaningful distinction between [the opinion in *Omnicare*] and the opinions [an auditor] offers about a company's financial statements."). *Omnicare* governs.

As they now tacitly concede, Plaintiffs plead neither prong of the well-worn *Omnicare* test.[2] This failure is fatal. Federal courts applying *Omnicare* have consistently dismissed Section 11 claims against auditors where, as here, the complaint disclaims fraud and pleads no facts suggesting the auditor disbelieved its opinion when rendered or omitted particular, material facts about the basis for the opinion. *See, e.g.*, *Querub*, 649 F. App'x at 58; *Johnson*, 2016 WL 3654657, at *11. The Court's inquiry can end here and the Section 11 claim against Marcum be dismissed with prejudice.

**B.    *Plaintiffs' Embedded Facts Alternative is a Non-Starter.***

Recognizing the weakness of their argument if *Omnicare* does apply, Plaintiffs now try to recast iLearningEngines' financial statements as "embedded facts" within the Marcum Opinion. *See* Opp. at 20. This attempt is at odds with *Omnicare's* narrow "embedded facts" exception and the overwhelming weight of post-*Omnicare* jurisprudence. The *Omnicare* Court recognized that an opinion statement may be actionable under Section 11 if it "contains embedded statements of fact" that are themselves false. 575 U.S. at 185. *Omnicare's* illustrative example—"I believe our TVs have the highest resolution available because we use a patented technology to which our competitors do not have access"—demonstrates that "embedded facts" liability attaches only where the opinion embeds a distinct, verifiable fact (like the use of a patented technology) as the *basis* for the opinion. *Id.*

But here, Plaintiffs do not—and cannot—identify in the Marcum Opinion any such embedded fact. The Marcum Opinion does not purport to certify the truth of any particular line item or "fact" contained in iLearningEngines' financial statements. *See* Am. Compl. ¶ 246.

---

[2] *See* Dkt. 91 ("Opp.") at 3 (Plaintiffs "do not base liability under § 11(a)(4) on any misrepresentation or omission contained within Marcum's opinion itself"). As further explained in Marcum's Motion to Dismiss, Plaintiffs do not allege either subjective falsity or any actionable omissions by Marcum. *See* MTD at 12–16.

Instead, as is standard, the Marcum Opinion expressly distinguishes between iLearningEngines' responsibility for preparing the financial statements and Marcum's responsibility to express an opinion based on its audit.  *See id.* ("These financial statements are the responsibility of the Company's management.  Our responsibility is to express an opinion…").  Nor would the embedded facts theory make sense as applied to an audit opinion.  An audit opinion with embedded financial statements would be both circular and redundant: "our opinion is that the financial statements are accurate because they are accurate."  The numbers in iLearningEngines' financial statements, on which Marcum expressed its opinion, do not appear in the Marcum Opinion and are not "embedded" in a subordinate clause in the Marcum Opinion in the way the Court in *Omnicare* set out.  Plaintiffs' failure to quote any specific language from the Marcum Opinion that supposedly embeds a verifiable fact is confirmation of this reality.

Plaintiffs' hopes of prevailing on this narrow exception rest on a single out-of-circuit district court case: *In re Petrobras Sec. Litig.*, 2016 WL 1533553 (S.D.N.Y. Feb. 19, 2016).  The *Petrobras* court fundamentally misunderstood the nature of an audit opinion, which is not based on "the content of the financial statements," *id.* at *4, but instead on the audit itself.  The audit opinion recognizes the *audit*—not the financial statements—as the "reasonable basis" on which the opinion sits, Am. Compl. ¶ 246, which is why it is unsurprising that *Petrobras*' reasoning has been repeatedly (and roundly) rejected by courts.  *See, e.g., Johnson*, 2016 WL 3654657, at *12 (noting *Petrobras* "misreads the 'embedded statement of fact' concept discussed in *Omnicare*" and that the "[t]he numbers in CBD's financial statements … do not appear in the audit report and are not 'embedded' in a subordinate clause in any of PwC Australia's sentences in the way the *Omnicare* Court set out."); *see also Hunt*, 2021 WL 4461171, at *15; *Levy v. Luo*, 2025 WL 437022, at *10 (D. Del. Feb. 7, 2025) (both rejecting *Petrobras*).  Indeed, even the case Plaintiffs

