# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| **DANNY WALKER**, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ILEARNINGENGINES, INC., *et al.*,<br><br>　　　　　　　Defendants. | Civil Action No. 8:24-cv-02900-DKC |

**REPLY IN SUPPORT OF DEFENDANTS MATTHEW BARGER,
IAN DAVIS, BRUCE MEHLMAN, AND MICHAEL MOE'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................................1

II.     PLAINTIFFS' ALLEGATIONS CONCERNING TRACEABILITY ARE
        INSUFFICIENT FOR A SECTION 11 CLAIM ...............................................................3

III.    THE OPPOSITION HIGHLIGHTS PLAINTIFFS' INSUFFICIENT SECTION 15
        ALLEGATIONS.................................................................................................................8

IV.     CONCLUSION.................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................1, 3, 4, 9

*Barbour v. Garland*,
105 F.4th 579 (4th Cir. 2024) ...............................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................1, 3, 4, 9

*Ciarciello v. Bioventus, Inc.*,
No. 1:23-CV-32, 2023 WL 7300081 (D. Md. Nov. 6, 2023) ......................................4

*Cupat v. Palantir Techs., Inc.*,
No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534 (D. Colo. Apr. 4, 2025)..................1, 3, 4

*Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*,
2006 WL 547989 (M.D. Fla. Mar. 6, 2006) ............................................................7

*Doherty v. Pivotal Software, Inc.*,
No. 3:19-CV-03589-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)............................5, 7

*Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*,
No. CV DKC 23-0574, 2023 WL 4134427 (D. Md. June 22, 2023).........................................4

*Fanucchi v. Enviva Inc.*,
No. DKC 22-2844, 2024 WL 330256 (D. Md. July 3, 2024)................................................4, 5

*Grand Lodge of Pa. v. Peters*,
550 F. Supp. 2d 1363 (M.D. Fla. 2008) .......................................................................7

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005)...........................................................................2, 8, 9

*In re Ariad Pharms., Inc. Sec. Litig.*,
842 F.3d 744 (1st Cir. 2016).......................................................................................7

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...................................................................................2, 5

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009).................................................................................9, 10

*In re Coinbase Glob., Inc. Sec. Litig.*,
No. 2:22-CV-04915, 2024 WL 4053009 (D.N.J. Sept. 5, 2024)..............................................7

*In re Constellation Energy Grp.*,
    738 F. Supp. 2d 614 (D. Md. 2010)......................................................................8, 10

*In re Creditrust Corp. Sec. Litig.*,
    Civil Action Nos. MJG-00-2174, MJG-00-2297, 00-2343, 00-2346, 00-2347, 00-
    2539, 2002 WL 35691716 (D. Md. Aug. 1, 2002) ...............................................2, 8

*In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*,
    705 F. Supp. 2d 86 (D. Mass. 2010)..................................................................2, 8, 9

*In re EveryWare Glob., Inc. Sec. Litig.*,
    175 F. Supp. 3d 837 (S.D. Ohio 2016) .....................................................................7

*In re Mirant Corp. Sec. Litig.*,
    No. 1:02-CV-1467-RWS, 2008 WL 11334395 (N.D. Ga. Aug. 5, 2008) .................7

*In re Mun. Mortg. & Equity, LLC*,
    876 F. Supp. 2d 616 (D. Md. 2012)..........................................................................8

*In re Sourcefire, Inc. Sec. Litig.*,
    No. CIV. JFM 07-1210, 2008 WL 1827484 (D. Md. Apr. 23, 2008).......................9

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
    33 F. Supp. 3d 1107 (N.D. Cal. 2014) ......................................................................7

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017)......................................................................................4

*Johnson v. CBD Energy, Ltd.*,
    No. H-15-1668, 2016 WL 3654657 (S.D. Tex. July 6, 2016) ...............................5, 7

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) ........................................................................... *passim*

*NB v. District of Columbia*,
    682 F.3d 77 (D.C. Cir. 2012).....................................................................................4

*Northumberland Cnty. Ret. Sys. v. Kenworthy*,
    No. CIV-11-520-D, 2013 WL 5230000 (W.D. Okla. Sept. 16, 2013) .....................5

*Perry v. Duoyuan Printing, Inc.*,
    No. 10 CIV. 7235 GBD, 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013)...................5

*Pirani v. Slack Techs., Inc.*,
    127 F.4th 1183 (9th Cir. 2025) ..............................................................................2, 5

*Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)......................................................................................8

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) ...................................................................................4

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) .................................................................................4

*Stenlund v. Marriott Int'l, Inc.*,
    172 F. Supp. 3d 874 (D. Md. 2016) .........................................................................8

*TransEnterix Inv. Grp. v. TransEnterix, Inc.*,
    272 F. Supp. 3d 740 (E.D.N.C. 2017) ......................................................................7

*Wachovia Equity Sec. Litig. v. Wachovia Corp.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ......................................................................5

**RULES**

Rule 8 ...............................................................................................................1, 3, 4, 8

Rule 9(b) ..................................................................................................................8

Rule 12(b)(6)............................................................................................................9

## I.   **INTRODUCTION**

Plaintiffs' Opposition fails to cure the fatal deficiencies in their Amended Complaint.[1] Rather than identify well-pleaded facts sufficient to satisfy *Twombly*, *Iqbal*, and Rule 8, Plaintiffs rely on decisions that pre-date those cases and other out-of-circuit law.  *See* ECF No. 90 at 19. Plaintiffs also attempt to distinguish the actual governing law while simultaneously conceding that their allegations mirror the very ones rejected in those precedential decisions.  *Id.* at 21, 27. Plaintiffs' motion briefing cannot backfill what the Amended Complaint omits.  As the Opposition itself confirms, Plaintiffs fail to plead any facts that plausibly support either of their claims.

First, Plaintiffs concede that (i) the registered shares under the offering documents were commingled with non-registered shares, and (ii) they allege no facts showing their shares are traceable to the Forms S-1 or S-8 for purposes of Section 11.[2]  Instead, they rely on a mere "plan" to conduct discovery (*see* ECF No. 90 at 15-16) and a self-declared "high probability" of traceability (AC ¶ 422).  Neither approach satisfies *Twombly* and *Iqbal*, which require plausible factual allegations—not conjecture or a promise of later proof.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rule 8 does not entitle plaintiffs to discovery "armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In particular, Plaintiffs' "high probability" pleading is insufficient.  *See* AC ¶ 422.  Despite claiming not to rely on statistics, Plaintiffs assert that 87.1% of the outstanding shares were registered under the offering documents—precisely the kind of statistical pleading that courts have

---

[1] Capitalized terms not defined herein are given their meaning assigned to them in the Independent Directors' Memorandum in Support of their Motion to Dismiss (the "Motion").  *See* ECF No. 85-1.

[2] Plaintiffs recently moved to lift the discovery stay to obtain discovery related to traceability. ECF No. 93. That is nothing more than a tacit acknowledgment that the Amended Complaint, as it currently stands, lacks the factual allegations sufficient to meet traceability under Section 11.

rejected repeatedly.  *See, e.g.*, *Cupat v. Palantir Techs., Inc.*, No. 1:22-CV-02805-GPG-SBP, 2025 WL 1141534, at *16 (D. Colo. Apr. 4, 2025); *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496–97 (5th Cir. 2005); *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183 (9th Cir. 2025) ("*Pirani II*").  Even their percentage is wrong—and, more importantly, irrelevant—because the registration statements **registered** shares and did not **issue** them, rendering Plaintiffs' probability analysis meaningless. Under *Century Aluminum*, Plaintiffs' own allegations present "obvious alternative explanation[s]," *i.e.*, that they purchased unregistered shares commingled with registered ones.  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

Second, Plaintiffs' Section 15 theory fails outright.  They seek to hold newly appointed independent directors—who neither participated in the merger nor prepared the challenged statements—liable merely because they signed two registration statements.  Plaintiffs' cited cases do not support this result; each involved factual allegations far beyond a defendant's title and signature.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 476-77 (S.D.N.Y. 2005) (alleging facts beyond simply the defendant's positions and signatures, including, *inter alia*, the importance of the topic and defendant's involvement in the operations of the company); *In re Evergreen Ultra Short Opportunities Fund Sec. Litig.*, 705 F. Supp. 2d 86, 97 (D. Mass. 2010) (alleging that the defendants participated in the drafting and/or preparation of the relevant misstatements).  Similarly, the Opposition fails to explain how any plausible inference of control could survive based on position alone when the Amended Complaint affirmatively alleges that the Independent Directors initiated corrective action.  *See In re Creditrust Corp. Sec. Litig.*, Civil Action Nos. MJG-00-2174, MJG-00-2297, 00-2343, 00-2346, 00-2347, 00-2539, 2002 WL 35691716, at *19 (D. Md. Aug. 1, 2002) ("conclusory statement that 'by virtue of their positions as … directors of non-defendant Creditrust, [the Outside Directors] had the power, and exercised

2

the same, to control the representations'").