cite as their preeminent authority on *Omnicare*—*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*—rejected the notion that financial statements are embedded in audit opinions. *See* 243 F. Supp. 3d 1109, 1119 (E.D. Cal. 2017). And the *Marrone* court was unequivocal: "This Court … disagrees [with *Petrobras*] that financial statements are embedded in audit opinions under *Omnicare*." *Id.* Like the auditor in *Marrone*, Marcum's "audit opinion provide[d] an opinion on the accuracy of the financial statements; it did not use the facts of the financial statements to opine on something else." *Id.*

**C.    *Plaintiffs' Strict Liability Theory Under Section 11 Is Novel, and, Like The Embedded Facts Theory, Wrong.***

Unable to satisfy the pleading standards articulated by *Omnicare*, Plaintiffs attempt to impose strict liability on Marcum for alleged misstatements in iLearningEngines' financial statements by virtue of Marcum's role as iLearningEngines' auditor and certifier. According to Plaintiffs, the "legal effect of [Marcum's] certification" is that Marcum is liable for the falsity of the company's financial statements. Opp. at 12. This attempt to skirt *Omnicare* is an outlier and fundamentally misconstrues both Section 11 and the caselaw.

Plaintiffs' theory of auditor liability has been rejected by the only appellate court to consider it and by the overwhelming majority of district courts. The Second Circuit in *Querub* addressed the very question presented to this Court. Indeed, the investors in *Querub* made the exact argument Plaintiffs advance here: that auditors are liable for "false statements contained in the financial statements [they] certified." Brief for Plaintiffs-Appellants at 46, No. 15-2100 (2d Cir. 2016). The Second Circuit rejected that argument and analyzed the Section 11 claim exclusively under *Omnicare*'s framework. *Querub*, 649 F. App'x at 58 ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion subject to the *Omnicare* standard for Section 11 claims"). The Second Circuit then affirmed the district

court's dismissal of the Section 11 claim because there was "no evidence that [the auditor] did not believe its 'clean audit opinions' for [the] financial statements.  Nor is there evidence that [the auditor] omitted material facts about the basis for its audit reports."  *Id.*  The Second Circuit, as the only appellate court in the country to consider Plaintiffs' theory, rejected it.[3]

The weight of authority agrees, with courts holding over and over that Section 11 claims against auditors must be analyzed under *Omnicare's* opinion liability framework and not under a strict liability regime.  *Hunt*, 2021 WL 4461171, at *15 ("the *Omnicare* framework applies to PwC's statements in its audit report and the 2017 financial statements."); *Johnson*, 2016 WL 3654657, at *11 (same);[4] *In re Velti PLC Sec. Litig.*, 2015 WL 5736589, at *14–24 (N.D. Cal. Oct. 1, 2015) (same); *Orient Plus Int'l Ltd. v. Baosheng Media Grp. Holdings Ltd.*, --- F. Supp. 3d ---, 2025 WL 2613530, at *28–29 (S.D.N.Y. Sept. 10, 2025) (same).  This Court should follow suit and reject Plaintiffs' strict liability theory.

Plaintiffs are left with citation to only one post-*Omnicare* district court decision in support of their theory.  *See Marrone*, 243 F. Supp. 3d at 1118 n.6 (acknowledging *Querub*, 649 F. App'x 55 and *Johnson*, 2016 WL 3654657 as contrary authority).  The more recent, *Omnicare*-faithful decisions have rejected *Marrone*.  *See Hunt*, 2021 WL 4461171, at *14 (rejecting *Marrone*'s "auditor exception" to *Omnicare* because "[t]he Supreme Court did not recognize any 'auditor' exception to its holding [in *Omnicare*], and the Court finds no basis for creating such an

---

[3] While the Second Circuit's decision in *Querub* is not controlling, it stands as the only appellate decision to address Plaintiffs' theory, and at the very least calls into question earlier authorities Plaintiffs cite in that circuit.  *See* Opp. at 4, 12, 13, and 19 (citing *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387 (S.D.N.Y. 2013) and *In re Lehman Bros. Sec. & ERISA Litig.*, 131 F. Supp. 3d 241 (S.D.N.Y. 2015)).  In any event, none of the cases cited by Plaintiffs on this question are binding law on this Court—save *Omnicare* itself.