Because these defects are incurable, the Amended Complaint should be dismissed with prejudice.

## II.    PLAINTIFFS' ALLEGATIONS CONCERNING TRACEABILITY ARE INSUFFICIENT FOR A SECTION 11 CLAIM

The Opposition concedes the core deficiencies in Plaintiffs' Section 11 claim. Plaintiffs admit that ILE shares entered the market through multiple registration statements and pre-existing unregistered shares—requiring Plaintiffs to plead facts establishing that *their* purchases are traceable to the offering documents. *See* ECF No. 90 at 14 & n.4. Plaintiffs further concede that the Amended Complaint relies on no such facts, only on a speculative "plan" to conduct discovery and a self-serving assertion that traceability is "likely." *Id.* at 15–16. Such allegations are precisely what *Twombly* and *Iqbal* prohibit. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. That is exactly what Plaintiffs ask this Court to do. As the Independent Directors' Motion explained, the Amended Complaint alleges only that (i) discovery is needed to "support" traceability, AC ¶¶ 423–24; (ii) Plaintiffs intend to obtain documents from DTC and brokers to "investigate" traceability; and (iii) there is a "high probability" that their shares are traceable. Courts routinely reject such allegations. *See, e.g.*, *Cupat*, 2025 WL 1141534, at *16 & n.18 (allegations of "high probability," "statistical likelihoods," and need for discovery insufficient to show a plausible inference of traceability); *Krim*, 402 F.3d at 496–97 (rejecting statistical tracing as inconsistent with Section 11 standing).

Plaintiffs argue otherwise, claiming that they need not "prove" traceability at the pleading stage. ECF No. 90 at 18. But this argument misses the mark. The Independent Directors do not demand proof at this stage—only alleged facts from which traceability plausibly could be inferred.

3

Plaintiffs confuse the requirement to plead facts supporting a plausible inference with the evidentiary burden of proof.

Plaintiffs' cited cases exemplify their confusion. In *Fam. of Care Real Est. Holding Co. v. Chapman Prop., LLC*, No. CV DKC 23-0574, 2023 WL 4134427, at *4 (D. Md. June 22, 2023), the court held that a plaintiff in a contract action need not attach exhibits to the complaint—an unremarkable proposition that says nothing about pleading traceability under Section 11. Similarly, the other cases Plaintiffs cite concern entirely different pleading contexts. *See SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 431 (4th Cir. 2015) (antitrust); *NB v. District of Columbia*, 682 F.3d 77, 85 (D.C. Cir. 2012) (Medicaid benefits); *Barbour v. Garland*, 105 F.4th 579, 581 (4th Cir. 2024) (Title VII retaliation); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (consumer fraud); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (civil rights). None addresses what facts are necessary to plead traceability under Section 11.

Plaintiffs' allegations concerning how they ***intend*** to establish traceability do not satisfy Rule 8. *See* ECF No. 90 at 20. The plausibility standard does not demand evidence, but it does require factual content—not an assurance that evidence may later be found. Allowing otherwise would nullify *Twombly* and *Iqbal*.

Plaintiffs also rely on pre-*Twombly* and *Iqbal* Third Circuit cases as if they were controlling. *See* ECF No. 90 at 18-19 (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 286 (3d Cir. 1992)). The more recent, post-*Iqbal* authority holds that conclusory allegations of traceability are insufficient. *See, e.g.*, *Cupat*, 2025 WL 1141534, at *16; *Fanucchi v. Enviva Inc.*, No. DKC 22-2844, 2024 WL 330256, at *14-16 (D. Md. July 3, 2024); *Ciarciello v. Bioventus, Inc.*, No. 1:23-CV-32, 2023 WL 7300081 (D. Md. Nov. 6, 2023). Plaintiffs' attempts to distinguish these decisions fail. In *Fanucchi*, as here, the

plaintiff did not plead facts supporting traceability, and the court found that even incorporating stock certificates was inadequate. 2024 WL 330256, at *14-16.[3] Plaintiffs' reliance on a "high probability" of tracing fares no better. Plaintiffs highlight *Pirani II*, but that case did not hold that statistical tracing suffices. To the contrary, *Pirani II* reaffirmed *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013), emphasizing that alleging a percentage of registered shares cannot show traceability in a plausible way because "it is entirely possible" that the purchased shares were unregistered. *Pirani II*, 127 F.4th at 1190. And Plaintiffs' attempt to distinguish *In re Century Aluminum Company Securities Litigation* is unconvincing for the same reasons.[4] *Pirani II* directly referenced this precedent to explain that statistical tracing does not suffice to fulfill the operative pleading standard.