[4] The *Johnson* court treated the Second Circuit's decision in *Querub* as superseding the cases on which Plaintiffs rely (such as *OSG*) and observed that, since *Omnicare*, district courts have applied *Querub* to dismiss claims against auditors in the absence of allegations that the auditor did not sincerely hold its opinion.  2016 WL 3654657, at *10-11.

exception."); *cf. Orient Plus*, 2025 WL 2613530 at *27–28 (dismissing Section 11 claim against auditor and rejecting argument that auditors may be liable for financial statements because audit opinion did not embed those statements as facts). And for good reason: *Marrone* demonstrates a fundamental misunderstanding of audit reports, saying that the auditor was "couching" them "as an opinion." *Marrone*, 243 F. Supp. 3d at 1116. But audit reports are, by definition, *opinions*. *See Querub*, 649 F. App'x at 58 ("Audit reports, labeled 'opinions' and involving considerable subjective judgment, are statements of opinion."); 17 C.F.R. § 210.1-02(f) ("The term certified, when used in regard to financial statements, means examined and reported upon with an opinion expressed by an independent public or certified public accountant"); Opp. at 7 (quoting *id.*, classifying Marcum's audit report as an opinion). And on the ultimate question, even *Marrone* punted, saying that it did "not need to determine exactly the nature of audit opinions in relation to the kinds of opinions addressed in *Omnicare*." *Marrone*, 243 F. Supp. 3d at 1118.

Plaintiffs' other cited authorities are equally misplaced. None of those cases addressed the strict liability theory Plaintiffs now advance. Instead, they involved questions about traceability,[5] loss causation,[6] statute of limitations,[7] and whether an audit opinion constitutes a certification for the purposes of Section 11,[8] questions not at issue here. Imposition of strict liability on auditors

---

[5] Plaintiffs curiously cite *Lee v. Ernst & Young LLP*, 294 F.3d 969, 973–78 (8th Cir. 2002), a case concerning only traceability, for the proposition that auditors are "subject to [a] § 11 claim based on misrepresentations contained in audited financial statements." Opp. at 13 (citing *Lee*, 294 F.3d at 978). Plaintiffs' proposed theory is nowhere to be found in the Eighth Circuit's opinion, which—in any event—came down before *Omnicare*.

[6] *In re Worlds of Wonder Securities Litig.*, another pre-*Omnicare* case, concerned an interpretation of the loss causation element of Section 11. The Ninth Circuit there did not even consider whether or on what bases an auditor can be liable for errors in a client's financial statement. 35 F.3d 1407, 1421–23 (9th Cir. 1994).

[7] The sole Section 11 issue in *SEC v. Seaboard* (yet another pre-*Omnicare* case) was whether the statute of limitations barred the claim. 677 F.2d 1301, 1308 (9th Cir. 1982). Plaintiffs' citation to a passing reference—in the *background* section—to the auditor as having "certified the financial statements" does nothing to support the proposition that auditors are somehow broadly liable for alleged misstatements in others' financials. Opp. at 12 (citing *id.* at 1305).

[8] Though *In re Lehman Brothers Sec. and ERISA Litig.*, 131 F. Supp. 3d 241, 259–60 (S.D.N.Y. 2015) was

for the content of financial statements prepared by others is, charitably speaking, an outlier approach, and it should be rejected by this Court.

### D. *Plaintiffs' Attacks on the Majority Interpretation Are Unfounded.*

Plaintiffs' criticisms of Marcum's reliance on the majority position are meritless. Marcum's interpretation faithfully applies the falsity requirement of Section 11 as interpreted by *Omnicare*, preserves the statutory distinction between preparers and certifiers, and leaves intact the due diligence defense for both factual and opinion statements.  Plaintiffs' real quarrel is with the Supreme Court's decision in *Omnicare*, not with Marcum's—or, for that matter, the weight of the authorities'—reading of the law.