Excluding statistical tracing at the pleading stage aligns with Section 11's purpose. Accepting such allegations "would impermissibly expand the standing requirement," since any aftermarket purchaser could simply allege that a high percentage of shares were registered. *Krim*, 402 F.3d at 496–97; *see also Doherty v. Pivotal Software, Inc.*, No. 3:19-CV-03589-CRB, 2019

---

[3] Plaintiffs also cite to a string of cases that do not reflect controlling law in this Circuit and are factually distinguishable and thus, do not support that a conclusory pleading of traceability is sufficient here. *See Perry v. Duoyuan Printing, Inc.*, No. 10 CIV. 7235 GBD, 2013 WL 4505199, at *9 (S.D.N.Y. Aug. 22, 2013) (finding that plaintiffs' allegation that they purchased pursuant to the registration statement was sufficient because all outstanding shares were registered pursuant to the IPO at issue); *Wachovia Equity Sec. Litig. v. Wachovia Corp.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011) (finding that an allegation that the purchases were pursuant to or traceable to the offering documents was sufficient, where no argument was made that more was required for commingled shares); *Northumberland Cnty. Ret. Sys. v. Kenworthy*, No. CIV-11-520-D, 2013 WL 5230000, at *6 (W.D. Okla. Sept. 16, 2013) (relying on Second Circuit authority to hold a conclusory pleading was enough).

[4] Moreover, as explained below, even if a statistical analysis could exclude other plausible inferences for tracing, counter to *In re Century Aluminum* and *Pirani II*, Plaintiffs' analysis offered in their Opposition is incorrect. If the proper percentages were used here, this analysis only further highlights the "obvious alternative explanation[.]" *In re Century Aluminum*, 729 F.3d at 1108 (internal citation omitted).

WL 5864581, at *10 (N.D. Cal. Nov. 8, 2019); *Johnson v. CBD Energy, Ltd.*, No. H-15-1668, 2016 WL 3654657, at *6 (S.D. Tex. July 6, 2016).  Such analyses are inherently flawed because they often ignore the critical difference between **registered** and **outstanding** shares.  Even if a large percentage of shares were registered, that does not establish those shares actually were available for purchase in the market.  This ambiguity precludes plausibility.

Plaintiffs' attempt to disclaim "statistical tracing" while relying on percentages of outstanding shares (87.1%) only underscores the problem.  *See* ECF No. 90 at 20; AC ¶ 422.  This is textbook statistical pleading.  *Krim*, 402 F.3d at 496.  Plaintiffs' inconsistent rhetoric cannot obscure the reality that their claim depends on purported probability, not facts.

Even assuming *arguendo* such a "probability" approach were permitted (and it is not), Plaintiffs' math is wrong.  Using the figures available by the Form S-1 for shares outstanding as of May 2024—which, importantly, does not even account for any additional shares issued after the June 2024 Form S-8, 157,595,089 were outstanding.[5]  Of those, 16,208,318 shares (10.3%) were registered under the Form S-8—not 87.1%.[6]  For the Form S-1, even using Plaintiffs' May 2024 baseline, the correct figure is 63.9%.  ECF No. 90-2, at 74.  The Form S-1 explicitly states

[5] The Independent Directors do not concede the accuracy of these figures but use the, albeit outdated, numbers available from the Form S-1 as Plaintiffs do for their argument.

[6] Plaintiffs' "public float" argument suffers from the same fundamental flaws.  The asserted 90.9% figure is based on share data from May 2024—months before the relevant transactions—and has no bearing on Plaintiffs' alleged purchases.  Plaintiffs not only fail to plead this figure in their Amended Complaint, but they also omit any allegation regarding the public float as of the dates when their shares purportedly were purchased after August 2024.  Equally unfounded is Plaintiffs' assumption that the total public float can be derived by simply adding the 16,208,318 shares registered under the Form S-8 to the percentage reported in the Form S-1.  That assumption defies both logic and basic market mechanics.  Multiple plausible inferences exist—namely, that all, some, or none of those shares actually were trading at the relevant time.  If they were not, Plaintiffs' "public float" theory rests on speculation rather than fact and cannot support a plausible pleading.