*First*, Marcum does not seek to impose a scienter requirement on Section 11 liability. Marcum seeks to enforce the text's *falsity* requirement as it relates to statements of opinion. Section 11(a) requires a plaintiff to show an "untrue statement of a material *fact*."  15 U.S.C. § 77k(a) (emphasis added).  And as the Supreme Court explained in *Omnicare*, an opinion can be an untrue statement of fact *only* when there are specific allegations going to the speaker's subjective belief, embedding of facts within the opinion, or material omission(s) from the opinion that would render the statement capable of being false or misleading.  *See Omnicare*, 575 U.S. at 182–90.  Plaintiffs concede they do not "base liability under § 11(a)(4) on any misrepresentation or omission contained within Marcum's opinion itself."  Opp. at 3.

*Second*, Marcum's interpretation is faithful to Section 11(a)(4) as a whole.  Section 11 allows investors to sue *both* preparers and certifiers of financial statements but requires that any such suit be "with respect to" the statements prepared or certified.  "With respect to" merely

---

issued post-*Omnicare*, and though *Omnicare* is cited elsewhere in the opinion, the court did not consider—and indeed was not prompted to consider—the argument presented squarely to this Court.  *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

connotes a relationship. *See* Merriam-Webster's Online Dictionary, Respecting, https://www.merriam-webster.com/dictionary/respecting ("with respect to: concerning."). It requires that any lawsuit relate to the auditor's role in the securities registration process. But Plaintiffs take Section 11(a)(4)'s language one step further. They assume that Section 11's requirement that a suit must relate to the underlying financial statements provides a rule of liability: that a plaintiff need *only* show that a line item in a financial statement is wrong to make an auditor liable, regardless of whether the auditor issued a separate and distinct opinion about that statement.

But that interpretation would completely erase the distinction between preparers and certifiers. Under Plaintiffs' view, the content of an audit opinion is utterly irrelevant because a certification functions like a checkbox: so long as it exists, the auditor is liable. Their interpretation assumes, despite the textual distinction in the statute between preparers and certifiers, that there is always only one statement at issue—the financial statements. But SEC regulations say otherwise, categorizing a certification as its own distinct opinion. *See* 17 C.F.R. § 210.1-02(f) (emphasis added) ("The term certified … means examined and reported upon with an *opinion*"). Section 11(a)(4), as it relates to a certifying auditor, deals with *two* statements: the issuer's financial statement, and the auditor's opinion about those statements. Marcum's position gives effect to this distinction. A suit against a preparer is predicated on one statement. A suit against a certifier is predicated on two distinct statements. And because Plaintiffs' suit is in part predicated on the Marcum Opinion, *Omnicare* requires that Plaintiffs allege the Marcum Opinion is false. *See, e.g.*, *Johnson*, 2016 WL 3654657, at *12 (rejecting analogous Section 11 claim where "Plaintiffs do not allege that PwC Australia did not subjectively believe any of the opinions it provided in its report, and PwC Australia's opinions do not contain any embedded statements of fact that are untrue").

Plaintiffs' strained interpretation would transform auditors into guarantors of the accuracy of every fact in the financial statements they audit—a result that is not only unsupported by the statutory text, but also contrary to the established role of the independent auditor and the professional standards governing their work.  *See* MTD at 11.  *See also Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1174 (10th Cir. 2006) (Auditors do not, "by virtue of auditing a company's financial statements, somehow make, own or adopt the assertions contained therein.").  Auditors are required to exercise "due professional care" and to provide "reasonable assurance" that financial statements are free of material misstatement, not to guarantee accuracy.  PCAOB AS 1000.14.  This is neither what auditors do nor what they should be forced to do.  *See In re Ikon Off. Sols., Inc.*, 277 F.3d 658, 673 (3d Cir. 2002) (affirming dismissal of securities action; explaining that audits require "only due professional care" rather than flawlessness); *United States v. Weiner*, 578 F.2d 757, 786 (9th Cir. 1978) (quotation marks omitted) ("[T]he auditor is not responsible for fraud that has gone undetected despite his utilization of generally accepted auditing standards.").