6

that it **registered**—not issued—100,774,669 shares, further undermining Plaintiffs' calculation. *Id.* at 19.

Plaintiffs compound these errors by failing to analyze each named plaintiff individually. By their own allegations, Plaintiff Leveque purchased 5,000 shares in late July 2024, when only 10.3% of outstanding shares were registered; Plaintiff Al-Hamid allegedly purchased shares "after August 9, 2024," without alleging what shares were outstanding or issued at that time.  AC ¶ 423-24.  This group pleading fails to establish traceability.  *See In re Ariad Pharms., Inc. Sec. Litig.*, 842 F.3d 744 (1st Cir. 2016); *TransEnterix Inv. Grp. v. TransEnterix, Inc.*, 272 F. Supp. 3d 740 (E.D.N.C. 2017).[7]

Plaintiffs' other cited cases are inapposite.  In *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1119 (N.D. Cal. 2014), the plaintiffs alleged that they purchased stock during a 180-day lock-up period when unregistered shares could not be sold—making traceability plausible.  Plaintiffs here allege no such lock-up.  Similarly, *In re EveryWare Glob., Inc. Sec. Litig.*, 175 F. Supp. 3d 837 (S.D. Ohio 2016), involved far more detailed allegations, including the purchase of 15% of shares traded on the first day of the offering at a uniform price just four cents

---

[7] Plaintiffs also attempt to distinguish the cases cited by the other Defendants, contending that those decisions merely rely on *Krim* but are distinguishable on other grounds.  Curiously, Plaintiffs also suggest that these cases do not actually address whether statistical tracing is permissible— while at the same time insisting that they are **not** relying on statistical analysis.  Even if Plaintiffs' position were internally consistent—which it is not—these authorities still underscore why their pleading is deficient.  *See, e.g.*, *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1374–76 (M.D. Fla. 2008) (holding that a bare allegation that aftermarket purchases were traceable to a registration statement was insufficient); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *22-23 (M.D. Fla. Mar. 6, 2006) (rejecting conclusory traceability allegation where unregistered shares were on the market at the time of purchase); *Doherty*, 2019 WL 5864581, at *9-10 (finding plaintiffs' statistical argument speculative and insufficient to raise a plausible inference of traceability); *In re Mirant Corp. Sec. Litig.*, No. 1:02-CV-1467-RWS, 2008 WL 11334395, at *11 (N.D. Ga. Aug. 5, 2008) (holding that statistical tracing fails to meet pleading requirements); *Johnson*, 2016 WL 3654657, at *6 (finding amendment to allow statistical tracing futile under *Krim* and dismissing Section 11 claims with prejudice).

above the asking price.  Nothing comparable is alleged here.  And *In re Coinbase Glob., Inc. Sec. Litig.*, No. 2:22-CV-04915, 2024 WL 4053009, at *19 (D.N.J. Sept. 5, 2024), turned on higher percentages and shares **actually offered** for sale, not merely registered.  Finally, in *In re Mun. Mortg. & Equity, LLC*, 876 F. Supp. 2d 616, 657 (D. Md. 2012), the plaintiff alleged that he received his shares the date the public offering closed and the first day that the company stated they would be available for distribution and attached a purchase confirmation referencing the prospectus—facts wholly absent here.

Because Plaintiffs' allegations fail to establish a plausible inference of traceability, their Section 11 claim must be dismissed.

## III.    THE OPPOSITION HIGHLIGHTS PLAINTIFFS' INSUFFICIENT SECTION 15 ALLEGATIONS

The Opposition confirms that the Section 15 claim is derivative and fails for want of a primary violation under Section 11.  Plaintiffs do not respond, thereby conceding the point.  *See Stenlund v. Marriott Int'l, Inc.*, 172 F. Supp. 3d 874, 887 (D. Md. 2016) ("In failing to respond to this argument. Plaintiff concedes the point.").

Even apart from that concession, the Amended Complaint fails to allege that the Independent Directors were "control persons."  Plaintiffs rely solely on their board positions and signatures—allegations that courts in this Circuit consistently deem inadequate.  *See In re Constellation Energy Grp.*, 738 F. Supp. 2d 614, 639 (D. Md. 2010); *In re Creditrust Corp.*, 2002 WL 35691716, at *19.  Plaintiffs' out-of-circuit authorities do not save their claim; each include far richer factual allegations about participation in drafting, solicitation, or operational control. *See, e.g.*, *In re Alstom*, 406 F. Supp. 2d at 476-77; *In re Evergreen*, 705 F. Supp. 2d at 97.[8]  Here, Plaintiffs allege none.  The Section 15 claim must be dismissed.