*Third*, the due diligence defense in Section 11(b) has not been rendered null by *Omnicare*. The due diligence defense is a fact-intensive defense generally invoked after an unsuccessful motion to dismiss, *see, e.g.*, *Orient Plus*, 2025 WL 2613530, at *21 (collecting cases), while *Omnicare* imposes a pleading requirement interpreting the statutory language with reference to opinions, *see Omnicare*, 575 U.S. at 196 (discussing the sufficiency of allegations in the relevant complaint).  That a defendant, at the discovery and, if necessary, trial stage, can defend itself by demonstrating due diligence in no way excuses a plaintiff's failure to allege in the first instance that the statement of opinion "contained an untrue statement of a material fact or omitted to state a material fact," as required by Section 11.  *See* 15 U.S.C. § 77k(a)(4).  Plaintiffs fail to meet that

pleading requirement here.  Plaintiffs' strict liability theory should be rejected, and the Amended Complaint should be dismissed for failure to state a Section 11 claim as to Marcum.

## II.    THE AMENDED COMPLAINT DOES NOT ADEQUATELY PLEAD TRACEABILITY.

The Section 11 claim should be dismissed for another, independent reason: Plaintiffs have not plausibly alleged traceability of their shares to the allegedly defective iLearningEngines registration statements.  *Slack*, 598 U.S. at 770; *see* Opp. at 25 (recognizing that Section 11 plaintiffs must "plausibly allege that [p]laintiffs['] shares are traceable to [the allegedly misleading] offering documents").  That burden is exacting and cannot be met where, as here, Plaintiffs allege aftermarket purchases in a market with commingled shares issued at various times.  *See* Am. Compl.  ¶¶ 423–24.

### A.    Slack *Demands That Actual, Not Hypothetical, Traceability be Pled.*

The Supreme Court and, consequently, every circuit to consider the issue have concluded that Section 11 standing is strictly limited to plaintiffs who can plausibly allege at the pleading stage that their shares are directly traceable to the specific registration statement alleged to be defective.  *See Slack*, 598 U.S. at 770; *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 498 (5th Cir. 2005); *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013).  This requirement is straightforward for plaintiffs who purchased shares directly in the offering or at a time when only registered shares were available for purchase.  However, where, as here, Plaintiffs purchased shares in the aftermarket (*see* Am. Compl. ¶¶ 423–24)—after commingling with other shares has occurred—traceability becomes not only difficult, but, as courts have repeatedly recognized, "virtually impossible."  *See Krim*, 402 F.3d at 498; *Century Aluminum*, 729 F.3d at 1107.  The realities of modern securities markets, where shares are held in fungible bulk and traded through intermediaries, preclude any meaningful ability to trace the origin of specific shares.  As

11

the Ninth Circuit observed, "most trading is done through brokers who neither know nor care whether they are getting newly registered or old shares," and "many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position." *Century Aluminum*, 729 F.3d at 1107 (quoting *Barnes v. Osofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967)). Once shares are commingled, their origin is "effectively impossible to determine." *In re Honest Co. Sec. Litig.*, 2023 WL 3190506, at *4 (C.D. Cal. May 1, 2023). *See also* Dkt. 90 ("Indep. Dir. Opp.") at 10 (quoting *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1190 (9th Cir. 2025)) (acknowledging that Plaintiffs must "trace the chain of title for their shares back to the secondary offering").

### B.    *Plaintiffs' "Statistical Probability" Approach is Legally Deficient.*

Plaintiffs attempt to circumvent the traceability requirement by pointing to statistical probability[9]—arguing that, because a large portion of shares in the market were issued under the challenged registration statement, it is likely that their shares were as well. *E.g.* Opp. at 25. As explained in Marcum's opening brief—and as Plaintiffs cannot dispute—every court of appeals to have addressed this issue has deemed such probabilistic pleading insufficient as a matter of law. *See* MTD at 21–24; *see also Krim*, 402 F.3d at 496 ("accepting such 'statistical tracing' would impermissibly expand the statute's standing requirement"); *In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744, 755–56 (1st Cir. 2016); *Century Aluminum*, 729 F.3d at 1106–09 (rejecting arguments based on numbers of shares outstanding). Deeming the statistical tracing theory Plaintiffs promote as "good enough" would impermissibly expand Section 11's actual standing requirement and render the Supreme Court's traceability mandate meaningless.