---

[8] Plaintiffs raise a straw-man argument and incorrectly assert that the Independent Directors are

None of Plaintiffs' cited cases supports their position. For example, in *In re Sourcefire, Inc. Securities Litigation*, the complaint alleged far more than the defendants' corporate titles. The plaintiffs there pleaded that "Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Sourcefire." *In re Sourcefire, Inc. Sec. Litig.*, No. CIV. JFM 07-1210, 2008 WL 1827484, at *7 (D. Md. Apr. 23, 2008). Plaintiffs here allege nothing comparable. Their sole allegation is the conclusory statement that the "Individual Defendants, in part because of their position with iLearningEngines, possess the power and authority to control the contents of iLearningEngines' reports and registration statements." AC ¶¶ 40, 453–54. This bare assertion lacks the factual underpinnings that are central to the Rule 12(b)(6) analysis in this District.

Plaintiffs' reliance on *In re Alstom S.A. Securities Litigation*, is equally misplaced. Apart from being out-of-circuit and decided before both *Twombly* and *Iqbal*, *Alstom* underscores what is missing here. The complaint in *Alstom* alleged that (i) the misrepresented topic was "extremely important" to the company's liquidity and profile; (ii) the defendant was involved in day-to-day operations; and (iii) the vendor-financing arrangements at issue were large and longstanding. 406 F. Supp. at 496. Plaintiffs here allege none of these particulars.

Similarly, *In re Evergreen*, 705 F. Supp. 2d at 97, does not advance Plaintiffs' cause. In *Evergreen*, the plaintiffs alleged that the defendants not only signed the relevant filings but also participated in drafting and approving the misstatements themselves. No such allegations appear here.

---

arguing that Rule 9 applies to the Section 15 claim. Opp. at 22. Not so. The Independent Directors did not argue this in their moving papers, and tellingly, Plaintiffs offer no supporting citation. The Independent Directors did however argue that Plaintiffs' conclusory allegations of control did not meet even Rule 8's more lenient standard.

Plaintiffs' invitation for this Court to disregard Fourth Circuit precedent and follow district court decisions from Washington and California is not persuasive, as those decisions involved far more substantial factual allegations than those present here.  *See* ECF No. 90 at 31 (citing *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 555 (N.D. Cal. 2009); *In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1296 (E.D. Wash. 2007)).  In *Charles Schwab*, for example, the complaint alleged that defendants participated in the distribution of fund shares, directly offered and sold those shares, and actively solicited their sale—facts entirely absent from Plaintiffs' pleading.  257 F.R.D. at 549.

Plaintiffs' reliance on conclusory and vague allegations concerning the Independent Directors' titles and signatures—without any facts suggesting control—is insufficient under controlling case law in this District.  *See In re Constellation Energy Grp.*, 738 F. Supp. 2d at 639 ("An individual's position alone does not establish control person liability.").  The Section 15 claim should be dismissed.

## IV.    CONCLUSION

The Independent Directors respectfully request that the Court dismiss with prejudice all claims against them in the Amended Class Action Complaint.

Dated:  October 22, 2025                    PAUL HASTINGS LLP

                                            s/  *Bradley J. Bondi*
                                            Bradley J. Bondi (Bar No. 16071)
                                            Lawrence E. Slusky (Bar No. 21745)
                                            Ronald K. Anguas, Jr. (admitted *pro hac vice*)
                                            2050 M Street N.W.
                                            Washington, D.C. 20036
                                            Tel: 202-551-1700
                                            Fax: 202-551-1705
                                            Email: bradbondi@paulhastings.com
                                            Email: lawrenceslusky@paulhastings.com
                                            Email: ronaldanguas@paulhastings.com

                                            D. Scott Carlton (admitted *pro hac vice*)
                                            515 South Flower Street, 25th Floor
                                            Los Angeles, CA 90071
                                            Tel: 213-683-6000
                                            Fax: 213-627-0705
                                            Email: scottcarlton@paulhastings.com

                                            *Attorneys for Defendants Matthew Barger, Ian*
                                            *Davis, Bruce Mehlman, and Michael Moe*

11