---

[9] Though Plaintiffs now seek to relabel it, Plaintiffs are effectively pursuing a statistical probability argument. Specifically, Plaintiffs claim that because they do not intend to "prove their Section 11 standing through statistical principles," their *allegations* based on statistical claims are not claims of "statistical proof." Opp. at 27. In either event: Plaintiffs need to plausibly allege traceability. They do not. *See* MTD at 20.

Plaintiffs' efforts to distinguish *Krim* are unavailing. Plaintiffs argue against *Krim* and *Century Aluminum*, urging that their shares are statistically "more likely" to have been registered than those in *Krim* and *Century Aluminum*. Opp. at 26. But even if "there is a 99.83% chance" of traceability, it would be insufficient to plead standing, because "general statistics say nothing about the shares that a specific person *actually* owns and have no ability to separate those shares upon which standing can be based from those for which standing is improper." *Krim*, 402 F.3d at 497, 501. *Century Aluminum* expeditiously dispensed with Plaintiffs' same argument: "when a company has offered shares under more than one registration statement, aftermarket purchasers usually will not be able to trace their shares back to a particular offering. Thus, … plaintiffs had to allege *facts* from which we can reasonably infer that their situation is different." 729 F.3d at 1107–08 (emphasis added). These Plaintiffs, like those in *Krim* and *Century Aluminum*, have pled nothing to show that their particular shares are plausibly within the category of shares whose holders Congress has allowed access to Section 11 claims.

Plaintiffs rely on a handful of district court cases with unique factual allegations in asking the Court to bless their statistical probability pleading theory; their attempt should fail. In *In re EveryWare Glob., Inc. Sec. Litig.*, plaintiffs alleged that they had "purchased 15% of the shares traded on the first day of the Secondary Offering" and "that they paid a uniform price through their broker of just four cents above the asking price" in the offering. 175 F. Supp. 3d 837, 866 (S.D. Ohio 2016).[10] The same is true of *In re Ubiquiti Networks, Inc. Sec. Litig.*, where all of the company's shares were either released in the allegedly defective registration statement or subject to a lock-up period at the time of plaintiffs' purchases. 33 F. Supp. 3d 1107, 1118 (N.D. Cal.

---

[10] On appeal, the Sixth Circuit affirmed dismissal of the case and, "accordingly," did not address the question of standing. *IBEW Loc. No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325, 328 n.3 (6th Cir. 2017).

2014).  And *In re Coinbase Glob., Inc. Sec. Litig.*, where the court relied in part on allegations that one plaintiff had purchased shares "on the first day of the defendant company's secondary offering at prices near the opening price" provides Plaintiffs no cover.  2024 WL 4053009, at *19 (D.N.J. Sept. 5, 2024).  Plaintiffs here allege no analogous facts.  Indeed, the named Plaintiff who signed the certification needed to file this complaint affirmatively swore that he bought shares in a series of transactions which all took place well after the offering was issued and were conducted at various prices.  *See* Dkt. 41-1 at 2.  Left without any plausible facts to establish traceability, and having admitted that their shares were purchased in the aftermarket (Am. Compl. ¶¶ 423–24), Plaintiffs can do no more than offer precisely the kind of statistics that have been repeatedly held to be insufficient, *see Krim*, 402 F.3d at 497.  That is not enough to clear the traceability hurdle.

### C.   *Speculation About Discovery Cannot Cure Plaintiffs' Pleading Defect.*

Plaintiffs' final argument—that discovery may reveal facts supporting traceability—is no salvation.  *See* Dkt. 94 at 13–15.  Section 11 requires Plaintiffs to "*plead* ... that [they] purchased shares traceable to the allegedly defective registration statement."   *Slack*, 598 U.S. at 770 (emphasis added).  Courts have consistently rejected the notion that a plaintiff may proceed to discovery in the mere hope of uncovering facts necessary to establish standing.  *See, e.g., Cupat v. Palantir Techs., Inc.*, 2025 WL 1141534, at *16 (D. Colo. Apr. 4, 2025) (rejecting "a plea to let the case proceed to discovery so that the plaintiff may locate the documents that may establish standing"); *McCaffery v. Cnty.*, 2024 WL 4045450, at *12 (E.D. Va. Sept. 4, 2024) (plaintiffs may not rely on "hopes" of what discovery will show to plead a sufficient case).[11]

---

[11] Nor can Plaintiffs look to discovery now.  Cognizant of the strength of the traceability argument set forth in the opening brief in support of Marcum's motion to dismiss the Section 11 claim against it (MTD at 21–24), Plaintiffs filed a motion to lift the PSLRA's discovery stay (Dkt. 93).  That motion should be denied for the reasons set forth in Marcum's opposition (Dkt. 94).  Plaintiffs should not be permitted to begin a scavenger hunt now—in violation of the automatic stay under the PSLRA—for facts that might allow them someday to sufficiently plead traceability.  The Amended Complaint against Marcum should stand or fall on the allegations contained within it.  On

Plaintiffs argue that the question of traceability is "a factual one, to be resolved through discovery," Indep. Dir. Opp. at 12 (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006)).   But plaintiffs in *In re Suprema Specialties* plausibly alleged traceability in the first instance: in their complaint, plaintiffs alleged that they purchased their shares *in* the relevant offerings (exactly what is required to plausibly plead traceability).  *See* 438 F.3d at 274 n.7 (emphasis in original; record citation omitted).  Here, in contrast, Plaintiffs allege affirmatively that they purchased their shares in the *open market*.  *See* Am. Compl. ¶¶ 423–24.  To survive Marcum's Motion to Dismiss, Plaintiffs need something more than speculation about to what discovery "may" show, *see* Dkt. 93-1 at 5, to "nudg[e] the[ir] claims across the line from conceivable to plausible," Indep. Dir. Opp. at 14 (quoting *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).  They do not have it.

## CONCLUSION

For these reasons, and those set forth in Marcum's Memorandum of Law in Support of its Motion to Dismiss, Marcum respectfully requests that the Court dismiss with prejudice[12] Count One of Plaintiffs' Amended Complaint.[13]

---

the question of whether Plaintiffs sufficiently pled traceability (*supra* at pp. 11–15), it falls.

[12] Dismissal with prejudice is warranted because of the "fundamental deficiencies" in Plaintiffs' claims, including that they purchased their shares on the open market and that they have demonstrated no means of pleading liability under *Omnicare*.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).  It is likewise warranted because Plaintiffs have not represented, in their oppositions or otherwise, that they possess facts which could cure their pleading deficiencies.  *See id.*

[13] As Marcum argues neither the question of materiality nor falsity in its MTD, Plaintiffs' recent Notice of Supplemental Authority (Dkt. 97) is of no moment to Marcum's Motion.

Dated:  October 22, 2025                    Respectfully submitted,

                                           */s/ Shirlethia V. Franklin*
                                           Shirlethia V. Franklin
                                           D. Md. Bar No. 28662
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, D.C. 20001
                                           T: 202.879.3892
                                           E: sfranklin@jonesday.com

                                           Adrienne Ferraro Mueller
                                           Jacob J. Thackston
                                           *Admitted Pro Hac Vice*
                                           JONES DAY
                                           901 Lakeside Ave.
                                           Cleveland, OH 44114
                                           T: 216.586.3939
                                           E: afmueller@jonesday.com
                                               jthackston@jonesday.com

                                           Samir Kaushik
                                           *Admitted Pro Hac Vice*
                                           JONES DAY
                                           2727 North Harwood Street, Suite 500
                                           Dallas, Texas 75201-1515
                                           T: 214.220.3939
                                           E: skaushik@jonesday.com

                                           *Attorneys for Defendant Marcum LLP*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2025, I electronically filed the foregoing Reply in Support of Defendant Marcum LLP's Motion to Dismiss by using the CM/ECF system which will send a notice of electronic filing to all counsel or parties of record.

*/s/ Shirlethia V. Franklin*
Shirlethia V. Franklin